1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| C.O., a minor, by and through her guardian Alison Hall-O'Neil, individually and on behalf of all others similarly situated, | Case No.: 2:19-cv-910 |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| AMAZON.COM, INC., a Delaware corporation, and A2Z DEVELOPMENT CENTER, INC., a Delaware corporation, | |
| Defendants. | |

## **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Millions of Americans use Amazon's smart-speaker technology ("Alexa") in their homes. People speak to Alexa-enabled devices such as the Echo or Echo Dot about everything from the mundane ("Alexa, what's the weather?") to the deeply personal ("Alexa, what are the symptoms of depression?").

Most people believe that when they speak to an Alexa-enabled device, it converts their voice into a set of digital computer instructions. They expect that this digital query is sent over the internet for processing, that a digital response is returned, and that the device then converts the response into Alexa's voice. They do not expect that Alexa is creating and storing a

CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 1

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

permanent recording of their voice.  This expectation is reasonable; it would be easy for Alexa to work this way, as numerous other voice-recognition technologies do.

But Alexa does something else.  After Alexa processes a user's commands, Amazon saves a permanent recording of the user's voice to its own servers.  It then analyzes and uses these voice recordings for its own commercial benefit.  These uses include allowing workers around the world to listen to the voice recordings and creating voiceprints of users, which can be used to identify them when they speak to other devices in other locations.  Amazon has thus built a massive database of billions of voice recordings containing the private details of millions of Americans.

Amazon purports to obtain consent to record individuals who set up an Alexa-enabled device.  But there is a large group of individuals who do not consent to be recorded when using an Alexa-enabled device and who use Alexa without any understanding or warning that Amazon is recording and voiceprinting them: children.

Alexa routinely records and voiceprints millions of children without their consent or the consent of their parents.  This practice violates the laws of Florida, Illinois, Michigan, Maryland, Massachusetts, New Hampshire, Pennsylvania, and Washington, which prohibit the recording of oral communications without the consent of all parties to the communication.  These laws recognize the unique privacy interest implicated by the recording of someone's voice.  That privacy interest is all the more powerful in light of modern voiceprinting technology and the potentially invasive uses of big data by a company the size of Amazon.  It takes no great leap of imagination to be concerned that Amazon is developing voiceprints for millions of children that could allow the company (and potentially governments) to track a child's use of Alexa-enabled devices in multiple locations and match those uses with a vast level of detail about the child's life, ranging from private questions they have asked Alexa to the products they have used in their home.

Plaintiff C.O. ("Plaintiff"), a minor, by and through her guardian Alison Hall-O'Neil, brings this Class Action Complaint against Defendants Amazon.com, Inc., and a2z Development

CLASS ACTION COMPL.
CASE NO. 2:19-cv-910 - 2

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

Center, Inc. d/b/a Amazon Lab126 ( collectively "Amazon" or "Defendants") to obtain redress for all Florida, Illinois, Maryland, Massachusetts, Michigan, New Hampshire, Pennsylvania, and Washington minors who have used Alexa in their home and have therefore been recorded by Amazon, without consent.  Plaintiff alleges as follows as to herself, upon personal knowledge of her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## PARTIES

1.      Plaintiff C.O., and her parent and guardian Alison Hall-O'Neil, are natural persons and citizens of the State of Massachusetts.

2.      Defendant Amazon.com, Inc. is a Delaware corporation with its headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington.

3.      Defendant a2z Development Center, Inc., d/b/a Amazon Lab126, is a Delaware corporation with its headquarters and principal place of business located at 1120 Enterprise Way, Sunnyvale, California.  Amazon Lab126 employs thousands of individuals, many of whom work on Alexa-enabled devices and software at its Sunnyvale headquarters, and is a subsidiary of Amazon.com, Inc.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over this dispute under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and because at least one member of each class is a citizen of a different state than at least one Defendant.

5.      This Court has personal jurisdiction over Defendants because a substantial part of the, harm, events, and conduct giving rise to Plaintiff's claims occurred in Washington, and Defendant Amazon.com, Inc. is headquartered in Washington.

6.      Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant Amazon.com, Inc. is headquartered in this District, and because a substantial part of the events and conduct giving rise to Plaintiff's claims took place in this District.

CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 3

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

# FACTUAL BACKGROUND

### *Amazon and the Alexa Device*

7.      After starting as an online book retailer, Amazon has grown into a dominant force in the retail, internet, and technology sectors.  Amazon operates the world's leading e-commerce platform, with net sales of $232 billion in 2018.[1]  Amazon is the world's largest provider of cloud computing services.  According to some reports, 42% of the internet is powered by Amazon Web Services, which is more than double Microsoft, Google, and IBM combined.[2]  And Amazon also develops technology products including Alexa, the world's leading voice-responsive personal-assistant technology.

8.      Amazon Lab126, headquartered in Sunnyvale, California, began engineering the Echo "smart speaker" in 2010, eventually leading to Amazon.com, Inc. launching the product and the Alexa voice assistant (also developed by Amazon Lab126) on November 6, 2014, with sales commencing shortly thereafter.  Since then, Amazon has launched various additional Echo products, including the Echo Dot, Echo Plus, Echo Sub, Echo Show, and Echo Input.  Each Echo device contains a speaker, microphones, a small computer, internet connectivity, and the Alexa program.

9.      Amazon subsequently added the Alexa program to other Amazon products such as the Amazon Fire TV digital media player.  Amazon also allows manufacturers of devices as varied as electrical outlets, lightbulbs, thermostats, and security cameras to offer Alexa integration, allowing users to control those third-party devices through Alexa.  And Amazon also now allows manufacturers to offer devices with Alexa "built-in," essentially allowing other

---

[1] Form 10-K, Amazon.com, Inc., https://www.sec.gov/Archives/edgar/data/1018724/000101872419000004/amzn-20181231x10k.htm.

[2] Matt Ward, *Amazon: The Company Consuming Consumers*, thinkgrowth.org (Jan. 29, 2018), https://thinkgrowth.org/the-big-4-part-one-amazon-the-company-that-consumes-the-world-fb4679f10708 (last visited June 10, 2019).

CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 4

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

speakers and devices to offer much of the functionality of an Echo or Echo Dot[3] (collectively, all devices featuring Alexa integration or functionality are referred to herein as "Alexa Devices").[4]

10.     As of October 2018, Amazon had sold approximately 47 million Echo devices.[5] In January 2019, Amazon reported that over 100 million total devices had been sold with Alexa pre-installed.[6]

11.     In the years since the Echo launched, Amazon Lab126 has continued to develop Alexa software updates, and has played an integral role in the development of new Alexa Devices.[7]

12.     Alexa is a natural-language processing system.  Alexa "listens" to people's verbal communications and responds to those communications in a simulated human voice.  People most frequently interact with Alexa in their homes.

13.     Using Alexa on an Alexa Device, whether an Amazon device such as an Echo, or a third-party device like a Sonos One speaker, is relatively simple.  Once an individual has an Alexa Device, the person needs two more things: a WiFi Internet connection, and the Alexa mobile application (the "Alexa App") installed on his or her smartphone or tablet.

---

[3] Alistair Charleton, *Which Cars Have Amazon Alexa Integration?*, Gearbrain (April 29, 2019), https://www.gearbrain.com/which-cars-have-amazon-alexa-2525958778.html (last visited June 10, 2019); James Stables, *The Best Amazon Alexa Built-In Speakers*, The Ambient (Apr. 8, 2019), https://www.the-ambient.com/guides/best-alexa-built-in-speakers-1196 (last visited June 10, 2019); Dana Kerr and Ben Rubin, *Alexa is Coming to Sony Smart TVs*, CNET (Sept. 20, 2018, 11:27 a.m. EST), https://www.cnet.com/news/alexa-is-coming-to-tvs-well-at-least-sony-smart-tvs/ (last visited June 10, 2019); Jonathan Vanian, *Amazon Alexa is Now Available on HP, Acer, and Asus Computers*, Fortune (Jan. 8, 2018), http://fortune.com/2018/01/08/amazon-alexa-hp-acer-asus/ (last visited June 10, 2019).

[4] For purposes of this Complaint, the term "Alexa Devices" specifically excludes the Amazon Echo Dot Kids Edition.

[5] Brian Dumaine, *It Might Get Loud: Inside Silicon Valley's Battle to Own Voice Tech*, Fortune (Oct. 24, 2018), http://fortune.com/longform/amazon-google-apple-voice-recognition/ (last visited June 10, 2019).

[6] Lucase Matney, *More Than 100 Million Alexa Devices Have Been Sold,* Tech Crunch (Jan. 4, 2019) https://techcrunch.com/2019/01/04/more-than-100-million-alexa-devices-have-been-sold/ (last visited June 10, 2019).

[7] Ry Crist, *Behind the scenes at Alexa's laboratory*, CNet (Apr. 23, 2018), https://www.cnet.com/news/behind-the-scenes-at-amazon-alexa-laboratory-lab126/ (last visited June 10, 2019).

CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 5

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

14.     To use the Alexa App, the individual must have an account with Amazon.  The individual must then follow the set-up process on the Alexa Device, which eventually includes pairing the Alexa Device with the Alexa App.  For third-party Alexa Devices, the device itself will function even without being paired to the Alexa App, but the Alexa functionality will be disabled.

15.     Once the individual has paired the Alexa Device to the Alexa App, the Alexa Device is ready for use by anyone, including people who have not set up the Alexa App or consented to being recorded.

16.     Alexa Devices are designed to record and respond to communications immediately after an individual says a wake word (typically "Alexa" or "Echo").[8]  Alexa Devices accomplish this by storing a second or two of audio in short-term, random-access memory (RAM), analyzing that temporary audio recording for the presence of a wake word, and then overwriting it if the wake word is not recognized.  As a result, no permanent recording is supposed to be made if the wake word is not recognized.[9]

17.     If the wake word is recognized, the Alexa Device records the ensuing communication and—unlike some other smart devices—transmits the recording to Amazon's servers for interpretation and processing before receiving the relevant data back in response.

18.     Once Alexa has responded to a recording sent by an Alexa Device, Amazon indefinitely stores a copy of that recording on its own servers for later use and analysis.

19.     Amazon uses machine learning to leverage the massive amount of data collected by Alexa Devices—including these permanent voice recordings—to constantly refine the natural language understanding underlying Alexa's functionality.  Many recordings are individually

---

[8] Matt Day, Giles Turner, and Natalia Drozdiak, *Amazon Workers Are Listening to What You Tell Alexa*, Bloomberg (Apr. 10, 2019, 5:34 p.m. CDT), https://www.bloomberg.com/news/articles/2019-04-10/is-anyone-listening-to-you-on-alexa-a-global-team-reviews-audio (last visited June 10, 2019).

[9] Recent news reports, however, have revealed that Alexa devices regularly "inadvertently" record conversations without prompting by a wake word.  *See id.*

CLASS ACTION COMPL.
CASE NO. 2:19-cv-910 - 6

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

reviewed by Amazon employees and part-time contractors in locations as far flung as Costa Rica, India, and Romania.[10]

20.     However, Amazon need not permanently store the audio recordings in order for Alexa Devices to function.  Although it would not be as cost-effective or commercially advantageous to Amazon, Alexa Devices could process audio interactions locally on the device and send only a digital query, rather than a voice recording, to Amazon's servers.  Indeed, Amazon developed a "Local Voice Control" feature for Alexa Devices that allows individuals "to fulfill a limited set of requests on select [Alexa] devices when the device is not connected to the internet, such as requests to control supported lights, plugs, and switches."[11]

21.     Amazon could also upload audio recordings to short-term memory in the cloud and immediately overwrite those recordings after processing, much like Alexa constantly overwrites the audio it captures prior to a user saying a wake word.  If Amazon did that, it would never possess a permanent recording of any user's communications.

22.     Many similar "smart speaker" devices are less intrusive than Amazon's Alexa Devices.  Apple's natural-language processing system, "Siri," records communications in a similar manner to Alexa, and sends those recordings to Apple's servers.[12]  However, Apple stores those recordings in an identifiable form for only a short period of time, and then deletes the recordings entirely.[13]  Likewise, Mercedes has developed voice recognition technology that allows drivers to ask their car for directions, and that offers substantial functionality even when

---

[10] *Id.*

[11] *Alexa and Alexa Device FAQs*, Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=201602230 (last visited June 10, 2019).

[12] Lisa Eadicicco, *Amazon Workers Reportedly Listen to What You Tell Alexa – Here's How Apple and Google Handle What You Say to Their Voice Assistants*, Business Insider (Apr. 15, 2019, 10:39 a.m. EST), https://www.businessinsider.com/how-amazon-apple-google-handle-alexa-siri-voice-data-2019-4 (last visited June 10, 2019).

[13] *Id.*

CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 7

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

the vehicle lacks an Internet connection (and, therefore, the vehicle cannot transmit a recording).[14]

23.     Amazon has strong commercial incentives to collect as many Alexa recordings as possible.  From the outset, Amazon has been a company built on the relentless acquisition of consumer behavioral data, whether through its ubiquitous AWS offerings, its ever-expanding online storefront, its entertainment platforms, and now the Alexa Devices it uses as its ears in every home.

24.     The collection of Alexa Device recordings is a natural extension of Amazon's *modus operandi*: collect as much consumer data as possible through any means possible, streamline the process so that consumers cannot or will not stop the collection, and use Amazon's massive size to leverage that data more effectively than any of its competitors.

25.     Simply put, the more data Amazon collects, the more use Amazon has for each incremental data point Amazon collects.

26.     Amazon's decision to make Alexa integration available to third-party product manufacturers at no cost is entirely consistent with this scheme.  While Amazon might have charged some companies a licensing fee for Alexa integration (which its partners would then be able to pass on to consumers who value the extra functionality), it offers that integration free of charge in order to facilitate the rapid adoption of Alexa Devices, the ubiquitous use of Alexa, and the resulting widespread collection of voice-recordings of millions of people.

### *Alexa Devices Record Children Without Their Consent*

27.     Alexa Devices respond to any individual who says the wake word.  Alexa Devices thus record communications involving individuals who did not purchase the device or install the Alexa App.

28.     But Alexa has the ability to identify different users based on their voiceprint. Through this functionality, Alexa could determine whether or not the person speaking to it has

---

[14] Matt Robinson, *In-Car Voice Control Still Isn't Perfect, But I'm Warming To It*, Car Throttle (March 2019), https://www.carthrottle.com/post/in-car-voice-control-still-isnt-perfect-but-im-warming-to-it/ (last visited May 22, 2019).

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

previously registered as a user and agreed to be recorded.  When Alexa detects that a user has not

agreed to be recorded, it could inform the user that Amazon will make and keep persistent

recordings of the user's voice as a condition of use.  Alexa could ask the new user to agree to

that recording.  Or it could deactivate Amazon's permanent recording functionality for such

users.  But Alexa does not do this.

29.     At no point does Amazon warn unregistered users that it is creating persistent

voice recordings of their Alexa interactions, let alone obtain their consent to do so.

30.     When children say a wake word to an Alexa Device, the device records and

transmits the children's communications in the same manner that it handles adults'

communications.  Neither the children nor their parents have consented to the children's

interactions being permanently recorded.

### *Facts Specific to Plaintiff C.O.*

31.     Plaintiff C.O., and her parent Alison Hall-O'Neil, are citizens of the State of

Massachusetts.  Plaintiff is ten years old.

32.     Her home contained and Alexa Echo Dot from August 2018 to the present.

33.     C.O. did not purchase or set up the Echo Dot, nor did she download the Alexa

App.

34.     Although C.O. was not an Alexa registered user, she directly interacted with an

Alexa Device on several occasions.  For instance, she regularly used it to play music, tell jokes,

and answer questions.  On those occasions, Amazon recorded C.O.'s communications and stored

those recordings on its servers.

35.     C.O. was unaware that when she spoke a wake word, an Alexa Device would

record and store the ensuing private communications.

36.     Because C.O. was not a registered Alexa user, she never agreed to allow her

communications to be recorded.  C.O's parents likewise never agreed to allow Amazon to record

C.O.'s communications.  Amazon recorded C.O.'s private communications without her consent,

and without the consent of her parents.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

**CLASS ACTION ALLEGATIONS**

37.     Plaintiff C.O., by and through her guardian Alison Hall-O'Neil, brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following Class of similarly situated individuals:

> **Class:** All residents in Florida, Illinois, Maryland, Massachusetts, Michigan, New Hampshire, Pennsylvania, and Washington who used Alexa on a household Alexa Device while they were minors, but who have not downloaded and installed the Alexa App.

38.     Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

39.     **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable.  The Class likely consists of thousands of individuals, and their members can be identified through Defendants' records.

40.     **Predominant Common Questions:** The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members.  Common questions for the Class include, but are not limited to, the following:

> a.     Whether Alexa Devices make permanent voice recordings of children who interact with them.
>
> b.     Whether children who use Alexa Devices in their home have an objectively reasonable expectation of confidentiality.

CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 10

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

c.   Whether Amazon fails to obtain consent to record children who are not registered users of Alexa Devices.

41.   **Typicality:** Plaintiff's claims are typical of the claims of the other members of the proposed Class.  Plaintiff and Class members suffered invasions of privacy as a result of Defendants' uniform wrongful conduct.

42.   **Adequate Representation:** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions.  Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so.  Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

43.   **Superiority:** This class action is appropriate for certification because class proceedings are available to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable.  This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

44.   Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

CLASS ACTION COMPL.
CASE NO. 2:19-cv-910 - 11

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

### FIRST CAUSE OF ACTION
**Violation of the Massachusetts Wiretap Statute, Mass. Gen. Laws ch. 272, § 99, and Substantially Similar Laws of Florida (Fla. Stat. § 934.03), Illinois (720 ILCS 5/14-2), Maryland (Md. Cts. & Jud. Pro. § 10-402), Michigan (MCL 750.539c), New Hampshire (N.H. Rev. Stat. § 570-A:2), Pennsylvania (18 Pa. Cons. Stat. § 5703), and Washington (WA Rev. Code § 9.73.030)**
**(On Behalf of Plaintiff and the Class)**

45.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

46.     Plaintiff and the Class members used Alexa Devices within their families' homes.

47.     When Plaintiff and the Class members used the Alexa Devices, Amazon created a recording of their device interactions, transmitted those recording to Amazon's cloud servers, and retained copies of those recordings indefinitely.

48.     Amazon did not warn or otherwise notify Plaintiff and the Class members that Amazon would create persistent recordings of their Alexa interactions.

49.     Plaintiff and the Class members did not expect, and had no reason to expect, that Amazon would create persistent recordings of their Alexa interactions.

50.     Plaintiff and the Class members reasonably expected that their Alexa interactions would remain private.

51.     Plaintiff and the Class members never provided Amazon with consent to record their Alexa interactions, nor did Amazon even attempt to seek such consent.  Plaintiff's and the Class members' parents likewise never consented to Amazon recording their children's Alexa interactions.

52.     Amazon created the recordings of Plaintiff and the Class intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

53.     By creating persistent recordings of Plaintiff's and the Class members' Alexa interactions, Amazon intentionally intercepted and used oral communications without the consent of all parties to those communications, in violation of Mass. Gen. Laws ch. 272, § 99, and in violation of the substantially similar statutes Fla. Stat. § 934.03, 720 ILCS 5/14-2, Md.

CLASS ACTION COMPL.
CASE NO. 2:19-cv-910 - 12

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

Cts. & Jud. Pro. § 10-402, MCL 750.539c, N.H. Rev. Stat. § 570-A:2, 18 Pa. Cons. Stat. § 5703, and WA Rev. Code § 9.73.030.

54.     Amazon's intentional and unlawful recording violated Plaintiff's and the Class members' right to privacy in their confidential communications, as protected by Mass. Gen. Laws ch. 272, § 99, and as protected by the substantially similar statutes Fla. Stat. § 934.03, 720 ILCS 5/14-2, Md. Cts. & Jud. Pro. § 10-402, MCL 750.539c, N.H. Rev. Stat. § 570-A:2, 18 Pa. Cons. Stat. § 5703, and WA Rev. Code § 9.73.030.

55.     Amazon is able, and the Court should require it, to destroy the recordings of Plaintiff's and the Class members' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

56.     Amazon's intentional and unlawful recording caused Plaintiff and the Class members injury to their dignity, well-being, and security.

57.     Plaintiff, individually and on behalf of the Class members, seeks: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day or $1,000, whichever is greater, under Fla. Stat. § 934.10, Md. Cts. & Jud. Pro. § 10-410, Mass. Gen. Laws ch. 272, § 99(Q), N.H. Rev. Stat. § 570-A:11, and 18 Pa. Cons. Stat. § 5725, damages equal to $100 per day up to $1,000 under WA Rev. Code § 9.73.060, and nominal damages under 720 ILCS 5/14-2 and MCL 750.539c; (3) punitive damages; and (4) costs and reasonable attorneys' fees under Mass. Gen. Laws ch. 272, § 99(Q), and under the substantially similar statutes Fla. Stat. § 934.10, 720 ILCS 5/14-6, Md. Cts. & Jud. Pro. § 10-410, MCL 750.539c, N.H. Rev. Stat. § 570-A:11, 18 Pa. Cons. Stat. § 5725, and WA Rev. Code § 9.73.060.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the proposed Class, respectfully requests that the Court enter an order:

CLASS ACTION COMPL.
CASE NO. 2:19-cv-910 - 13

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representatives of the Class, and appointing her counsel as class counsel;

B.      Declaring that Amazon's actions, as set out above, violate the state privacy laws cited herein;

C.      Requiring Amazon to delete all recordings of the Class members, and to implement functionality to prevent further recording of the Class members without prior consent;

D.      Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

E.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

G.      Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

H.      Awarding such other and further relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: June 11, 2019

By:   */s/ Andrew S. Brown*
Andrew S. Brown, WSBA #49093
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
600 University St., Ste. 2800
Seattle, WA 98101
Tel.: 206.905.7000
Fax: 206.905.7100
andybrown@quinnemanuel.com

Andrew H. Schapiro (*pro hac vice* forthcoming)
Stephen Swedlow (*pro hac vice* forthcoming)
QUINN EMANUEL

CLASS ACTION COMPL.
CASE NO. 2:19-cv-910 - 14

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312.705.7400
Fax: 312.705.7401
andrewschapiro@quinnemanuel.com
stephenswedlow@quinnemanuel.com

Ashley C. Keller (*pro hac vice* forthcoming)
Travis D. Lenkner (*pro hac vice* forthcoming)
J. Dominick Larry (*pro hac vice* forthcoming)
KELLER LENKNER LLC
150 N. Riverside Plaza, Ste. 4270
Chicago, IL 60606
Tel.: 312.741.5220
Fax: 312.971.3502
ack@kellerlenkner.com
tdl@kellerlenkner.com
nl@kellerlenkner.com

Warren D. Postman (*pro hac vice* forthcoming)
KELLER LENKNER LLC
1300 Street N.W., Suite 400E
Washington, D.C.
Tel.: 202.749.8334
Fax: 312.971.3502
wdp@kellerlenkner.com

*Attorneys for Plaintiff and the Putative Class*