1
2
3
4
5
6
7
8
UNITED STATES DISTRICT COURT
9
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE
10

11   B.F. and A.A., minors, by and through their          Case No.: 2:19-cv-910
     guardian Joey Fields; W.B., A.L., K.S., and
12   A.S., minors, by and through their guardian
     Mistie Burris; C.L., a minor, by and through her
13   guardian Melissa Lock; C.O., a minor, by and
     through her guardian Alison Hall-O'Neil; W.R.
14   and L.R., minors, by and through their guardian
     William Rowe; J.B and L.B., minors, by and
15   through their guardian Doug Boswell; E.J., a
     minor, by and through her guardian Corey
16   Woodhouse;  S.M. and C.M., minors, by and
     through their guardian Matt McLaughlin; Z.S., a
17   minor, by and through his guardian Stephanie
     Starling; E.B., F.B., S.B., and O.B., minors, by
18   and through their guardian Maria Prunier-
     Brown; R.B., a minor, by and through his
19   guardian Angela Brine; N.S., a minor, by and
     through his guardian Erin Shunn; individually
20   and on behalf of all others similarly situated,
21
22                Plaintiffs,
23   vs.
24   AMAZON.COM, INC., a Delaware
     corporation, and A2Z DEVELOPMENT
25   CENTER, INC., a Delaware corporation,
26
                  Defendants.
27
28

## FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Millions of Americans use Amazon's smart-speaker technology ("Alexa") in their homes. People speak to Alexa-enabled devices such as the Echo or Echo Dot about everything from the mundane ("Alexa, what's the weather?") to the deeply personal ("Alexa, what are the symptoms of depression?").

Most people believe that when they speak to an Alexa-enabled device, it converts their voice into a set of digital computer instructions. They expect that this digital query is sent over the internet for processing, that a digital response is returned, and that the device then converts the response into Alexa's voice. They do not expect that Alexa is creating and storing a permanent recording of their voice. This expectation is reasonable; it would be easy for Alexa to work this way, as numerous other voice-recognition technologies do.

But Alexa does something else. After Alexa processes a user's commands, Amazon saves a permanent recording of the user's voice to its own servers. It then analyzes and uses these voice recordings for its own commercial benefit. These uses include allowing workers around the world to listen to the voice recordings and creating voiceprints of users, which can be used to identify them when they speak to other devices in other locations. Amazon has thus built a massive database of billions of voice recordings containing the private details of millions of Americans.

Amazon purports to obtain consent to record individuals who set up an Alexa-enabled device. But there is a large group of individuals who do not consent to be recorded when using an Alexa-enabled device and who use Alexa without any understanding or warning that Amazon is recording and voiceprinting them: children.

Alexa routinely records and voiceprints millions of children without their consent or the consent of their parents. This practice violates the laws of Florida, Illinois, Michigan, Maryland, Massachusetts, New Hampshire, Pennsylvania, and Washington, which prohibit the recording of oral communications without the consent of all parties to the communication. These laws recognize the unique privacy interest implicated by the recording of someone's voice. That

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 2

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

privacy interest is all the more powerful in light of modern voiceprinting technology and the potentially invasive uses of big data by a company the size of Amazon. It takes no great leap of imagination to be concerned that Amazon is developing voiceprints for millions of children that could allow the company (and potentially governments) to track a child's use of Alexa-enabled devices in multiple locations and match those uses with a vast level of detail about the child's life, ranging from private questions they have asked Alexa to the products they have used in their home.

Plaintiffs, minors, by and through their guardians, bring this Class Action Complaint against Defendants Amazon.com, Inc., and a2z Development Center, Inc. d/b/a Amazon Lab126 (collectively "Amazon" or "Defendants") to obtain redress for all Florida, Illinois, Massachusetts, Maryland, Michigan, New Hampshire, Pennsylvania, and Washington minors who have used Alexa in their homes and have therefore been recorded by Amazon, without consent. Plaintiffs allege as follows as to themselves, upon personal knowledge of their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## PARTIES

1.      Plaintiffs B.F. and A.A., and their parent and guardian Joey Fields, are natural persons and citizens of the State of Florida.

2.      Plaintiffs W.B., A.L., K.S., A.S., and their parent and guardian Mistie Burris, are natural persons and citizens of the State of Florida.

3.      Plaintiff C.L. and her parent and guardian Melissa Lock are natural persons and citizens of the State of Illinois.

4.      Plaintiff C.O. and her parent and guardian Alison Hall-O'Neil are natural persons and citizens of the Commonwealth of Massachusetts.

5.      Plaintiffs W.R. and L.R., and their parent and guardian William Rowe, are natural persons and citizens of the Commonwealth of Massachusetts.

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 3

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

6.     Plaintiffs J.B. and L.B., and their parent and guardian Doug Boswell, are natural persons and citizens of the State of Maryland.

7.     Plaintiff E.J. and her parent and guardian Corey Woodhouse are natural persons and citizens of the State of Michigan.

8.     Plaintiffs S.M. and C.M., and their parent and guardian Matt McLaughlin, are natural persons and citizens of the State of Michigan.

9.     Plaintiff Z.S. and his parent and guardian Stephanie Starling are natural persons and citizens of the State of Michigan.

10.     Plaintiffs E.B., F.B., S.B., and O.B, and their parent and guardian Maria Prunier-Brown, are natural persons and citizens of the State of New Hampshire.

11.     Plaintiff R.B. and her parent and guardian Angela Brine are natural persons and citizens of the Commonwealth of Pennsylvania.

12.     Plaintiff N.S. and his parent and guardian Erin Shunn are natural persons and citizens of the State of Washington.

13.     Defendant Amazon.com, Inc. is a Delaware corporation with its headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington.

14.     Defendant a2z Development Center, Inc., d/b/a Amazon Lab126, is a Delaware corporation with its headquarters and principal place of business located at 1120 Enterprise Way, Sunnyvale, California.  Amazon Lab126 is a subsidiary of Amazon.com, Inc.

## JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction over this dispute under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and because at least one member of each class is a citizen of a different state than at least one Defendant.

16.     This Court has personal jurisdiction over Defendants because a substantial part of the, harm, events, and conduct giving rise to Plaintiffs' claims occurred in Washington, and Defendant Amazon.com, Inc. is headquartered in Washington.

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 4

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

17.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant Amazon.com, Inc. is headquartered in this District, and because a substantial part of the events and conduct giving rise to Plaintiffs' claims took place in this District.

## FACTUAL BACKGROUND

### *Amazon and the Alexa Device*

18.     After starting as an online book retailer, Amazon has grown into a dominant force in the retail, internet, and technology sectors.  Amazon operates the world's leading e-commerce platform, with net sales of $232 billion in 2018.[1]  Amazon is the world's largest provider of cloud computing services.  According to some reports, 42% of the internet is powered by Amazon Web Services, which is more than double Microsoft, Google, and IBM combined.[2] And Amazon also develops technology products including Alexa, the world's leading voice-responsive personal-assistant technology.

19.     Amazon Lab126, headquartered in Sunnyvale, California, began engineering the Echo "smart speaker" in 2010, eventually leading to Amazon.com, Inc. launching the product and the Alexa voice assistant (also developed by Amazon Lab126) on November 6, 2014, with sales commencing shortly thereafter.  Since then, Amazon has launched various additional Echo products, including the Echo Dot, Echo Plus, Echo Sub, Echo Show, and Echo Input.  Each Echo device contains a speaker, microphones, a small computer, internet connectivity, and the Alexa program.

20.     Amazon subsequently added the Alexa program to other Amazon products such as the Amazon Fire TV digital media player.  Amazon also allows manufacturers of devices as varied as electrical outlets, lightbulbs, thermostats, and security cameras to offer Alexa integration, allowing users to control those third-party devices through Alexa.  And Amazon also

---

[1] Form 10-K, Amazon.com, Inc., https://www.sec.gov/Archives/edgar/data/1018724/000101872419000004/amzn-20181231x10k.htm.

[2] Matt Ward, *Amazon: The Company Consuming Consumers*, thinkgrowth.org (Jan. 29, 2018), https://thinkgrowth.org/the-big-4-part-one-amazon-the-company-that-consumes-the-world-fb4679f10708 (last visited July 5, 2019).

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 5

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

now allows manufacturers to offer devices with Alexa "built-in," essentially allowing other speakers and devices to offer much of the functionality of an Echo or Echo Dot[3] (collectively, all devices featuring Alexa integration or functionality are referred to herein as "Alexa Devices").[4]

21.     As of October 2018, Amazon had sold approximately 47 million Echo devices.[5] In January 2019, Amazon reported that over 100 million total devices had been sold with Alexa pre-installed.[6]

22.     In the years since the Echo launched, Amazon Lab126 has continued to develop Alexa software updates, and has played an integral role in the development of new Alexa Devices.[7]

23.     Alexa is a natural-language processing system.  Alexa "listens" to people's verbal communications and responds to those communications in a simulated human voice.  People most frequently interact with Alexa in their homes.

24.     Using Alexa on an Alexa Device, whether an Amazon device such as an Echo, or a third-party device like a Sonos One speaker, is relatively simple.  Once an individual has an Alexa Device, the person needs two more things: a WiFi Internet connection, and the Alexa mobile application (the "Alexa App") installed on his or her smartphone or tablet.

---

[3] Alistair Charleton, *Which Cars Have Amazon Alexa Integration?*, Gearbrain (April 29, 2019), https://www.gearbrain.com/which-cars-have-amazon-alexa-2525958778.html (last visited July 5, 2019); James Stables, *The Best Amazon Alexa Built-In Speakers*, The Ambient (Apr. 8, 2019), https://www.the-ambient.com/guides/best-alexa-built-in-speakers-1196 (last visited July 5, 2019); Dana Kerr and Ben Rubin, *Alexa is Coming to Sony Smart TVs*, CNET (Sept. 20, 2018, 11:27 a.m. EST), https://www.cnet.com/news/alexa-is-coming-to-tvs-well-at-least-sony-smart-tvs/ (last visited July 5, 2019); Jonathan Vanian, *Amazon Alexa is Now Available on HP, Acer, and Asus Computers*, Fortune (Jan. 8, 2018), http://fortune.com/2018/01/08/amazon-alexa-hp-acer-asus/ (last visited July 5, 2019).

[4] For purposes of this Complaint, the term "Alexa Devices" specifically excludes the Amazon Echo Dot Kids Edition.

[5] Brian Dumaine, *It Might Get Loud: Inside Silicon Valley's Battle to Own Voice Tech*, Fortune (Oct. 24, 2018), http://fortune.com/longform/amazon-google-apple-voice-recognition/ (last visited July 5, 2019).

[6] Lucase Matney, *More Than 100 Million Alexa Devices Have Been Sold,* Tech Crunch (Jan. 4, 2019) https://techcrunch.com/2019/01/04/more-than-100-million-alexa-devices-have-been-sold/ (last visited July 5, 2019).

[7] Ry Crist, *Behind the scenes at Alexa's laboratory*, CNet (Apr. 23, 2018), https://www.cnet.com/news/behind-the-scenes-at-amazon-alexa-laboratory-lab126/ (last visited July 5, 2019).

FIRST AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 6

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

25.     To use the Alexa App, the individual must have an account with Amazon.  The individual must then follow the set-up process on the Alexa Device, which eventually includes pairing the Alexa Device with the Alexa App.  For third-party Alexa Devices, the device itself will function even without being paired to the Alexa App, but the Alexa functionality will be disabled.

26.     Once the individual has paired the Alexa Device to the Alexa App, the Alexa Device is ready for use by anyone, including people who have not set up the Alexa App or consented to being recorded.

27.     Alexa Devices are designed to record and respond to communications immediately after an individual says a wake word (typically "Alexa" or "Echo").[8]  Alexa Devices accomplish this by storing a second or two of audio in short-term, random-access memory (RAM), analyzing that temporary audio recording for the presence of a wake word, and then overwriting it if the wake word is not recognized.  As a result, no permanent recording is supposed to be made if the wake word is not recognized.[9]

28.     If the wake word is recognized, the Alexa Device records the ensuing communication and—unlike some other smart devices—transmits the recording to Amazon's servers for interpretation and processing before receiving the relevant data back in response.

29.     Once Alexa has responded to a recording sent by an Alexa Device, Amazon indefinitely stores a copy of that recording on its own servers for later use and analysis.

30.     Amazon uses machine learning to leverage the massive amount of data collected by Alexa Devices—including these permanent voice recordings—to constantly refine the natural language understanding underlying Alexa's functionality.  Many recordings are individually

---

[8] Matt Day, Giles Turner, and Natalia Drozdiak, *Amazon Workers Are Listening to What You Tell Alexa*, Bloomberg (Apr. 10, 2019, 5:34 p.m. CDT), https://www.bloomberg.com/news/articles/2019-04-10/is-anyone-listening-to-you-on-alexa-a-global-team-reviews-audio (last visited July 5, 2019).

[9] Recent news reports, however, have revealed that Alexa devices regularly "inadvertently" record conversations without prompting by a wake word.  *See id.*

FIRST AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 7

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

reviewed by Amazon employees and part-time contractors in locations as far flung as Costa Rica, India, and Romania.[10]

31.     However, Amazon need not permanently store the audio recordings in order for Alexa Devices to function.  Although it would not be as cost-effective or commercially advantageous to Amazon, Alexa Devices could process audio interactions locally on the device and send only a digital query, rather than a voice recording, to Amazon's servers.  Indeed, Amazon developed a "Local Voice Control" feature for Alexa Devices that allows individuals "to fulfill a limited set of requests on select [Alexa] devices when the device is not connected to the internet, such as requests to control supported lights, plugs, and switches."[11]

32.     Amazon could also upload audio recordings to short-term memory in the cloud and immediately overwrite those recordings after processing, much like Alexa constantly overwrites the audio it captures prior to a user saying a wake word.  If Amazon did that, it would never possess a permanent recording of any user's communications.

33.     Many similar "smart speaker" devices are less intrusive than Amazon's Alexa Devices.  Apple's natural-language processing system, "Siri," records communications in a similar manner to Alexa, and sends those recordings to Apple's servers.[12]  However, Apple stores those recordings in an identifiable form for only a short period of time, and then deletes the recordings entirely.[13]  Likewise, Mercedes has developed voice recognition technology that allows drivers to ask their car for directions, and that offers substantial functionality even when

---

[10] *Id.*

[11] *Alexa and Alexa Device FAQs*, Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=201602230 (last visited July 5, 2019).

[12] Lisa Eadicicco, *Amazon Workers Reportedly Listen to What You Tell Alexa – Here's How Apple and Google Handle What You Say to Their Voice Assistants*, Business Insider (Apr. 15, 2019, 10:39 a.m. EST), https://www.businessinsider.com/how-amazon-apple-google-handle-alexa-siri-voice-data-2019-4 (last visited July 5, 2019).

[13] *Id.*

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

the vehicle lacks an Internet connection (and, therefore, the vehicle cannot transmit a recording).[14]

34.     Amazon has strong commercial incentives to collect as many Alexa recordings as possible.  From the outset, Amazon has been a company built on the relentless acquisition of consumer behavioral data, whether through its ubiquitous AWS offerings, its ever-expanding online storefront, its entertainment platforms, and now the Alexa Devices it uses as its ears in every home.

35.     The collection of Alexa Device recordings is a natural extension of Amazon's *modus operandi*: collect as much consumer data as possible through any means possible, streamline the process so that consumers cannot or will not stop the collection, and use Amazon's massive size to leverage that data more effectively than any of its competitors.

36.     Simply put, the more data Amazon collects, the more use it has for each incremental data point in its possession.

37.     Amazon's decision to make Alexa integration available to third-party product manufacturers at no cost is entirely consistent with this scheme.  While Amazon might have charged some companies a licensing fee for Alexa integration (which its partners would then be able to pass on to consumers who value the extra functionality), it offers that integration free of charge in order to facilitate the rapid adoption of Alexa Devices, the ubiquitous use of Alexa, and the resulting widespread collection of voice-recordings of millions of people.

### *Alexa Devices Record Children Without Their Consent*

38.     Alexa Devices respond to any individual who says the wake word.  Alexa Devices thus record communications involving individuals who did not purchase the device or install the Alexa App.

39.     But Alexa has the ability to identify different users based on their voiceprint. Through this functionality, Alexa could determine whether or not the person speaking to it has

---

[14] Matt Robinson, *In-Car Voice Control Still Isn't Perfect, But I'm Warming To It*, Car Throttle (March 2019), https://www.carthrottle.com/post/in-car-voice-control-still-isnt-perfect-but-im-warming-to-it/ (last visited July 5, 2019).

FIRST AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 9

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

previously registered as a user and agreed to be recorded.  When Alexa detects that a user has not agreed to be recorded, it could inform the user that Amazon will make and keep persistent recordings of the user's voice as a condition of use.  Alexa could ask the new user to agree to that recording.  Or it could deactivate Amazon's permanent recording functionality for such users.  But Alexa does not do this.

40.     At no point does Amazon warn unregistered users that it is creating persistent voice recordings of their Alexa interactions, let alone obtain their consent to do so.

41.     When children say a wake word to an Alexa Device, the device records and transmits the children's communications in the same manner that it handles adults' communications.  Neither the children nor their parents have consented to the children's interactions being permanently recorded.

### Facts Specific to Plaintiffs B.F. and A.A. (Florida)

42.     Plaintiffs B.F. and A.A., and their parent Joey Fields, are citizens of the State of Florida.  Plaintiffs are seven and fifteen years old.

43.     B.F. and A.A.'s home contained an Amazon Echo from April 2017 to the present and an Amazon Echo Dot from June 2017 to the present.

44.     B.F. and A.A. did not purchase or set up the Alexa Devices, nor did they download the Alexa App.

45.     Although B.F. and A.A. were not registered Alexa users, they directly interacted with an Alexa Device on several occasions.  For instance, they regularly used it to play music, tell jokes, and play games.  On those occasions, Amazon recorded B.F.'s and A.A.'s communications and stored those recordings on its servers.

46.     B.F. and A.A. were unaware that when they spoke a wake word, an Alexa Device would record and store the ensuing private communications.

47.     Because B.F. and A.A. were not registered Alexa users, they never agreed to allow their communications to be recorded.  B.F. and A.A.'s guardian likewise never agreed to

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 10

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

allow Amazon to record B.F.'s and A.A.'s communications. Amazon recorded B.F.'s and A.A.'s private communications without their consent, and without the consent of their guardian.

### *Facts Specific to Plaintiffs W.B., A.L., K.S., and A.S. (Florida)*

48.     Plaintiffs W.B., A.L., K.S., and A.S., and their guardian Mistie Burris, are citizens of the State of Florida. Plaintiffs are three, ten, fourteen, and seventeen years old.

49.     W.B., A.L., K.S., and A.S.'s home contains two Amazon Fire Sticks, which were purchased in June 2017 and May 2018; four Amazon Fire Tablets, two of which were purchased in November 2015 and two of which were purchased in July 2016; and four Amazon Echo Dots, one purchased in November 2017, two purchased in July 2018, and one purchased in November 2018.

50.     W.B., A.L., K.S., and A.S. did not purchase or set up the Alexa Devices, nor did they download the Alexa App.

51.     Although W.B., A.L., K.S., and A.S. were not registered Alexa users, they directly interacted with the Alexa Devices on various occasions. For instance, W.B., A.L., K.S., and A.S. use the Alexa Devices to control their TV, play music, answer questions and trivia, and play games. On those occasions, Amazon recorded W.B.'s, A.L.'s, K.S.'s, and A.S.'s communications and stored those recordings on its servers.

52.     W.B., A.L., K.S., and A.S. were unaware that when they spoke a wake word, an Alexa Device would record and store the ensuing private communications.

53.     Because W.B., A.L., K.S., and A.S. were not registered Alexa users, they never agreed to allow their communications to be recorded. W.B., A.L., K.S., and A.S.'s guardian likewise never agreed to allow Amazon to record W.B.'s, A.L.'s, K.S.'s, and A.S.'s communications. Amazon recorded W.B.'s, A.L.'s, K.S.'s, and A.S.'s private communications without their consent, and without the consent of their guardian.

### *Facts Specific to Plaintiff C.L. (Illinois)*

54.     Plaintiff C.L. and her parent Melissa Lock are citizens of the State of Illinois. Plaintiff C.L. is ten years old.

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 11

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

55. C.L.'s home contained an Amazon Echo Dot from December 2016 to the present.

56. C.L. did not purchase or set up the Alexa Device, nor did she download the Alexa App.

57. Although C.L. was not a registered Alexa user, she directly interacted with an Alexa Device on several occasions. For instance, she regularly used it to find information, play music, and tell jokes. On those occasions, Amazon recorded C.L.'s communications and stored those recordings on its servers.

58. C.L. was unaware that when she spoke a wake word, an Alexa Device would record and store the ensuing private communications.

59. Because C.L. was not a registered Alexa user, she never agreed to allow her communications to be recorded. C.L.'s guardian likewise never agreed to allow Amazon to record C.L.'s communications. Amazon recorded C.L.'s private communications without her consent, and without the consent of her guardian.

### Facts Specific to Plaintiffs J.B. and L.B. (Maryland)

60. Plaintiffs J.B. and L.B., and their parent Doug Boswell, are citizens of the State of Maryland. Plaintiffs are six and eight years old.

61. J.B. and L.B.'s home contained an Amazon Echo since 2015, an Amazon Echo Dot since 2017, and two Amazon Fire Sticks from 2018 to the present.

62. J.B. and L.B. did not purchase or set up the Alexa Devices, nor did they download the Alexa App.

63. Although J.B. and L.B. were not registered Alexa users, they directly interacted with an Alexa Device on several occasions. For instance, they have regularly used the Amazon Echo and Amazon Echo Dot to play music, tell jokes, and answer trivia questions, and they have, on occasion, used the Alexa Fire Sticks to control the television. On those occasions, Amazon recorded J.B.'s and L.B.'s communications and stored those recordings on its servers.

64. J.B. and L.B. were unaware that when they spoke a wake word, an Alexa Device would record and store the ensuing private communications.

FIRST AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 12

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

65. Because J.B. and L.B. were not registered Alexa users, they never agreed to allow their communications to be recorded. J.B. and L.B.'s guardian likewise never agreed to allow Amazon to record J.B.'s and L.B.'s communications. Amazon recorded J.B.'s and L.B.'s private communications without their consent, and without the consent of their guardian.

### *Facts Specific to Plaintiff C.O. (Massachusetts)*

66. Plaintiff C.O. and her parent Alison Hall-O'Neil are citizens of the Commonwealth of Massachusetts. Plaintiff is ten years old.

67. C.O.'s home contained an Amazon Echo Dot from August 2018 to the present.

68. C.O. did not purchase or set up the Echo Dot, nor did she download the Alexa App.

69. Although C.O. was not a registered Alexa user, she directly interacted with an Alexa Device on several occasions. For instance, she regularly used it to play music, tell jokes, and answer questions. On those occasions, Amazon recorded C.O.'s communications and stored those recordings on its servers.

70. C.O. was unaware that when she spoke a wake word, an Alexa Device would record and store the ensuing private communications.

71. Because C.O. was not a registered Alexa user, she never agreed to allow her communications to be recorded. C.O's guardian likewise never agreed to allow Amazon to record C.O.'s communications. Amazon recorded C.O.'s private communications without her consent, and without the consent of her guardian.

### *Facts Specific to Plaintiffs W.R. and L.R. (Massachusetts)*

72. Plaintiffs W.R. and L.R., and their parent William Rowe, are citizens of the Commonwealth of Massachusetts. Plaintiffs are eleven and nine years old.

73. W.R. and L.R.'s home contains two Amazon Echo Dots, which were purchased in December 2016 and November 2017; two Amazon Kindle Fires, which were purchased in December 2017 and December 2018; an Amazon Echo; and an Amazon Fire Stick.

FIRST AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 13

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

74.     W.R. and L.R. did not purchase or set up the Alexa Devices, nor did they download the Alexa App.

75.     Although W.R. and L.R. were not registered Alexa users, they directly interacted with the Alexa Devices on several occasions. For instance, they use Alexa to play music, answer questions, and set timers. On those occasions, Amazon recorded W.R.'s and L.R.'s communications and stored those recordings on its servers.

76.     W.R. and L.R. were unaware that when they spoke a wake word, an Alexa Device would record and store the ensuing private communications.

77.     Because W.R. and L.R. were not registered Alexa users, they never agreed to allow their communications to be recorded.  W.R. and L.R.'s guardian likewise never agreed to allow Amazon to record W.R.'s and L.R.'s communications.  Amazon recorded W.R.'s and L.R.'s private communications without their consent, and without the consent of their guardian.

### *Facts Specific to Plaintiff E.J. (Michigan)*

78.     Plaintiff E.J. and her parent Corey Woodhouse are citizens of the State of Michigan.  Plaintiff is eight years old.

79.     E.J.'s home contained an Amazon Echo from June 2, 2019 to the present.

80.     E.J. did not purchase or set up the Alexa Device, nor did she download the Alexa App.

81.     Although E.J. was not a registered Alexa user, she directly interacted with an Alexa Device on several occasions.  For instance, she used it primarily to play music and check the weather.  On those occasions, Amazon recorded E.J.'s communications and stored those recordings on its servers.

82.     E.J. was unaware that when she spoke a wake word, an Alexa Device would record and store the ensuing private communications.

83.     Because E.J. was not a registered Alexa user, she never agreed to allow her communications to be recorded.  E.J.'s guardian likewise never agreed to allow Amazon to

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 14

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

record E.J.'s communications. Amazon recorded E.J.'s private communications without her consent, and without the consent of her guardian.

### Facts Specific to Plaintiff S.M. and C.M. (Michigan)

84.     Plaintiffs S.M. and C.M., and their parent Matt McLaughlin, are citizens of the State of Michigan. Plaintiffs are eleven and thirteen years old.

85.     S.M. and C.M.'s home contains an Amazon Echo, which was purchased in March 2019.

86.     S.M. and C.M. did not purchase or set up the Alexa Device, nor did they download the Alexa App.

87.     Although S.M. and C.M. were not registered Alexa users, they directly interacted with the Alexa Device on several occasions. For instance, they used it primarily to play music and check the weather. On those occasions, Amazon recorded S.M.'s and C.M.'s communications and stored those recordings on its servers.

88.     S.M. and C.M. were unaware that when they spoke a wake word, an Alexa Device would record and store the ensuing private communications.

89.     Because S.M. and C.M. were not registered Alexa users, they never agreed to allow their communications to be recorded. S.M. and C.M.'s guardian likewise never agreed to allow Amazon to record S.M.'s and C.M.'s communications. Amazon recorded S.M.'s and C.M.'s private communications without their consent, and without the consent of their guardian.

### Facts Specific to Plaintiff Z.S. (Michigan)

90.     Plaintiff Z.S., and his parent Stephanie Starling, are citizens of the State of Michigan. Plaintiff Z.S. is ten years old.

91.     Z.S.'s home contains two Amazon Echo Dots, which were purchased in Spring 2018 and February 2019.

92.     Z.S. did not purchase or set up the Echo Dots, nor did he download the Alexa App.

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

93.     Although Z.S. was not a registered Alexa user, he directly interacted with an Alexa Device on several occasions.  For instance, Z.S. used the Echo Dots to check the weather, tell jokes, and play games. On those occasions, Amazon recorded Z.S.'s communications and stored those recordings on its servers.

94.     Z.S. was unaware that when he spoke a wake word, an Alexa Device would record and store the ensuing private communications.

95.     Because Z.S. was not a registered Alexa user, he never agreed to allow his communications to be recorded.  Z.S.'s guardian likewise never agreed to allow Amazon to record Z.S.'s communications.  Amazon recorded Z.S.'s private communications without his consent, and without the consent of his guardian.

### Facts Specific to Plaintiffs O.B., S.B., F.B., and  E.B. (New Hampshire)

96.     Plaintiffs O.B., S.B., F.B., and E.B., and their parent Maria Prunier-Brown, are citizens of the State of New Hampshire.  Plaintiffs are eleven, thirteen, fourteen, and sixteen years old.

97.     O.B., S.B., F.B., and E.B.'s home contained an Amazon Echo Dot from December 2018 to the present.

98.     O.B., S.B., F.B., and E.B. did not purchase or set up the Alexa Devices, nor did they download the Alexa App.

99.     Although O.B., S.B., F.B., and E.B. were not registered Alexa users, they directly interacted with an Alexa Device on several occasions.  For instance, they regularly used it to play music, check the weather, and help with homework.  On those occasions, Amazon recorded E.B.'s, F.B.'s, S.B.'s, and O.B.'s communications and stored those recordings on its servers.

100.     O.B., S.B., F.B., and E.B. were unaware that when they spoke a wake word, an Alexa Device would record and store the ensuing private communications.

101.     Because O.B., S.B., F.B., and E.B. were not registered Alexa users, they never agreed to allow her communications to be recorded.  O.B., S.B., F.B., and E.B. 's guardian likewise never agreed to allow Amazon to record O.B.'s, S.B.'s, F.B.'s, and E.B.'s

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 16

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

communications. Amazon recorded O.B.'s, S.B.'s, F.B.'s, and E.B.'s private communications without their consent, and without the consent of their guardian.

### Facts Specific to Plaintiff R.B. (Pennsylvania)

102. Plaintiff R.B. and her parent Angela Brine are citizens of the Commonwealth of Pennsylvania. Plaintiff R.B. is four years old.

103. R.B.'s home contained an Amazon Echo Dot from August 2018 to the present.

104. R.B. did not purchase or set up the Amazon Echo Dot, nor did she download the Alexa App.

105. Although R.B. was not a registered Alexa user, she directly interacted with an Alexa Device on several occasions. For instance, she regularly used the Echo Dot to play music and answer questions. On those occasions, Amazon recorded R.B.'s communications and stored those recordings on its servers.

106. R.B. was unaware that when she spoke a wake word, an Alexa Device would record and store the ensuing private communications.

107. Because R.B. was not a registered Alexa user, she never agreed to allow her communications to be recorded. R.B.'s guardian likewise never agreed to allow Amazon to record R.B.'s communications. Amazon recorded R.B.'s private communications without her consent, and without the consent of her guardian.

### Facts Specific to Plaintiff N.S. (Washington)

108. Plaintiff N.S. and his parent Erin Shunn are citizens of the State of Washington. Plaintiff is fourteen years old.

109. N.S.'s home has contained an Amazon Echo Dot since June 2018.

110. N.S. did not purchase or set up the Amazon Echo Dot, nor did he download the Alexa App.

111. Although N.S. was not a registered Alexa user, he directly interacted with an Alexa Device on several occasions. For instance, he regularly used it to ask it the weather and

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 17

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

for help with math questions. On those occasions, Amazon recorded N.S.'s communications and stored those recordings on its servers.

112. N.S. was unaware that when he spoke a wake word, an Alexa Device would record and store the ensuing private communications.

113. Because N.S. was not a registered Alexa user, he never agreed to allow his communications to be recorded. N.S.'s guardian likewise never agreed to allow Amazon to record N.S.'s communications. Amazon recorded N.S.'s private communications without his consent, and without the consent of his guardian.

## CLASS ACTION ALLEGATIONS

114. Plaintiffs B.F. and A.A., by and through their guardian Joey Fields, and Plaintiffs W.B., A.L., K.S., and A.S., by and through their guardian Mistie Burris, bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **Florida Class:** All individuals in the State of Florida who used Alexa on a household Alexa Device while they were minors, but who have not downloaded and installed the Alexa App.

115. Plaintiff C.L., by and through her guardian Melissa Lock, brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **Illinois Class:** All individuals in the State of Illinois who used Alexa on a household Alexa Device while they were minors, but who have not downloaded and installed the Alexa App.

116. Plaintiffs J.B. and L.B., by and through their guardian Doug Boswell, bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of a Class of the following class of similarly situated individuals:

> **Maryland Class:** All individuals in the State of Maryland who used Alexa on a household Alexa Device while they were minors, but who have not downloaded and installed the Alexa App.

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 18

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

117.     Plaintiff C.O., by and through her guardian Alison Hall-O'Neil, and Plaintiffs W.R. and L.R., by and through their guardian William Rowe, bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following Class of similarly situated individuals:

> **Massachusetts Class:** All individuals in the Commonwealth of Massachusetts who used Alexa on a household Alexa Device while they were minors, but who have not downloaded and installed the Alexa App.

118.     Plaintiff E.J., by and through her guardian Corey Woodhouse; Plaintiffs S.M. and C.M., by and through their guardian Matt McLaughlin; and Plaintiff Z.S., by and through his guardian Stephanie Starling, bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **Michigan Class:** All individuals in the State of Michigan who used Alexa on a household Alexa Device while they were minors, but who have not downloaded and installed the Alexa App.

119.     Plaintiffs E.B., F.B., S.B., and O.B, by and through their guardian Maria Prunier-Brown, bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **New Hampshire Class:** All individuals in the State of New Hampshire who used Alexa on a household Alexa Device while they were minors, but who have not downloaded and installed the Alexa App.

120.     Plaintiff R.B., by and through her guardian Angela Brine, brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **Pennsylvania Class:** All individuals in the Commonwealth of Pennsylvania who used Alexa on a household Alexa Device while they were minors, but who have not downloaded and installed the Alexa App.

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 19

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

121.     Plaintiff N.S., by and through his guardian Erin Shunn, brings this action
pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following
class of similarly situated individuals:

> **Washington Class:** All individuals in the State of Washington
> whose communications who used Alexa on a household Alexa
> Device while they were minors, but who have not downloaded and
> installed the Alexa App.

122.     Excluded from each Class are: (1) any Judge or Magistrate presiding over this
action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents,
successors, predecessors, and any entity in which Defendants or their parents have a controlling
interest and their current or former employees, officers, and directors; (3) persons who properly
execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this
matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel
and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such
excluded persons.

123.     **Numerosity:** The exact number of members of the Classes is unknown and
unavailable to Plaintiff at this time, but individual joinder in this case is impracticable.  The
Classes likely consist of thousands of individuals, and their members can be identified through
Defendants' records.

124.     **Predominant Common Questions:** The Classes' claims present common
questions of law and fact, and those questions predominate over any questions that may affect
individual members of the Classes.  Common questions for the Classes include, but are not
limited to, the following:

> a.   Whether Alexa Devices make permanent voice recordings of children who
> interact with them.
>
> b.   Whether children who use Alexa Devices in their home have an objectively
> reasonable expectation of confidentiality.

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 20

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

c.   Whether Amazon fails to obtain consent to record children who are not registered users of Alexa Devices.

125.   **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the proposed Classes.  Plaintiffs and members of the Classes suffered invasions of privacy as a result of Defendants' uniform wrongful conduct.

126.   **Adequate Representation:** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Classes, and they have retained counsel competent and experienced in complex litigation and class actions.  Plaintiffs have no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so.  Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Classes.

127.   **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable.  This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

128.   Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## FIRST CAUSE OF ACTION
### Violation of the Florida Wiretap Statute, Fla. Stat. § 934.03
### (On Behalf of Plaintiffs B.F., A.A., W.B., A.L., K.S., A.S. and the Florida Class)

129.   Plaintiffs B.F., A.A., W.B., A.L., K.S., and A.S. and the Florida Class members (collectively, the "Florida Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

FIRST AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 21

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

130. The Florida Plaintiffs used Alexa Devices within their families' homes.

131. When the Florida Plaintiffs used the Alexa Devices, Amazon created a recording of their device interactions, transmitted those recording to Amazon's cloud servers, and retained copies of those recordings indefinitely.

132. Amazon did not warn or otherwise notify the Florida Plaintiffs that it would create persistent recordings of their Alexa interactions.

133. The Florida Plaintiffs did not expect, and had no reason to expect, that Amazon would create persistent recordings of their Alexa interactions.

134. The Florida Plaintiffs reasonably expected that their Alexa interactions would remain private.

135. The Florida Plaintiffs never provided Amazon with consent to record their Alexa interactions, nor did Amazon even attempt to seek such consent. The Florida Plaintiffs' guardians likewise never consented to Amazon recording their children's Alexa interactions.

136. Amazon created the recordings of the Florida Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

137. By creating persistent recordings of the Florida Plaintiffs' Alexa interactions, Amazon intentionally intercepted and used oral communications without the consent of all parties to those communications, in violation of Fla. Stat. § 934.03.

138. Amazon's intentional and unlawful recording violated the Florida Plaintiffs' right to privacy in their confidential communications, as protected by Fla. Stat. § 934.03.

139. Amazon is able, and the Court should require it, to destroy the recordings of the Florida Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

140. Amazon's intentional and unlawful recording caused the Florida Plaintiffs injury to their dignity, well-being, and security.

141. Plaintiffs B.F., A.A., W.B., A.L., K.S., and A.S., individually and on behalf of the Florida Class members, seek: (1) an injunction requiring Amazon to obtain consent prior to

FIRST AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 22

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day or $1,000, whichever is greater, under Fla. Stat. § 934.10; (3) punitive damages; and (4) costs and reasonable attorneys' fees under Fla. Stat. § 934.10.

## SECOND CAUSE OF ACTION
### Violation of the Illinois Wiretap Statute, 720 ILCS 5/14-2
### (On Behalf of Plaintiffs C.L. and the Illinois Class)

142.    Plaintiffs C.L. and the Illinois Class members (collectively, "the Illinois Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

143.    The Illinois Plaintiffs used Alexa Devices within their families' homes.

144.    When the Illinois Plaintiffs used the Alexa Devices, Amazon created a recording of their device interactions, transmitted those recording to Amazon's cloud servers, and retained copies of those recordings indefinitely.

145.    Amazon did not warn or otherwise notify the Illinois Plaintiffs that it would create persistent recordings of their Alexa interactions.

146.    The Illinois Plaintiffs did not expect, and had no reason to expect, that Amazon would create persistent recordings of their Alexa interactions.

147.    The Illinois Plaintiffs reasonably expected that their Alexa interactions would remain private.

148.    The Illinois Plaintiffs never provided Amazon with consent to record their Alexa interactions, nor did Amazon even attempt to seek such consent. The Illinois Plaintiffs' guardians likewise never consented to Amazon recording their children's Alexa interactions.

149.    Amazon created the recordings of the Illinois Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

150.    By using the Alexa Devices to create persistent recordings of the Illinois Plaintiffs Alexa interactions, Amazon intentionally intercepted, recorded, transcribed and used private conversations without the consent of all parties to those communications, in violation of 720 ILCS 5/14-2.

FIRST AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 23

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

151.    Amazon's intentional and unlawful recording violated the Illinois Plaintiffs' right to privacy in their confidential communications, as protected by 720 ILCS 5/14-2.

152.    Amazon is able, and the Court should require it, to destroy the recordings of the Illinois Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

153.    Amazon's intentional and unlawful recording caused the Illinois Plaintiffs injury to their dignity, well-being, and security.

154.    Plaintiff C.L., individually and on behalf of the Illinois Class members, seeks: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) nominal damages under 720 ILCS 5/14-2; (3) punitive damages; and (4) costs and reasonable attorneys' fees under 720 ILCS 5/14-6.

### THIRD CAUSE OF ACTION
**Violation of the Maryland Wiretap Statute, Md. Cts. & Jud. Pro. § 10-402**
**(On Behalf of Plaintiffs J.B. and L.B. and the Maryland Class)**

155.    Plaintiffs J.B., L.B., and the Maryland Class members (collectively, "the Maryland Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

156.    The Maryland Plaintiffs used Alexa Devices within their families' homes.

157.    When the Maryland Plaintiffs used the Alexa Devices, Amazon created a recording of their device interactions, transmitted those recording to Amazon's cloud servers, and retained copies of those recordings indefinitely.

158.    Amazon did not warn or otherwise notify The Maryland Plaintiffs members that it would create persistent recordings of their Alexa interactions.

159.    The Maryland Plaintiffs did not expect, and had no reason to expect, that Amazon would create persistent recordings of their Alexa interactions.

160.    The Maryland Plaintiffs reasonably expected that their Alexa interactions would remain private.

161.    The Maryland Plaintiffs never provided Amazon with consent to record their Alexa interactions, nor did Amazon even attempt to seek such consent.  The Maryland Plaintiffs' guardians likewise never consented to Amazon recording their children's Alexa interactions.

162.    Amazon created the recordings of the Maryland Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

163.    By creating persistent recordings of the Maryland Plaintiffs' Alexa interactions, Amazon intentionally intercepted and used oral communications without the consent of all parties to those communications, in violation of Md. Cts. & Jud. Pro. § 10-402.

164.    Amazon's intentional and unlawful recording violated of the Maryland Plaintiffs' right to privacy in their confidential communications, as protected by Md. Cts. & Jud. Pro. § 10-402.

165.    Amazon is able, and the Court should require it, to destroy the recordings of the Maryland Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

166.    Amazon's intentional and unlawful recording caused the Maryland Plaintiffs injury to their dignity, well-being, and security.

167.    Plaintiffs J.B. and L.B., individually and on behalf of the Maryland Class members, seek: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day or $1,000, whichever is greater, under Md. Cts. & Jud. Pro. § 10-410; (3) punitive damages; and (4) costs and reasonable attorneys' fees under Md. Cts. & Jud. Pro. § 10-410.

FIRST AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 25

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

# FOURTH CAUSE OF ACTION

## Violation of the Massachusetts Wiretap Statute, Mass. Gen. Laws ch. 272, § 99
### (On Behalf of Plaintiffs C.O., L.R., W.R. and the Massachusetts Class)

168.     Plaintiffs C.O., L.R., W.R., and the Massachusetts Class members (collectively "the Massachusetts Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

169.     The Massachusetts Plaintiffs used Alexa Devices within their families' homes.

170.     When the Massachusetts Plaintiffs used the Alexa Devices, Amazon created a recording of their device interactions, transmitted those recording to Amazon's cloud servers, and retained copies of those recordings indefinitely.

171.     Amazon did not warn or otherwise notify the Massachusetts Plaintiffs that Amazon would create persistent recordings of their Alexa interactions.

172.     The Massachusetts Plaintiffs did not expect, and had no reason to expect, that Amazon would create persistent recordings of their Alexa interactions.

173.     The Massachusetts Plaintiffs reasonably expected that their Alexa interactions would remain private.

174.     The Massachusetts Plaintiffs never provided Amazon with consent to record their Alexa interactions, nor did Amazon even attempt to seek such consent.  The Massachusetts Plaintiffs' guardians likewise never consented to Amazon recording their children's Alexa interactions.

175.     Amazon created the recordings of the Massachusetts Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

176.     By creating persistent recordings of the Massachusetts Plaintiffs' Alexa interactions, Amazon willfully intercepted and used oral communications without the consent of all parties to those communications, in violation of Mass. Gen. Laws ch. 272, § 99.

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

177.     Amazon's intentional and unlawful recording violated the Massachusetts Plaintiffs' right to privacy in their confidential communications, as protected by Mass. Gen. Laws ch. 272, § 99.

178.     Amazon is able, and the Court should require it, to destroy the recordings of violated the Massachusetts Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

179.     Amazon's intentional and unlawful recording caused the Massachusetts Plaintiffs injury to their dignity, well-being, and security.

180.     Plaintiffs C.O., L.R., and W.R., individually and on behalf of the Massachusetts Class members, seek: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day or $1,000, whichever is greater, under Mass. Gen. Laws ch. 272, § 99(Q), (3) punitive damages; and (4) costs and reasonable attorneys' fees under Mass. Gen. Laws ch. 272, § 99(Q)

## FIFTH CAUSE OF ACTION
### Violation of the Michigan Wiretap Statute, MCL 750.539c
### (On Behalf of Plaintiffs E.J., S.M., C.M., Z.S., and the Michigan Class)

181.     Plaintiffs E.J., S.M., C.M., Z.S., and the Michigan Class members (collectively, "the Michigan Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

182.     The Michigan Plaintiffs used Alexa Devices within their families' homes.

183.     When the Michigan Plaintiffs used the Alexa Devices, Amazon created a recording of their device interactions, transmitted those recording to Amazon's cloud servers, and retained copies of those recordings indefinitely.

184.     Amazon did not warn or otherwise notify the Michigan Plaintiffs that Amazon would create persistent recordings of their Alexa interactions.

FIRST AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 27

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

185. The Michigan Plaintiffs did not expect, and had no reason to expect, that Amazon would create persistent recordings of their Alexa interactions.

186. The Michigan Plaintiffs reasonably expected that their Alexa interactions would remain private.

187. The Michigan Plaintiffs never provided Amazon with consent to record their Alexa interactions, nor did Amazon even attempt to seek such consent. The Michigan Plaintiffs' guardians likewise never consented to Amazon recording their children's Alexa interactions.

188. Amazon created the recordings of the Michigan Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

189. By using the Alexa Devices to create persistent recordings of the Michigan Plaintiffs' Alexa interactions, Amazon intentionally eavesdropped and used oral communications without the consent of all parties to those communications, in violation of MCL 750.539c.

190. Amazon's intentional and unlawful recording violated the Michigan Plaintiffs' right to privacy in their confidential communications, as protected by MCL 750.539c.

191. Amazon is able, and the Court should require it, to destroy the recordings of the Michigan Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

192. Amazon's intentional and unlawful recording caused the Michigan Plaintiffs injury to their dignity, well-being, and security.

193. Plaintiffs E.J., S.M., C.M., and Z.S., individually and on behalf of the Michigan Class members, seek: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) nominal damages under MCL 750.539c; (3) punitive damages; and (4) costs and reasonable attorneys' fees under MCL 750.539c.

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

## SIXTH CAUSE OF ACTION
### Violation of the New Hampshire Wiretap Statute, N.H. Rev. Stat. § 570-A:2
### (On Behalf of Plaintiffs E.B., F.B., S.B., O.B. and the New Hampshire Class)

194.    Plaintiffs E.B., F.B., S.B., O.B., and the New Hampshire Class members (collectively, "the New Hampshire Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

195.    The New Hampshire Plaintiffs used Alexa Devices within their families' homes.

196.    When the New Hampshire Plaintiffs used the Alexa Devices, Amazon created a recording of their device interactions, transmitted those recording to Amazon's cloud servers, and retained copies of those recordings indefinitely.

197.    Amazon did not warn or otherwise notify the New Hampshire Plaintiffs that it would create persistent recordings of their Alexa interactions.

198.    The New Hampshire Plaintiffs did not expect, and had no reason to expect, that Amazon would create persistent recordings of their Alexa interactions.

199.    The New Hampshire Plaintiffs reasonably expected that their Alexa interactions would remain private.

200.    The New Hampshire Plaintiffs never provided Amazon with consent to record their Alexa interactions, nor did Amazon even attempt to seek such consent.  The New Hampshire Plaintiffs' guardians likewise never consented to Amazon recording their children's Alexa interactions.

201.    Amazon created the recordings of the New Hampshire Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

202.    By creating persistent recordings of the New Hampshire Plaintiffs' Alexa interactions, Amazon intentionally intercepted and used oral communications without the consent of all parties to those communications, in violation of N.H. Rev. Stat. § 570-A:2.

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 29

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

203. Amazon's intentional and unlawful recording violated the New Hampshire Plaintiffs' right to privacy in their confidential communications, as protected by N.H. Rev. Stat. § 570-A:2.

204. Amazon is able, and the Court should require it, to destroy the recordings of the New Hampshire Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

205. Amazon's intentional and unlawful recording caused the New Hampshire Plaintiffs injury to their dignity, well-being, and security.

206. Plaintiffs E.B., F.B., S.B. and O.B., individually and on behalf of the New Hampshire Class members, seeks: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day or $1,000, whichever is greater, under N.H. Rev. Stat. § 570-A:11; and (4) costs and reasonable attorneys' fees under N.H. Rev. Stat. § 570-A:11.

## SEVENTH CAUSE OF ACTION
### Violation of the Pennsylvania Wiretap Statute, 18 Pa. Cons. Stat. § 5703
### (On Behalf of Plaintiff R.B. and the Pennsylvania Class)

207. Plaintiff R.B. and the Pennsylvania Class members (collectively, "the Pennsylvania Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

208. The Pennsylvania Plaintiffs used Alexa Devices within their families' homes.

209. When the Pennsylvania Plaintiffs used the Alexa Devices, Amazon created a recording of their device interactions, transmitted those recording to Amazon's cloud servers, and retained copies of those recordings indefinitely.

210. Amazon did not warn or otherwise notify the Pennsylvania Plaintiffs that Amazon would create persistent recordings of their Alexa interactions.

211. The Pennsylvania Plaintiffs did not expect, and had no reason to expect, that Amazon would create persistent recordings of their Alexa interactions.

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

212. The Pennsylvania Plaintiffs reasonably expected that their Alexa interactions would remain private.

213. The Pennsylvania Plaintiffs never provided Amazon with consent to record their Alexa interactions, nor did Amazon even attempt to seek such consent. The Pennsylvania Plaintiffs' guardians likewise never consented to Amazon recording their children's Alexa interactions.

214. Amazon created the recordings of the Pennsylvania Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

215. By creating persistent recordings of the Pennsylvania Plaintiffs' Alexa interactions, Amazon intentionally intercepted and used oral communications without the consent of all parties to those communications, in violation of 18 Pa. Cons. Stat. § 5703.

216. Amazon's intentional and unlawful recording violated the Pennsylvania Plaintiffs' right to privacy in their confidential communications, as protected by 18 Pa. Cons. Stat. § 5703.

217. Amazon is able, and the Court should require it, to destroy the recordings of the Pennsylvania Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

218. Amazon's intentional and unlawful recording caused the Pennsylvania Plaintiffs injury to their dignity, well-being, and security.

219. Plaintiff R.B., individually and on behalf of the Pennsylvania Class members, seeks: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day or $1,000, whichever is greater, under 18 Pa. Cons. Stat. § 5725; (3) punitive damages; and (4) costs and reasonable attorneys' fees under 18 Pa. Cons. Stat. § 5725.

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 31

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

## EIGHTH CAUSE OF ACTION
### Violation of the Washington Wiretap Statute, WA Rev. Code § 9.73.030
### (On Behalf of Plaintiff N.S. and the Washington Class)

220.    Plaintiff N.S. and the Washington Class members (collectively, "the Washington Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

221.    The Washington Plaintiffs used Alexa Devices within their families' homes.

222.    When the Washington Plaintiffs used the Alexa Devices, Amazon created a recording of their device interactions, transmitted those recording to Amazon's cloud servers, and retained copies of those recordings indefinitely.

223.    Amazon did not warn or otherwise notify the Washington Plaintiffs that it would create persistent recordings of their Alexa interactions.

224.    The Washington Plaintiffs did not expect, and had no reason to expect, that Amazon would create persistent recordings of their Alexa interactions.

225.    The Washington Plaintiffs reasonably expected that their Alexa interactions would remain private.

226.    The Washington Plaintiffs never provided Amazon with consent to record their Alexa interactions, nor did Amazon even attempt to seek such consent.  The Washington Plaintiffs' guardians likewise never consented to Amazon recording their children's Alexa interactions.

227.    Amazon created the recordings of the Washington Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

228.    By creating persistent recordings of the Washington Plaintiffs' Alexa interactions, Amazon intentionally intercepted and used private oral conversations without the consent of all parties to those conversations, in violation of WA Rev. Code § 9.73.030.

229.    Amazon's intentional and unlawful recording violated the Washington Plaintiffs' right to privacy in their confidential communications, as protected by WA Rev. Code § 9.73.030.

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

230.     Amazon is able, and the Court should require it, to destroy the recordings of the Washington Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

231.     Amazon's intentional and unlawful recording caused the Washington Plaintiffs injury to their dignity, well-being, and security.

232.     Plaintiff N.S., individually and on behalf of the Washington Class members, seeks: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day up to $1,000 under WA Rev. Code § 9.73.060; (3) punitive damages; and (4) costs and reasonable attorneys' fees under WA Rev. Code § 9.73.060.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, respectfully request that the Court enter an order:

A.     Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiffs as representatives of the Classes, and appointing their counsel as class counsel;

B.     Declaring that Amazon's actions, as set out above, violate the state privacy laws cited herein;

C.     Requiring Amazon to delete all recordings of the Class members, and to implement functionality to prevent further recording of the Class members without prior consent;

D.     Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiffs and the Classes in an amount to be determined at trial;

E.     Awarding Plaintiffs and the Classes their reasonable litigation expenses and attorneys' fees;

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 33

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

F.      Awarding Plaintiffs and the Classes pre- and post-judgment interest, to the extent allowable;

G.      Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Classes; and

H.      Awarding such other and further relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted,

Dated: July 8, 2019

By:    */s/ Andrew S. Brown*
Andrew S. Brown, WSBA #49093
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
600 University St., Ste. 2800
Seattle, WA 98101
Tel.: 206.905.7000
Fax: 206.905.7100
andybrown@quinnemanuel.com

Andrew H. Schapiro (*pro hac vice* forthcoming)
Stephen Swedlow (*pro hac vice* forthcoming)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312.705.7400
Fax: 312.705.7401
andrewschapiro@quinnemanuel.com
stephenswedlow@quinnemanuel.com

Ashley C. Keller (*pro hac vice* forthcoming)
Travis D. Lenkner (*pro hac vice* forthcoming)
J. Dominick Larry (*pro hac vice* forthcoming)
KELLER LENKNER LLC
150 N. Riverside Plaza, Ste. 4270
Chicago, IL 60606
Tel.: 312.741.5220
Fax: 312.971.3502
ack@kellerlenkner.com

FIRST AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910 - 34

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

tdl@kellerlenkner.com
nl@kellerlenkner.com

Warren D. Postman (*pro hac vice* forthcoming)
KELLER LENKNER LLC
1300 Street N.W., Suite 400E
Washington, D.C.
Tel.: 202.749.8334
Fax: 312.971.3502
wdp@kellerlenkner.com

*Attorneys for Plaintiff and the Putative Class*

---

## CERTIFICATE OF SERVICE

I hereby certify that, on July 8, 2019, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which sent notification of such filing to counsel of record.

/s/ Andrew S. Brown
Andrew S. Brown, WSBA #49093

First Am. Class Action Compl.
Case No. 2:19-cv-910 - 35

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000