1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| B.F. and A.A., minors, by and through their guardian Joey Fields, et al.<br><br>              Plaintiffs,<br><br>    v.<br><br>AMAZON.COM, INC., a Delaware corporation, and A2Z DEVELOPMENT CENTER, INC., a Delaware corporation,<br><br>          Defendants. | Case No.: 2:19-cv-910-RAJ-MLP<br><br>**DEFENDANTS' MOTION TO STAY PENDING, AND TO PERMIT DISCOVERY NECESSARY FOR, DETERMINATION OF A MOTION TO COMPEL ARBITRATION**<br><br>**<u>NOTED ON MOTION CALENDAR</u>: Friday, August 23, 2019**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ...............................................................................1

STATEMENT OF THE ISSUES.................................................................................3

    A.    Procedural Posture ..........................................................................3

    B.    The Claims Raised in Plaintiffs' First Amended Complaint ...................................3

    C.    Amazon's Conditions of Use and Arbitration Agreements .....................................4

    D.    Defendants' Efforts to Avoid the Necessity of this Motion......................................4

DISCUSSION ..................................................................................................6

    A.    The Facts Concerning Plaintiffs' and Their Parents' Amazon Accounts Are Necessary to the Court's Determination of Whether Plaintiffs Are Required to Arbitrate Their Claims. ....................................................................6

        1.    Plaintiffs' and Their Parent's Amazon Account Identifiers Are Required to Show Plaintiffs or Their Parents Agreed to Arbitrate Their Disputes With Amazon. ....................................................................7

        2.    Plaintiffs' and Their Parents' Amazon Account Identifiers Are Relevant to Establish Equitable Estoppel. .....................................................8

    B.    Amazon's Responsive Pleading Should Be Stayed Until After the Determination of its Motion to Compel Arbitration. ...........................................10

        1.    The Court has the Inherent Ability to Stay This Case and Permit Focused Discovery in the Interests of Judicial Economy. ..........................10

CONCLUSION.................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bacon v. Avis Budget Grp., Inc.,*
    357 F. Supp. 3d 401 (2018) ...................................................................................................6

*Comer v. Micor, Inc.,*
    436 F.3d 1098 (9th Cir. 2006) ..............................................................................................8

*E. W. Bank v. Bingham,*
    992 F. Supp. 2d 1130 (W.D. Wash. 2014)............................................................................8

*Fed. Ins. Co. v. Holmes Weddle & Barcott PC,*
    No. C13-0926JLR, 2014 WL 358419 (W.D. Wash. Jan. 31, 2014) .....................................10

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.,*
    716 F.3d 764 (3d Cir. 2013)..................................................................................................6

*HTG Capital Partners, LLC v. John Doe(s),*
    Case No. 15 C 02129, 2015 WL 5611333 (N.D. Cal. Sept. 22, 2015)................................6, 7

*Kramer v. Toyota Motor Corp.,*
    705 F.3d 1122 (9th Cir. 2013) ..............................................................................................8

*Lamkin v. Morinda Properties Weight Parcel, LLC,*
    440 F. App'x 604 (10th Cir. 2011) .......................................................................................11

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936)..............................................................................................................10

*Newirth et al. v. Aegis Senior Communities LLC,*
    No. 17-17227 (9th Cir. July 24, 2019)...................................................................................11

*Nicosia v. Amazon.com, Inc.,*
    No. 14CV4513ILGLB, 2019 WL 2482674 (E.D.N.Y. June 14, 2019) ...................................9

*Setty v. Shrinvas Sugandhalaya LLP,*
    No. 2:17-cv-01146-RAJ, 2018 WL 5994987 (W.D. Wash. Nov. 15, 2018) ..........................11

*Suter v. MAT Three LLC,*
    No. SA CV 08-1193 DOC, 2009 WL 10698896 (C.D. Cal. Mar. 2, 2009)...........................11

*Townsend v. Quadrant Corp.,*
    173 Wash. 2d 451 (2012)...............................................................................................1, 2, 9

*Wilson v. Huuuge, Inc.,*
    No. 3:18-CV-05276-RBL, 2019 WL 998319 (W.D. Wash. Mar. 1, 2019)............................12

**STATUTES**

9 U.S.C. § 1 ("Federal Arbitration Act") .................................................................................11

**RULES**

Fed. R. Civ. P. 26(f) ........................................................................................................3, 5

**OTHER AUTHORITIES**

13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    § 3569 n.38 (3d ed. 2019) ...........................................................................................6

Manual for Complex Litigation (Fourth),
    §21.28 (2019) ...............................................................................................................12

AMAZON'S MOTION TO STAY
CASE NO.: 2:19-CV-910-RAJ-MLP

- iii -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

# INTRODUCTION AND SUMMARY

This Motion seeks identification of the Alexa accounts at issue in this action so that Amazon will have the information necessary to file a Motion to Compel Arbitration. Amazon.com, Inc. and a2z Development Center, Inc. respectfully request that their time to respond to the Complaint and other proceedings in this action be stayed until after the Court rules on the Motion to Compel Arbitration.

Plaintiffs are twelve parents or guardians (the "Parents") who have signed up for, and permitted their children to use, Amazon's Alexa service on devices in their homes. They assert that Alexa's recording of voices violates state laws. By suing in the name of their children, the Parents hope to avoid the contractual Conditions of Use ("COU") they entered with Amazon and Terms of Use ("TOU") for the Alexa service. These include both the Parents' express consent to voice recording and, more important for this motion, their express agreement to arbitrate any disputes about Alexa. The Parents cannot renege on their agreement to arbitrate. Either their express agreement to arbitrate or principles of equitable estoppel preclude parents who agree to arbitrate, and whose minor children used Alexa after the parents' agreement to arbitrate, from denying that obligation. *See Townsend v. Quadrant Corp.,* 173 Wash. 2d 451, 465 (2012) (holding that, where children received the benefit of the bargain their parents entered "the children are, thus, bound by the arbitration agreement to the same extent as their parents.")

Issues of arbitrability are front-and-center here, and Amazon intends to initially move to compel the Plaintiffs to arbitrate their claims. But before it can do so, Amazon needs to know the most basic information that identifies Plaintiffs' or their Parents' Amazon accounts, i.e., the identifying email address each Parent and Plaintiff uses to log into their accounts. Plaintiffs have refused to provide this basic information, even though they will clearly be required to produce it in discovery. By this motion, Amazon asks the Court to (i) schedule for initial disposition the question of whether Plaintiffs are bound by an agreement to arbitrate; (ii) permit Amazon the narrow discovery needed to file that motion to arbitrate (i.e., identification of the email addresses used to log into Plaintiffs or their Parents' accounts); and (iii) otherwise stay this action until the threshold motion to compel arbitration can be decided.

Amazon regrets needing to seek the Court's intervention to obtain such basic information. Amazon first requested account identifiers on June 27, 2019, in order to identify the accounts at issue in the action and proceed efficiently. Despite the minimal burden of providing that information, Plaintiffs have refused. Plaintiffs are obstructing Amazon from identifying or presenting the Court with information about the agreements, and the assent to arbitration that is applicable to each of Plaintiffs and their Parents. Each account's record also will contain other information that may bear on whether each Plaintiff is equitably estopped from avoiding the arbitration provision agreed to by his or her Parent.

The issue of arbitrability is a threshold one. If arbitration is ordered as to all or even some of the Plaintiffs, they cannot proceed further in this Court. But Plaintiffs' counsel insist that Amazon seek arbitration without even knowing which accounts are at issue. Plaintiffs offered to stipulate that a Parent for each minor activated the devices at issue, but that offer was conditioned on reservation of the argument that Plaintiffs or their Parents did *not* effectively assent to the COU or enter a binding agreement to arbitrate. That offer is meaningless because, without knowing the facts about the accounts at issue, Amazon could never present evidence of assent, or even which versions of the COU Plaintiffs or their Parents agreed to.

Moreover, Plaintiffs obviously do not intend to concede that their stipulation is sufficient to find equitable estoppel to compel arbitration under *Townsend*. If they were ready to concede that, then the parties could just head to arbitration now based on the stipulation alone. Rather, Plaintiffs intend to argue that their stipulation is insufficient to warrant arbitration, and yet deny Amazon the basic facts about the accounts at issue and their attributes that support the binding nature of the COU and the case for equitable estoppel.

Accordingly, Amazon respectfully requests that the Court sequence this action to deal with Amazon's Motion to Compel Arbitration first; to direct Plaintiffs to provide email addresses and phone numbers identifying the relevant accounts; and to stay the remainder of this action until the determination of arbitration is complete.

# STATEMENT OF THE ISSUES

## A.    Procedural Posture

Plaintiffs filed this action on June 12, 2019, naming one Plaintiff and one cause of action. On June 27, 2019, Defendants first asked Plaintiffs' counsel to provide the account identifying email addresses. In the same call, the parties discussed that the initial Plaintiff intended to add more Plaintiffs and agreed that Defendants would have thirty days after amendment to respond to the First Amended Complaint.  Dkt. 23.

Plaintiffs filed their First Amended Complaint (FAC, Dkt. 24) on July 8, 2019, adding 21 more Plaintiffs and seven more causes of action. Defendants' response to the FAC became due August 7.  As discussed further below, the parties held a Rule 26(f) conference, negotiated over production of the email addresses and the schedule of the action, and reached impasse on August 2, 2019.  At that time, Amazon served an interrogatory formally asking for the email addresses.

## B.    The Claims Raised in Plaintiffs' First Amended Complaint

The FAC alleges that each Plaintiff's home "contained" or "has contained" between one and ten Amazon Echos, Dots, or other Alexa devices beginning at some time from 2015 to 2019. FAC ¶¶ 43, 49, 55, 61, 67, 73, 79, 85, 91, 97, 103. The FAC omits any allegations about how it happened that "each home has contained" any of those devices.  But Plaintiffs have, in meet and confer, offered to stipulate that all devices were activated by Plaintiffs' Parents.  Declaration of Laurence Pulgram ¶ 13, 17, Ex. D at 1.  The FAC does not identify when each device was activated, such that the activation flow for some date could be identified.  Instead, it variously identifies that some devices have been in a home since a particular day, or month, or season, or year.  FAC ¶¶ 43, 49, 55, 61, 67, 73, 79, 85, 91, 97, 103.   For one cluster of four Plaintiffs, aged three to 17 and represented by guardian Mistie Burris, the Complaint alleges the months of purchase of two Amazon Fire Sticks, four Amazon Fire Tablets, and four Amazon Echo Dots, but not when they were activated or which of the Plaintiffs used which devices.  By such oblique pleadings, Plaintiffs have made it impossible for Amazon to identify which devices and Amazon accounts are at issue in this action.

Plaintiffs allege that "Alexa Devices are designed to record and respond to communications

1   immediately after an individual says the wake word (typically 'Alexa' or 'Echo')." FAC ¶ 27.

2   Plaintiffs' legal theory is that when recordings are made as needed to transmit requests over the

3   internet and respond to them, Amazon violates the laws of eight states governing unauthorized

4   recording of confidential communications. FAC ¶¶ 129-32. The FAC also includes lengthy, and

5   legally gratuitous,[1] allegations about what Amazon does with those recordings.

6   ### C. Amazon's Conditions of Use and Arbitration Agreements

7   To activate the Alexa service on a device, a user must have an Amazon account.

8   Declaration of Brian Buckley ¶ 3. To set up the Alexa service, the user is required to click through

9   a process to agree to Amazon's COU and Privacy Policy. *Id.* A user cannot proceed with activating

10  Alexa without going through the process to agree to the COU. *Id.* Since August 2011, Amazon's

11  COUs have included an arbitration agreement with a class action waiver provision. *Id.* ¶ 4. The

12  arbitration provision in effect in 2014, when Alexa first launched, provided, in part: "Any dispute

13  or claim relating in any way to your use of any Amazon Service, or to any products or services

14  sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration,

15  rather than in court." *Id.*, Ex. 1 at 5, "Disputes". In addition to agreeing to the Amazon COUs to

16  set up an Alexa device, the user must agree to the Alexa Terms of Use ("TOU"). Those terms

17  provide that "Any dispute or claim arising from or relating to this Agreement or Alexa is subject

18  to the binding arbitration, governing law, disclaimer of warranties, limitation of liability, and all

19  other terms in the Amazon.com Conditions of Use. By using Alexa, you agree to be bound by

20  those terms." *Id.* ¶ 5, Ex. 2 at 3, § 3.6. As noted above, Plaintiffs have reserved the argument that

21  the activation processes followed were not sufficient to constitute an agreement to arbitrate, even

22  by their Parents.

23  ### D. Defendants' Efforts to Avoid the Necessity of this Motion

24  From the outset, Amazon has advised Plaintiffs that identification of the account

25  _____

26  [1] The statutes the FAC invokes concern the creation, not the retention, of recordings. At the
    appropriate time, Amazon will rebut Plaintiffs' various other allegations. Among other things, it
    will establish that it is the parents, not Amazon, who are responsible here. After agreeing to the
27  recording of voices necessary to operate the Alexa service (FAC at 2:19-20), the Parents permitted
    their children to use the devices. But the first order of business is to determine whether these are
28  issues required to proceed in arbitration, rather than this Court.

identifying emails and phone numbers would be essential and has attempted to obtain them without resort to the Court. Plaintiffs initially didn't respond following a request in the initial phone call for that information on June 27. Amazon followed up with a reminder and second request on July 9. Pulgram Decl. ¶ 3, Ex. A at 1. On July 10, Plaintiffs declined to provide that information "at this time." *Id.* ¶ 4, Ex. A at 2. The next day, Amazon renewed its request:

> I'm sorry to hear this and request your team reconsider. I expect you've collected this information already from your clients. **It's an essential and preliminary fact for the case, establishing what terms apply to the use of the devices and the identity of those agreeing to those terms.** There's no burden in sharing this information, and having chosen to act as plaintiffs, your clients invited inquiry by Amazon. **Withholding it only serves to complicate, delay and require us to go to the Court to get it.** Please let us know by Monday July 15 whether you'll cooperate and supply this.

*Id.* ¶ 5, Ex. A at 1 (emphasis added). While Defendants did not expressly address arbitration, they did highlight their need to understand who agreed to what contractual terms, which Plaintiffs knew included arbitration. When Plaintiffs failed again to respond, Defendants renewed their request a fourth time, on July 23. Again, Plaintiffs refused. *Id.* ¶ 6.

At the Rule 26(f) conference on July 30, Amazon advised that it intended to file a motion to compel arbitration as soon as it could after obtaining the email addresses it had requested. Pulgram Decl. ¶¶ 8–9. Discussions ensued over the next four days concerning whether Plaintiffs would produce that information and a schedule for that motion. *Id.* ¶¶ 10–19, Exs. B at 1, C at 1–2, D.

On July 31, Plaintiffs suggested that they would be willing to provide the serial numbers of their devices. Amazon explained that serial numbers were not sufficient to identify the accounts that utilized the devices. *Id.* ¶¶ 11–12. On August 1, both parties agreed to consider whether they could accept providing only the email addresses for Plaintiffs and their guardians. *Id.* ¶ 13. The next day, Amazon agreed to that narrowing (*Id.* ¶ 14, Ex. C at 1), but Plaintiffs then declined to accept it. *Id.* ¶ 15.

On August 1, Plaintiffs proposed, in lieu of identifying the accounts by email, to stipulate that all Plaintiffs' devices had been activated by a Parent, so that "Defendants do not have to do a bunch of work on assent" to the COU. *Id.* ¶ 13. On August 2, Plaintiffs pulled back, stating that

they did not plan to stipulate that going through the activation process actually constituted the assent necessary to bind even the Parents. Rather, Plaintiffs reserved the argument that some or all of the sign-up processes between 2015 and 2019 were insufficient to bind the Parents. *Id.* ¶ *15*. In all events, as Amazon's counsel explained, neither proposed stipulation would eliminate the need for Amazon to know which accounts were at issue. *Id.* ¶¶ 15–18, Exs. C at 1–2, D at 1. Plaintiffs still refused to provide the email addresses, attempting to force Amazon to address arbitration without even knowing the account agreements and assent flows at issue. This motion followed.

## DISCUSSION

### A. The Facts Concerning Plaintiffs' and Their Parents' Amazon Accounts Are Necessary to the Court's Determination of Whether Plaintiffs Are Required to Arbitrate Their Claims.

So that Amazon can present facts for its arbitration motion, Plaintiffs must provide Amazon with the email addresses or phone numbers used to log in to the Alexa accounts in their households. "[I]f the complaint and supporting documents are unclear regarding an agreement to arbitrate, the parties should be entitled to limited discovery on the question of arbitrability." 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3569 n.38 (3d ed. 2019). We found no case where a plaintiff refused to provide even the basic information sufficient to enable a defendant to identify the particular contract that might be subject to an arbitration motion. But courts have ordered discovery on the issues necessary for the Court (as opposed to an arbitrator) to decide the arbitration motion on a factual record.

The Third Circuit, for example, has held that a district court erred in denying defendants' motion to compel arbitration "without first allowing limited discovery and then entertaining their motion under a summary judgment standard." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 780 (3d Cir. 2013). The court held that such a standard is appropriate where the basis of arbitration is not clear from the face of a complaint, or where the plaintiff presents reliable evidence that it did not intend to be bound by the agreement. *Id.* at 774; *see also Bacon v. Avis Budget Grp., Inc.*, 357 F. Supp. 3d 401, 431 (2018) (same). *HTG Capital Partners, LLC v. John Doe(s)*, while procedurally different, recognized the need for disclosure from a third party (in that

case to the court) of information sufficient to identify whether the defendants were parties to arbitration agreements in advance of filing motions to compel arbitration. *See* Case No. 15 C 02129, 2015 WL 5611333, *1, *4 (N.D. Ill. Sept. 22, 2015). There, the Plaintiff had sued Doe defendants because their identities were unknown. Defendants moved to quash subpoenas to reveal their identities, arguing that the claims were subject to arbitration agreements. Recognizing a "chicken-or-the-egg quality to the procedural posture," because the identity of the defendants was necessary to determine whether the defendants could bring an arbitration motion, the court required the third-party subpoena recipient to identify to the court whether the defendants were parties to an agreement with an arbitration provision *before* defendants filed an arbitration motion. *Id.* at 1.

> **1.** **Plaintiffs' and Their Parent's Amazon Account Identifiers Are Required to Show Plaintiffs or Their Parents Agreed to Arbitrate Their Disputes With Amazon.**

To present evidence to the Court on the foundational issue of whether Plaintiffs or the Parents entered an agreement to arbitrate, Amazon needs to identify their accounts through the email address or phone number used to log into their accounts. This basic information will enable Amazon to review its customer records and identify: (1) when the Amazon account holder created an Amazon account; (2) the Amazon COU in effect at the time of account creation; (3) the process by which the account holder was presented with and agreed to COUs; (4) additional times when the account holder assented to Amazon's COUs; (5) when the account holder activated Alexa devices in his or her home; (6) the process the user went through to set up the Alexa devices; and (7) the Alexa TOU in effect when the account holder activated the Alexa devices. Buckley Decl. ¶ 6. If Plaintiffs' account information reflects that the minors have their own accounts with Amazon they will be directly bound by the arbitration clauses. While the FAC alleges that Plaintiffs themselves "were not registered Alexa users" (e.g., FAC ¶¶ 50), the simple way to test that proposition is to disclose what accounts *were* used for Plaintiffs' access to Alexa. But Amazon cannot identify with certainty these facts where it lacks information identifying Plaintiffs' and their Parents' Amazon accounts. Moreover, because Plaintiffs have reserved their right to challenge contractual assent, Amazon must set forth the relevant facts establishing the Plaintiffs' or their

Parent's assent to the COU containing an agreement to arbitrate. Accordingly, Plaintiffs and their Parents should be required to provide Amazon with their Amazon account identifiers.

### 2. Plaintiffs' and Their Parents' Amazon Account Identifiers Are Relevant to Establish Equitable Estoppel.

Information about Plaintiffs and their Parents' Amazon and Alexa accounts is also needed to show that Plaintiffs are required to arbitrate this dispute under principles of equitable estoppel. "[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187–88 (9th Cir. 1986)). When determining whether a non-signatory is subject to an arbitration agreement, courts are to look to state law. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013). Here, the Amazon COUs provide that Washington state law applies. Buckley Decl. Ex. 1 at 6, "Applicable Law". Agency, equitable estoppel, and third-party beneficiaries are among the principles courts have applied to bind non-signatories to contracts. *Comer*, 436 F.3d at 1101.

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *See Comer*, 436 F.3d at 1101 (internal citations and quotations omitted). As this Court has previously observed, the Ninth Circuit has recognized two ways in which equitable estoppel is applied to determine whether a non-signatory is subject to an arbitration agreement:

> In the first, a nonsignatory may be held to an arbitration clause where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement. In the second, a signatory may be required to arbitrate a claim brought by a nonsignatory where the subject matter of the dispute is intertwined with the contract providing for arbitration, and the nonsignatory and signatory parties have a close relationship.

*E. W. Bank v. Bingham*, 992 F. Supp. 2d 1130, 1133 (W.D. Wash. 2014) (finding equitable estoppel did not apply due to the absence of a close relationship between the signatory and non-signatory) (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009)). Indeed, another U.S. District Court has applied these principles to require the spouse of an Amazon account holder to arbitrate his tort claims against Amazon where the "plaintiff knowingly accepted the benefit of

AMAZON'S MOTION TO STAY    - 8 -    **FENWICK & WEST LLP**
CASE NO.: 2:19-CV-910-RAJ-MLP    1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

[his wife's] contractual relationship with Amazon" because he used his wife's account to enjoy Amazon's services. *See Nicosia v. Amazon.com, Inc.*, No. 14CV4513ILGLB, 2019 WL 2482674, at *15 (E.D.N.Y. June 14, 2019).

The Washington Supreme Court's interpretation of equitable estoppel governs the Amazon COU. That court has required plaintiff children to arbitrate a claim against a defendant that had an arbitration agreement with the children's parents. *See Townsend*, 173 Wash. 2d at 461–62. There, the children's parents had entered a contract with a homebuilder for the construction of the home the parents and children ultimately lived in. The contract included a provision in which the parents agreed to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement . . . ." *Id.* at 454. After living in the homes that had been built under these contracts, parents and their non-signatory children brought both contract and tort claims against the builders, alleging that the homes had mold, poisonous gasses, and numerous construction defects. *Id.* The Washington Supreme Court held that the children were equitably estopped from avoiding the arbitration agreement, because "the children received the benefit of the bargain in the transaction with [builders] to the same extent as their parents." *Id.* at 461–62.

In *Nicosia*, *Townsend* and the other cases that consider whether an arbitration agreement may be equitably enforced by or against a non-signatory, the courts consider the facts of both the signatory and non-signatory's uses of the products or services acquired under the contract, and the benefits enjoyed by the non-signatory. *Nicosia*, 2019 WL 2482674; *Townsend*, 173 Wash. 2d. Whether the Plaintiffs are similarly bound here to the arbitration agreements their Parents entered with Amazon may depend, in part, on facts about the Plaintiffs' Parents' accounts and the use of those accounts. Account information includes the frequency of use; whether Amazon kid skills – services such as quizzes and educational tools for minor users – had been enabled with the Parents' express, verifiable consent to the minor Plaintiffs' use; whether voice recordings had been deliberately deleted; the number of devices that have been in use in the home over time; and the names given to those devices, e.g., "Jack's Dot," or "Playroom Echo." Any of these facts may be relevant to the Plaintiffs' receipt of the benefit of the bargain their Parents entered when the agreed to the Amazon COU and Alexa TOU, and thus to the issue of equitable estoppel.

The very fact that Plaintiffs offered to stipulate that each of their Parents activated their devices, while they simultaneously dispute arbitrability, reflects their position that such stipulated fact, alone, cannot warrant compelling arbitration. Amazon is entitled to establish the facts *beyond* their stipulation that could support a claim to equitable estoppel. Those facts are available through the simple process of providing an account identifier for those persons who have chosen to sue Amazon.

Finally, there is no question whatever that Amazon will ultimately be entitled to this information in discovery. Consequently, Plaintiffs' tactics are purely obstructionist and designed only to impair a fulsome consideration of the arbitrability issues on a complete factual record. No principle of fairness or justice would be served by rewarding that tactic.

**B.** **Amazon's Responsive Pleading Should Be Stayed Until After the Determination of its Motion to Compel Arbitration.**

**1.** **The Court has the Inherent Ability to Stay This Case and Permit Focused Discovery in the Interests of Judicial Economy.**

The Court should exercise its inherent power to stay this case and continue Defendants' responsive pleading deadline until after Amazon's motion to compel arbitration is resolved. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). Courts weigh three factors in considering a motion to stay: "(1) the possible damage that may result from the granting of the stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplification or complication of issues, proof, and questions of law that could be expected to result from a stay." *Fed. Ins. Co. v. Holmes Weddle & Barcott PC*, No. C13-0926JLR, 2014 WL 358419, at *3 (W.D. Wash. Jan. 31, 2014) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55)). Here, the factors weigh in favor of a stay.

First, there is little risk of "damage" from a stay. This is a complex class action, one of several pending nationwide, seeking substantial monetary relief based on statutory damages. It is not a sudden action for an injunction, where even short delay threatens injustice. Properly

managing and sequencing such a case does not damage Plaintiffs. Nor can Plaintiffs object to "delay" from this motion, where they knew this information was needed to identify their accounts six weeks ago, were repeatedly advised it was needed to launch the case, but refuse, even now, to provide it even after being told it was essential to the motion to compel arbitration. If Plaintiffs wanted to move faster, they could have done so, and still can, by simply providing the information. *See generally* Pulgram Decl. Further, if the Court finds Plaintiffs subject to arbitration, they do not have a right to litigate the claims at all. *See Suter v. MAT Three LLC,* No. SA CV 08-1193 DOC (MLGx), 2009 WL 10698896, at *3 (C.D. Cal. Mar. 2, 2009).

Second, any possible damage due to delay is outweighed by the hardship and inequity in allowing the case to move forward before determining arbitrability. *Cf. Setty v. Shrinvas Sugandhalaya LLP*, No. 2:17-cv-01146-RAJ, 2018 WL 5994987, at *2 (W.D. Wash. Nov. 15, 2018) (granting stay pending appeal of arbitration motion, finding that hardship or inequity of forcing the parties to move forward outweigh possible harms due to delay). Amazon is entitled to the benefits of their arbitration agreements, as the Federal Arbitration Act strongly compels. If the stay is denied, Amazon would face the inequity of having to litigate while pursuing its right to arbitrate. *See, e.g.*, *id.* It could also be put at risk of waiving its right to compel arbitration by proceeding with litigation on the merits. *See Newirth et al. v. Aegis Senior Communities LLC*, No. 17-17227, at 12 (9th Cir. July 24, 2019) (finding that defendant waived its right to compel arbitration by filing a motion to dismiss with prejudice before refiling its arbitration motion); *Lamkin v. Morinda Properties Weight Parcel, LLC*, 440 F. App'x 604, 607–08 (10th Cir. 2011) (defendant may file a motion to stay proceedings and compel arbitration in lieu of answer; "requiring a party to file an answer denying material allegations in the complaint and asserting potential affirmative defenses—in short, formally and substantively engaging *in the merits of the litigation*—in order to enforce its right *not to litigate* is a non-sequitur") (emphasis in original). It would be inequitable to allow Plaintiffs' concerted refusal to provide the parties' account information to impair Defendants' rights to arbitration.

Third, the orderly course of justice strongly favors the threshold determination of arbitrability, and a stay to that end should be granted here. A stay avoids litigation that may be

unnecessary, expensive or duplicative if the case is ultimately sent to arbitration. "Courts generally view the question of arbitrability as a 'threshold' or 'gateway' issue, to be decided before other matters when it is timely raised by a motion to compel arbitration, or to stay or dismiss a civil action in favor of arbitration." Manual for Complex Litigation (Fourth), § 21.28 (2019); *see also, e.g.*, *Wilson v. Huuuge, Inc.*, No. 3:18-CV-05276-RBL, 2019 WL 998319, at *5 (W.D. Wash. Mar. 1, 2019) (granting motion to stay proceedings pending appeal of denial of motion to compel arbitration based on terms of use in mobile app). There is even greater reason to grant a stay here than in an appeal of an order finding no basis to arbitrate, as the Court has not yet considered arbitrability in the first instance. *See id.*

For these reasons, the Court should use its inherent power to grant a stay pending determination of arbitrability.

## **CONCLUSION**

For the reasons stated above, Defendants respectfully requests that the Court require Plaintiffs to disclose to Defendants the email addresses or phone numbers used to login to the Amazon accounts in their households in furtherance of Amazon's motion to compel arbitration; set a briefing schedule on Amazon's arbitration motion; and stay the remainder of this action until Amazon's motion to compel arbitration is resolved.

Dated:    August 7, 2019

Respectfully submitted,

FENWICK & WEST LLP

By: *s/Jeffrey A. Ware*
  Jeffrey A. Ware, WSBA No. 43779

  1191 Second Avenue, 10th Floor
  Seattle, WA  98101
  Telephone:  206.389.4510
  Facsimile:  206.389.4511
  Email:    jware@fenwick.com

  Laurence F. Pulgram (admitted *pro hac vice*)
  Tyler G. Newby (admitted *pro hac vice*)
  Molly R. Melcher (admitted *pro hac vice*)
  Armen N. Nercessian (admitted *pro hac vice*)
  Avery L. Brown (admitted *pro hac vice*)
  FENWICK & WEST LLP
  555 California Street, 12th Floor

San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile:  415. 281.1350
Email:      lpulgram@fenwick.com
            tnewby@fenwick.com
            mmelcher@fenwick.com
            anercessian@fenwick.com
            avery.brown@fenwick.com

Mary M. Griffin (admitted *pro hac vice*)
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile:  650.938.5200
Email:      mgriffin@fenwick.com

*Attorneys for Defendants*
AMAZON.COM, INC. and
A2Z DEVELOPMENT CENTER, INC.

# CERTIFICATE OF SERVICE

I, Jeffrey Ware, hereby certify that on August 7, 2019, I caused the foregoing

**DEFENDANTS' MOTION TO STAY PENDING, AND TO PERMIT DISCOVERY**

**NECESSARY FOR, DETERMINATION OF A MOTION TO COMPEL ARBITRATION**

to be served on the following parties as indicated below:

| | |
|---|---|
| Lauren Hudson, WSBA No. 55124<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>600 University St., Ste. 2800<br>Seattle, WA 98101<br>laurenhudson@quinnemanuel.com<br><br>Andrew H. Schapiro (*pro hac vice*)<br>Stephen Swedlow (*pro hac vice*)<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>191 N. Wacker Drive, Suite 2700 Chicago, IL<br>60606 Tel: 312.705.7400 Fax: 312.705.7401<br>andrewschapiro@quinnemanuel.com<br>stephenswedlow@quinnemanuel.com<br><br>Ashley C. Keller (*pro hac vice*)<br>Travis D. Lenkner (*pro hac vice*)<br>J. Dominick Larry (*pro hac vice*)<br>KELLER LENKNER LLC<br>150 N. Riverside Plaza, Ste. 4270<br>Chicago, IL 60606<br>Tel.: 312.741.5220<br>Fax: 312.971.3502<br>ack@kellerlenkner.com<br>tdl@kellerlenkner.com<br>nl@kellerlenkner.com<br><br>Warren D. Postman (*pro hac vice*)<br>KELLER LENKNER LLC<br>1300 Street N.W., Suite 400E<br>Washington, D.C.<br>Tel.: 202.749.8334<br>Fax: 312.971.3502<br>wdp@kellerlenkner.com<br><br>*Attorneys for Plaintiff and the Putative Class* | [ ]  By United States Mail<br>[ ]  By Legal Messenger<br>[X] By Electronic CM/ECF<br>[ ]  By Overnight Express Mail<br>[ ]  By Facsimile<br>[ ]  By Email [by agreement of counsel] |

Dated:  August 7, 2019

By: *s/ Jeffrey A. Ware*
For Jeffrey A. Ware, WSBA No. 43779
FENWICK & WEST LLP