THE HONORABLE RICHARD A. JONES
THE HONORABLE MICHELLE L. PETERSON

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| B.F. and A.A., minors, by and through their guardian Joey Fields, et al., | Case No.: 2:19-cv-910-RAJ-MLP |
| Plaintiffs, | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION** |
| vs. | **NOTED ON MOTION CALENDAR FRIDAY, OCTOBER 4, 2019** |
| AMAZON.COM, INC., a Delaware corporation, and A2Z DEVELOPMENT CENTER, INC., a Delaware corporation, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

OPPOSITION TO MOTION TO COMPEL
CASE NO. 2:19-CV-910-RAJ-MLP

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ....................................................................................................................... 4

      A.     Amazon Cannot Compel Arbitration on Equitable Estoppel Grounds
            Because Plaintiffs Have not Exploited the Contract Containing the
            Arbitration Clause. ............................................................................................... 5

      B.     Plaintiffs Cannot Be Compelled To Arbitrate on an "Account Sharing"
            Theory. ................................................................................................................ 10

      C.     Amazon Cannot Compel Arbitration via the "Intertwined / Close
            Relationship" Theory of Equitable Estoppel. ..................................................... 12

      D.     There is Nothing Unfair About Holding Amazon to the Consequences of
            Its Contractual Choices. ..................................................................................... 14

CONCLUSION .................................................................................................................. 15

CERTIFICATE OF SERVICE ......................................................................................... 17

OPPOSITION TO MOTION TO COMPEL
CASE NO. 2:19-CV-910-RAJ-MLP

i

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

## <u>TABLE OF AUTHORITIES</u>

**Page**

### Cases

*Brown v. Comcast Corp.*,
    No. 16-cv-00264ABSPX, 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016) ....................... 10, 14

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*,
    816 F.3d 1208 (9th Cir. 2016) ............................................................................................ 1

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) ....................................................................................*passim*

*Double D Trade Co., LLC v. Lamex Foods, Inc.*,
    No. C09-0919RSL, 2009 WL 4927899 (W.D. Wash. Dec. 14, 2009) ............................... 8, 13

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
    269 F.3d 187 (3d Cir. 2001) ......................................................................................... 12, 13

*E. W. Bank v. Bingham*,
    992 F. Supp. 2d 1130 (W.D. Wash. 2014) .......................................................................... 7

*Franklin Templeton Bank & Tr. v. Butler*,
    No. 2:15-CV-435-JNP-EJF, 2016 WL 3129141 (D. Utah June 2, 2016) ............................ 8

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
    No. SACV111062JVSANX, 2012 WL 12960766 (C.D. Cal. Dec. 7, 2012) ....................... 14

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
    206 F.3d 411 (4th Cir. 2000) ............................................................................................. 9

*Janvey v. Alguire*,
    847 F.3d 231 (5th Cir. 2017) ........................................................................................... 14

*Joseph v. TrueBlue, Inc.*,
    No. C14-5963 BHS, 2015 WL 575289 (W.D. Wash. Feb. 11, 2015) .................................. 8

*Loyola v. Am. Credit Acceptance LLC*,
    No. 2:19-CV-00002-SMJ, 2019 WL 1601362 (E.D. Wash. Apr. 15, 2019) ......................... 8

*Madera W. Condo. Ass'n v. Marx/Okubo*,
    175 Wash. App. 1032 (2013) .......................................................................................... 6, 7

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*,
    268 F.3d 58 (2d Cir. 2001) ............................................................................................... 13

*McKee v. Audible, Inc.*,
    No. CV 17-1941-GW(EX), 2017 WL 4685039 (C.D. Cal. July 17, 2017) .......................... 8

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
    337 F.3d 125 (2d Cir. 2003) ............................................................................................. 13

OPPOSITION TO MOTION TO COMPEL
CASE NO. 2:19-CV-910-RAJ-MLP

ii

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009) ...........................................................................6, 7, 14

*Nicosia v. Amazon.com, Inc.*,
   384 F. Supp. 3d 254 (E.D.N.Y. 2019) ..................................................................10, 11

*Payne v. Amazon.com, Inc.*,
   No. 2:17-CV-2313-PMD, 2018 WL 4489275 (D.S.C. July 25, 2018)......................9

*Powell v. Sphere Drake Ins. P.L.C.*
   97 Wash. App. 890 (1999), *as amended* (Sept. 10, 1999)........................5, 7, 9, 15

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ..................................................................................................1

*Satomi Owners Ass'n v. Satomi, LLC*,
   167 Wash.2d 781 (2009)...........................................................................................5

*Stuart v. Korey*,
   No. C16-1815 RSM, 2017 WL 1496360 (W.D. Wash. Apr. 26, 2017) ....................8

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*,
   10 F.3d 753, 757 (11th Cir.1993) ..........................................................................13

*SVN Cornerstone LLC v. N. 807 Inc.*,
   199 Wash. App. 1010 (2017) ....................................................................................7

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
   64 F.3d 773 (2d Cir. 1995) .........................................................................12, 13, 15

*Townsend v. Quadrant Corp.*,
   173 Wash. 2d 451 (2012)..............................................................................*passim*

*Univera, Inc. v. Terhune*,
   No. C09-5227 RBL, 2009 WL 3877558 (W.D. Wash. Nov. 18, 2009) ....................8

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989)..................................................................................................4

OPPOSITION TO MOTION TO COMPEL
CASE NO. 2:19-cv-910-RAJ-MLP

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

iii

# INTRODUCTION

It is a "fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). And whether a party has entered into a binding contract to arbitrate "is strictly a matter of consent." *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1212 (9th Cir. 2016) (internal citations and quotation omitted). Every contract cited by Amazon in its Motion to Compel says that Amazon is forming an arbitration agreement with *the registered user* of an Alexa device. The contracts on which Amazon relies do not even arguably say that the registered user is exercising parental authority to consent for his or her children. With a few keystrokes, Amazon could have included such language. But it chose not to do so. Amazon's motion to compel tacitly concedes these points. It never argues that Plaintiffs are parties to an agreement to arbitrate with Amazon. And it never argues that parents agreed that children would be bound by Amazon's arbitration agreement. Instead, Amazon's motion attempts to get through "equity" what it failed to obtain by contract.

Amazon's equity-based arguments ignore the very case law Amazon cites. Washington law holds that a party to an arbitration agreement can invoke equity to compel a non-signatory to arbitrate claims if she "knowingly exploits" a contract containing the arbitration requirement. In other words, knowingly exploiting a contract can constitute consent to the agreement. But courts uniformly and sensibly hold that a non-signatory "knowingly exploits" a contract where she brings claims *under the contract*. A non-signatory does *not* consent to a contract where she brings only tort or statutory claims. Plaintiffs here do not bring any contract-based claims against Amazon, so their choice to litigate does not constitute equitable consent to Amazon's arbitration clause.

Amazon also relies on a case from the Eastern District of New York in which a plaintiff was compelled to arbitrate because he had obtained access to a service that was available only to users who agreed to arbitrate, and he had done so by pretending that he was such a user. That case has no application to Plaintiffs, who used a device that Amazon makes freely available to non-registered users, who never mispresented to Amazon that they were registered users, and

OPPOSITION TO MOTION TO COMPEL
CASE NO. 2:19-CV-910-RAJ-MLP

1

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

who Amazon *knew* were using Alexa without being required to agree to any terms and conditions.

Finally, Amazon asserts that Plaintiffs should be compelled to arbitrate because their claims are "intertwined" with their parents' contracts with Amazon and Plaintiffs have a "close relationship" with their parents. But children do not consent to a contract merely because they are close with their parents, and Plaintiffs' statutory claims are not "intertwined" with any contract. That is why an unbroken line of cases from the Ninth Circuit and courts in this district holds that Amazon's argument applies only where a non-signatory to a contract attempts to compel arbitration *against* a *consenting* signatory.

Amazon cannot simply invoke the word "equity" to manufacture consent to a contract that Plaintiffs never saw, let alone agreed to. In any event, there is nothing inequitable about denying Amazon's motion. Amazon chose (and continues to choose), for business reasons, to permit children to use Alexa without requiring them to agree to any legal terms and without asking parents or guardians to consent to arbitration on their behalf. No principle of equity permits Amazon to retroactively broaden its contract of adhesion simply because it regrets the agreement it drafted. Amazon's motion must be denied.

## FACTUAL BACKGROUND

Plaintiffs are children who used the Alexa devices identified in the complaint without purchasing them or setting them up. *See* First Amended Class Action Complaint, Dkt. 24 ("FAC") ¶¶ 38–113. Plaintiffs had no idea that, whenever they spoke to these Alexa devices, Amazon was making, storing, and analyzing permanent recordings of their conversations. *Id.* Amazon does not need to make and keep these recordings in order to operate Alexa. *Id.* ¶¶ 31–33. Indeed, Amazon's disclosures to Plaintiffs' parents falsely represented that Amazon would *not* make such recordings. Dkt. 57-3 at 2 (defining "Child Personal Information" to include a child's voice, representing that "*we will not knowingly collect*, use, or disclose this information without [your] consent," and obtaining consent for the collection of Child Personal Information *only* in connection with "services intended for children") (emphasis added).

OPPOSITION TO MOTION TO COMPEL
CASE NO. 2:19-CV-910-RAJ-MLP

2

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1   Because Amazon has been unlawfully recording them without their knowledge or

2   consent, Plaintiffs have brought statutory claims under the laws of their respective states. *Id.*

3   ¶¶ 129–232. To establish these claims, Plaintiffs must generally show that (1) Amazon recorded

4   their communications, and (2) their communications were confidential; *i.e.*, they had a

5   reasonable expectation that their statements in their home would not be recorded. *Id.*

6       Just as Plaintiffs are not required to sign a contract before turning on a television or using

7   a swing set, Plaintiffs were not required to enter into any contract with Amazon before using the

8   Alexa devices at issue. *See* Defendants' Motion to Compel Arbitration ("MTC") at 13 (asserting

9   only that "[t]he *account holders* of the Alexa devices at issue assented to the Amazon arbitration

10  agreement" and failing to identify any contract with Plaintiffs). Moreover, while Amazon could

11  easily have required their parents to bind Plaintiffs to contract terms as a condition of setting up

12  an Alexa device, Amazon did not do so. Rather, as argued in Amazon's Motion to Compel, each

13  of Plaintiffs' parents is subject to various terms and conditions between Amazon and *the parents*.

14  *See* MTC at 6-9. None of these terms and conditions states that the registered user of an Alexa

15  device consents that his or her children will also be bound to arbitrate any claims relating to their

16  use of Alexa. *See, e.g.*, Dkt. 56-19 at 5 ("Any dispute or claim arising from or relating to this

17  Agreement or Alexa is subject to the binding arbitration governing law, disclaimer of warranties,

18  limitation of liability, and all other terms in the Amazon.com Conditions of Use. By using

19  Alexa, *you* agree to be bound by those terms.") (emphasis added).

20      Amazon knows full well how to include language stating that parents consent on behalf

21  of their children in connection with Alexa. When a parent enables a feature specifically

22  designed for children (a "kids skill"), Amazon's Parental Consent disclosure states (*falsely*) that

23  it will only collect the child's voice in connection with *that* skill. Dkt. 57-3 at 2 ("We offer some

24  services intended for children, and in some cases we may know a child is using our services (for

25  example, when using a child profile). *In these situations*, children may share and we may collect

26  personal information" including voice recordings, but "[w]e will not knowingly collect, use, or

27  disclose this information without [parental] consent.") (emphasis added); *but see* FAC ¶ 2

28  ("Alexa routinely records and voiceprints millions of children without their consent or the

OPPOSITION TO MOTION TO COMPEL
CASE NO. 2:19-CV-910-RAJ-MLP
3
QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1   consent of their parents."). Amazon then includes language stating that the parent "consents to

2   Amazon's collection, use, and disclosure of Child Personal Information, as described [in the kids

3   skills Parental Consent]." *Id.* Amazon could similarly have written its terms to require that a

4   registered user consent on behalf of his or her child to the child resolving any disputes through

5   binding arbitration. However, none of the terms and conditions identified by Amazon in its

6   motion impose this requirement.

7        Once an Alexa device is set up, Amazon allows any individual—from fellow household

8   members to visitors—to use Alexa without creating an account or otherwise entering into any

9   contract with Amazon. Instead, to use Alexa, any person in its proximity simply needs to say the

10  device's "wake word." FAC ¶¶ 27, 28. Amazon can recognize when an unregistered user is

11  interacting with Alexa based on the user's voiceprint and could easily prevent Alexa from

12  responding to an unregistered user until he or she agrees to arbitrate claims. FAC ¶ 39. But

13  Amazon does not do this. Amazon has decided, for business reasons, to allow unregistered users

14  to interact freely with Alexa without interposing any requirement to agree to *anything*, let alone

15  agree to arbitration.

16                          **ARGUMENT**

17       The obligation to arbitrate a dispute can flow only from a contract. *See Volt Info. Scis.,*

18  *Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ("Arbitration

19  under the [Federal Arbitration] Act is a matter of consent, not coercion."). Accordingly, "a party

20  [generally] cannot be required to submit to arbitration any dispute which he has not agreed so to

21  submit." *Townsend v. Quadrant Corp.*, 173 Wash. 2d 451, 460–61 (2012) (internal quotation

22  marks omitted). In limited circumstances, nonsignatories can be found to consent to arbitration

23  by their conduct "under ordinary contract and agency principles," which include the concept of

24  "equitable estoppel." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). Stated

25  differently, an individual can consent to be bound by a contract in ways other than signing the

26  agreement, such as when he or she allows an agent to agree to the contract or knowingly asserts

27  rights under the contract such that it would be inequitable to allow him or her to then avoid the

28  contract's other obligations.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

Amazon does not contend that any Plaintiff is a party to any arbitration agreement with Amazon.  Instead, Amazon attempts to rely on three theories of equitable estoppel to supply consent by conduct when it was not given by a signature.  Each of these theories is plainly inapplicable.

A.      **Amazon Cannot Compel Arbitration on Equitable Estoppel Grounds Because Plaintiffs Have not Exploited the Contract Containing the Arbitration Clause.**

As Amazon agrees, MTC at 11, the question of whether Defendants have a right to compel arbitration is controlled by Washington law.  Under Washington law, "[a] person who is not a party to an agreement to arbitrate may be bound to such an agreement only by ordinary principles of contract and agency."  *Powell v. Sphere Drake Ins. P.L.C.*, 97 Wash. App. 890, 892 (1999), *as amended* (Sept. 10, 1999).  One such principle is equitable estoppel, which "may require a nonsignatory to arbitrate a claim if that person, despite never having signed the agreement, 'knowingly exploits' the contract in which the arbitration agreement is contained." *Townsend v. Quadrant Corp.*, 173 Wash. 2d 451, 461 (2012) (quoting *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wash.2d 781, 810 (2009)).  Washington courts have held that a non-signatory "knowingly exploits" a contract only where he or she brings contract-based claims that *arise under the contract* containing the arbitration agreement.  By contrast, where a non-signatory brings tort or statutory claims that do not arise under any contract, Washington courts have repeatedly rejected arguments that such claims can be compelled into arbitration on an equitable estoppel theory.

The lead case in Washington is *Townsend*.[1]  In that case, the court considered whether the children of homeowners could be required to arbitrate their claims against the homebuilder even

---

[1] Amazon misleadingly refers to the decision of the Washington Court of Appeals in *Townsend* as "*Townsend I*" and refers to the decision of the Washington Supreme Court in Townsend as "*Townsend II*."  MTC at 16.  In fact, the Washington Supreme Court issued only one decision in the case.  Amazon may use this confusing nomenclature because it prefers the reasoning of the Court of Appeals in *Townsend*.  However, the Washington Supreme Court expressly declined to adopt the reasoning of the Court of Appeals in *Townsend*.  *See* 173 Wash.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

though they were not parties to the purchase and sale agreements ("PSAs") with the homebuilder. *Townsend*, 173 Wash. 2d at 453-55. The plaintiffs argued that no estoppel should apply because the "children 'do not attempt to enforce the terms of the [contracts], nor do they base their claims on any alleged warranty contained in them.'" *Id.* at 461. However, the Supreme Court disagreed, reasoning that the children were bound by the PSAs because the children's causes of action "relate directly to the PSAs, including an allegation of breach of warranty and a request for rescission." *Id.* at 461. For this reason, the Court concluded that the children "can be said to be knowingly exploiting the terms of the contract and, under *Mundi*[ *v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009)], cannot avoid the arbitration clause within it." *Id.* at 462. Because the children's invocation of the contract bound them to it, they were obligated to arbitrate all of their claims, contractual and non-contractual, against the Defendant. *Id.* at 462, n.2.

Every case applying *Townsend* has read the decision to turn on the fact that the plaintiffs in that case brought claims arising under the contract containing the arbitration agreement. For example, in *Madera W. Condo. Ass'n v. Marx/Okubo*, 175 Wash. App. 1032 (2013), the court explained that *Townsend* applied equitable estoppel because "the parents and children's claims 'relat[ed] directly' to the purchase and sale agreement, 'including an allegation of breach of warranty and a request for rescission.'" *Id.* at *16 (quoting *Townsend*, 173 Wash. 2d at 461). The court then held that the *Townsend* rule did *not* apply because the plaintiff "did not assert breach of contract claims against Marx/Okubo; it asserted negligent misrepresentation and professional negligence claims." *Id.* The plaintiff "was not 'knowingly exploiting the terms of the contract' because it was not basing its tort claims on the contract." *Id.*; *see also id.* (because

---

2d at 460 ("We affirm the Court of Appeals on this issue as well, *but we do so for reasons that differ from those given by the Court of Appeals*.") (emphasis added); *id.* at 924 (Stephens J., concurring/dissenting) ("Importantly, the lead opinion rejects the Court of Appeals' holding that the children must arbitrate because 'the source of the duty of care Quadrant owed the Homeowners and their children arises from the sale of the home.'"). To state the obvious, it is the reasoning of the Washington Supreme Court, not the rejected reasoning of the Washington Court of Appeals, that controls.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1   plaintiff brought "tort claims [that] were based on common law and statutes[,] . . . the doctrine of

2   equitable estoppel does not support Marx/Okubo's argument.").

3        Washington state courts unfirmly apply the same analysis. *See SVN Cornerstone LLC v.*

4   *N. 807 Inc.*, 199 Wash. App. 1010 (2017) (distinguishing *Townsend* because, in that case "the

5   children were attempting to enforce the terms of th[e] agreement, including its warranties" while

6   the defendant in *SVN Cornerstone* were "not trying to enforce rights under Mr. Seipp's

7   independent contractor agreement"); *Powell*, 97 Wash. App. at 894 (refusing to compel

8   arbitration against non-signatory where "[a] plain reading of Powell's amended complaint shows

9   that his claims are based on alleged violations of the state Consumer Protection Act and the

10  fraudulent conveyance act—not the policy of insurance itself.").

11       Ninth Circuit precedent likewise makes clear that a party does not knowingly exploit a

12  contract simply by bringing tort or statutory claims. For example, in *Comer v. Micor, Inc.*, 436

13  F.3d 1098, 1102 (9th Cir. 2006), a participant in an ERISA plan brought statutory claims against

14  an investment advisor and the investment advisor attempted to compel arbitration based on the

15  agreement between the advisor and the plan trustees. *Id.* at 1099–1100.[2] The Ninth Circuit held

16  that the plan participant was not required to arbitrate his claim because:

17       Prior to his suit, Comer was simply a participant in trusts managed by others for
18       his benefit. *He did not seek to enforce the terms of the management agreements,*
         nor otherwise to take advantage of them. Nor did he do so by bringing this
19       lawsuit, which he bases entirely on ERISA, and not on the investment
         management agreements. Smith Barney's attempt to shoehorn Comer's status as
20       a passive participant in the plans into his "knowing[ ] exploit[ation]" of the
         investment management agreements fails.

21

22  *Id.* at 1100 (emphasis added).

23       A long and uncontradicted line of cases interpreting Washington law stands for the same

24  proposition. *See Loyola v. Am. Credit Acceptance LLC*, No. 2:19-CV-00002-SMJ, 2019 WL

25  _____

26       [2] The Washington Supreme Court in *Townsend* adopted the analysis of *Comer* and a
    subsequent case applying *Comer*, *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th
27  Cir. 2009). *See Townsend v. Quadrant Corp.*, 173 Wash. 2d 451, 461 (2012); *see also E. W.*
    *Bank v. Bingham*, 992 F. Supp. 2d 1130, 1133 (W.D. Wash. 2014) (Jones, J.) ("[T]he court
28  believes that Washington courts would apply the same standard recited in *Mundi*.")

1601362, at *7 (E.D. Wash. Apr. 15, 2019) (refusing to apply equitable estoppel because the plaintiffs "do not allege Defendants breached the contract and instead claim they violated the FDCPA, UCC, and CPA" and while these claims "certainly relate to the contract, they do not arise from it directly"); *McKee v. Audible, Inc.,* No. CV 17-1941-GW(EX), 2017 WL 4685039, at *14 (C.D. Cal. July 17, 2017) ("Here, Plaintiff has not claimed the benefits of his agreement to arbitrate his claims against Amazon. He has sued Audible and Amazon on statutory grounds . . . . As a result, Audible cannot invoke principles of equity to force Plaintiff to arbitrate his claims against it regardless of its relationship with Amazon."); *Stuart v. Korey*, No. C16-1815 RSM, 2017 WL 1496360, at *4 (W.D. Wash. Apr. 26, 2017) (holding that the Plaintiff was not subject to equitable estoppel because he was "not attempting to enforce the Agreement while avoiding the mandatory arbitration clause"); *Franklin Templeton Bank & Tr. v. Butler*, No. 2:15-CV-435-JNP-EJF, 2016 WL 3129141, at *4 (D. Utah June 2, 2016) (distinguishing *Townsend* because the plaintiffs in *Townsend* "were seeking to enforce the terms of an agreement that mandated arbitration" while the Plaintiffs in *Franklin Templeton* were "not relying on the terms of [the agreement containing the arbitration requirement] in order to bring its indemnification claims"); *Joseph v. TrueBlue, Inc.*, No. C14-5963 BHS, 2015 WL 575289, at *3 (W.D. Wash. Feb. 11, 2015) (holding that the defendant was "not entitled to enforce arbitration by equitable estoppel" because the plaintiff was "asserting TCPA claims that do not arise out of or relate to either contract" and instead brought "statutory claims that are separate from the [ ] contract itself"); *Double D Trade Co., LLC v. Lamex Foods, Inc.*, No. C09-0919RSL, 2009 WL 4927899, at *6 (W.D. Wash. Dec. 14, 2009) (declining to apply equitable estoppel because the plaintiff's "claim is based entirely on his personal guaranty [and] there is no evidence on the record that [plaintiff] has sought to enforce the terms of the agreements or to take advantage of them"); *Univera, Inc. v. Terhune*, No. C09-5227 RBL, 2009 WL 3877558, at *2 (W.D. Wash. Nov. 18, 2009) (refusing to apply equitable estoppel to require arbitration of claims "based on common law tort principles, including tortious interference, unfair competition, and defamation" because "[n]one of these causes of action shows that Mr. Terhune or Mr. Douglas 'knowingly exploited' the Associate Agreement that their respective LLCs had with Univera").

OPPOSITION TO MOTION TO COMPEL
CASE NO. 2:19-CV-910-RAJ-MLP

8

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

Amazon has not cited a *single case* that departs from the above authority.  To the contrary, every case Amazon cites for the applicability of equitable estoppel confirms that the doctrine is inapplicable here.  *See Payne v. Amazon.com, Inc.*, No. 2:17-CV-2313-PMD, 2018 WL 4489275, at *7 (D.S.C. July 25, 2018) ("The Court sees no meaningful difference between *Townsend* and the present case. . . . Like the plaintiffs in *Townsend*, Plaintiffs bring a breach of warranty claim that rests on the contract between Payne and Amazon, which included an arbitration agreement.");[3] *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) ("International Paper's entire case hinges on its asserted rights under the Wood-Schwabedissen contract; it cannot seek to enforce those contractual rights and avoid the contract's requirement that 'any dispute arising out of' the contract be arbitrated.").

This uniform authority reflects that "[a] person who is not a party to an agreement to arbitrate may be bound to such an agreement only by ordinary principles of contract and agency."  *See Powell*, 97 Wash. App. at 892; *see also Comer*, 436 F.3d at 1101 (explaining that requiring non-signatories to arbitrate based on equitable estoppel reflects "ordinary contract and agency principles").  Under ordinary contract principles, a party "cannot seek to enforce . . . contractual rights and avoid the contract's requirement that any dispute arising out of the contract be arbitrated."  *Int'l Paper Co.*, 206 F.3d at 418 (internal quotation marks omitted).

However, neither equitable estoppel nor basic fairness supports the argument that Amazon tries to advance in its motion:  that any individual who uses a product can be bound to arbitrate simply because she benefited *from using the product*.

> Compelling Plaintiff to arbitration on these facts, under the theory of equitable estoppel, would lead to absurd results where virtually any non-primary user of a service, even a casual visitor to a residence, would be bound by an agreement without notice.  By Defendant's argument, if Plaintiff had resided with Ms. Stewart for only a few days and watched television at her residence, Plaintiff

---

[3] Indeed, in *Payne*, Amazon's own briefing described the *Townsend* line of cases in the same way. *See Payne*, 2018 WL 1858763, *Amazon, Inc.'s Reply Memorandum in Further Support of Motion to Compel Arbitration* (arguing that "Plaintiffs' breach of implied warranty claims are contractual in nature" and citing *Townsend* as "applying [the] rule" that "[b]ecause [Plaintiff's] *claims* are based upon and *seek the benefit of* Mr. Payne's agreement with Amazon . . . she cannot avoid arbitration.") (emphases added).

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

would have obtained a direct benefit of the [service agreement], binding him to arbitration.

*See Brown v. Comcast Corp.*, No. 16-cv-00264ABSPX, 2016 WL 9109112, at *8 (C.D. Cal. Aug. 12, 2016).

Amazon has not cited a single case to support the proposition that simply using a product or service that is made freely available to non-registered users makes the user bound by the same terms applicable to the registered user. And the necessary implications would "lead to absurd results." *Id.*

In short, *Townsend* and every case that applies it holds that a non-signatory may be compelled to arbitration only where he or she is bringing claims that arise from the contract. Plaintiffs in this case bring claims only under the statutory law of their respective states. *See* FAC ¶¶ 129–232. They have not agreed to be bound by any contract with Amazon, and their efforts to vindicate their rights in this case do not rely on any contractual rights. Amazon cannot compel arbitration on the theory that Plaintiffs have "knowingly exploited" a contract they never agreed to and do not rely upon.

### B.       Plaintiffs Cannot Be Compelled To Arbitrate on an "Account Sharing" Theory.

Perhaps recognizing that Plaintiffs' legal claims do not "knowingly exploit" any contract, Amazon repeatedly attempts to analogize this case to a recent "account sharing" case from the Eastern District of New York. But that case is even further afield.

In *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 275 (E.D.N.Y. 2019), the plaintiff used his wife's "Amazon Mom" account to purchase a weight-loss supplement and later brought a putative class action against Amazon asserting that the supplement violated federal and state product safety laws. *Id.* at 257-58. To enroll in an "Amazon Mom" account, "a user must accept the 'Amazon Prime Terms and Conditions,' which incorporate an arbitration provision." *Id.* at 258. In determining that the plaintiff should be compelled to arbitrate under the "Amazon Mom" account agreement, the court explained that "[t]he indelible feature of estoppel . . . is that one party has made a representation, upon which another party justifiably relies to their

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1  detriment." *Id.* at 273.  As applied in the context of arbitration, this principle meant that a party

2  can be compelled to arbitrate where he "implicitly represented that he was the true

3  accountholder" and thereby causes the defendant to "justifiably rel[y] on that representation" in

4  providing a benefit available only to the true accountholder.  *Id.*  Amazon satisfied that test in

5  *Nicosia* because, by using his wife's credentials to log into and use his wife's account, the

6  plaintiff had "implicitly represented that he was the true accountholder." *Id.* at 274.  This false

7  representation, in turn, allowed the plaintiff to "enjoy the same contractual rights she enjoyed,

8  viz., the right to place an order on Amazon.com." *Id.* at 275.  For these reasons, the court held

9  that the plaintiff "must also be held to the arbitration clause that governs that relationship." *Id.*

10         The situation here could not be further from the situation in *Nicosia*.  Amazon asserts that

11  "any right a Plaintiff here has to use the Amazon account or Alexa service is merely derivative of

12  the Parent's right."  MTC at 18.  But Amazon cites nothing in the record to support that

13  assertion, and the assertion is unsupportable.  Amazon allows *anyone* within shouting distance of

14  an Alexa device to use the product without agreeing to any contractual terms.  FAC ¶ 26.  Unlike

15  the Plaintiff in *Nicosia,* Plaintiffs did not "implicitly represent[]" that they were another person

16  in order to gain access to the Alexa device.  The relevant analogy here is not a husband

17  impersonating his wife to use her password-protected account but, rather, a houseguest using a

18  homeowner's grill.  If the grill explodes and injures the houseguest, he would not be bound by

19  the terms of a warranty form completed by the homeowner.  And if the warranty terms contained

20  an arbitration requirement, no principle of contract or equity would require that the houseguest

21  arbitrate his personal injury claim.

22         Indeed, Amazon's argument is even *weaker* than the grill manufacturer's would be.

23  Amazon can recognize and distinguish the voices of each user interacting with an Alexa device

24  and could easily have prevented unregistered users from interacting with Alexa.  Unlike a grill

25  manufacturer, who has no ongoing control over who can use a grill after it is sold, Amazon is

26  able to determine *at all times* whether an unregistered user is using an Alexa device and to

27  require that the user (or his or her parent) provide consent to any terms Amazon wishes to

28  impose.  Amazon made the fully informed business decision to allow *anyone* to use Alexa

OPPOSITION TO MOTION TO COMPEL
CASE NO. 2:19-CV-910-RAJ-MLP                                      11

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

without agreeing to any terms and conditions.  Plaintiffs then used Alexa without making any

representation, let alone a *knowing* representation, that they were a party who was bound by a

contract with Amazon.  Amazon cannot now claim inequity because, like the maker of virtually

every product available to the public, it must answer in court to claims that it violated the rights

of third-parties with whom it has no contractual privity.

C.     **Amazon Cannot Compel Arbitration via the "Intertwined / Close**

**Relationship" Theory of Equitable Estoppel.**

Finally, Amazon invokes cases holding that "a signatory may be required to arbitrate a

claim brought by a nonsignatory where the subject matter of the dispute is intertwined with the

contract providing for arbitration, and the nonsignatory and signatory parties have a close

relationship."  *See* MTC at 15.  Amazon's attempt to invoke this line of cases ignores

unambiguous and controlling authority.

As both *Townsend* and the Ninth Circuit have explained, this "intertwined / close

relationship" test applies only where a *non-signatory* to an arbitration agreement is attempting to

compel arbitration *against a signatory.*  And that makes sense, as the signatory has plainly

manifested his or her consent to the arbitral forum.

In *Comer,* the Ninth Circuit held that equitable estoppel principles have given rise to two

lines of authority in the context of arbitration:

> Under the first of these lines, *nonsignatories* have been held to arbitration clauses where
> the nonsignatory "knowingly exploits the agreement containing the arbitration clause
> despite having never signed the agreement." *DuPont,* 269 F.3d at 199 (citing *Thomson-
> CSF,* 64 F.3d at 778). Under the second line of cases, *signatories* have been required to
> arbitrate claims brought by nonsignatories "at the nonsignatory's insistence because of
> the close relationship between the entities involved." *Id.* (quoting *Thomson-CSF,* 64 F.3d
> at 779 (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757 (11th
> Cir.1993))) (internal quotation marks omitted).

436 F.3d at 1101 (emphasis in original).  The Court held that "[b]ecause [the defendant] is

invoking equitable estoppel against a nonsignatory, it is the first line of cases that is relevant."

*Id.*  The court then declined to compel arbitration.  *Id.*

OPPOSITION TO MOTION TO COMPEL
CASE NO. 2:19-CV-910-RAJ-MLP                                    12

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1       The cases on which *Comer* rested its analysis likewise reject Amazon's claim that the

2 "intertwined / close relationship" test can apply in the circumstances of this case.  *See E.I.*

3 *DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187,

4 202 (3d Cir. 2001) ("Appellants recognize that these cases bind a *signatory* not a *non-signatory*

5 to arbitration, but argue that this is a distinction without a difference. They are wrong.")

6 (emphasis in original); *Thomson-CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 779 (2d Cir.

7 1995) (holding that the "intertwined / close relationship" does not apply unless the party being

8 estopped is a signatory of the arbitration agreement).

9       As the court explained in *E.I. Dupont*, "[w]hile the defendant suggests that this is a non-

10 distinction, the nature of arbitration makes it important.  Arbitration is strictly a matter of

11 contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that

12 they do so."  269 F.3d at 202 (quoting *Thomson-CSF,* 64 F.3d at 779); s*ee also MAG Portfolio*

13 *Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 62 (2d Cir. 2001) ("[B]ecause

14 arbitration is guided by contract principles, the reverse is not also true: a signatory may not estop

15 a nonsignatory from avoiding arbitration *regardless of how closely affiliated that nonsignatory is*

16 *with another signing party*.") (emphasis added); *Merrill Lynch Inv. Managers v. Optibase, Ltd*.,

17 337 F.3d 125, 131 (2d Cir. 2003) ("That first distinction, which Optibase contends is irrelevant,

18 is decisive; it matters whether the party resisting arbitration is a signatory or not.").  Once again,

19 Amazon's arguments fly in the face of unbroken and well-reasoned precedent.[4]

20

21      [4] The cases rejecting Amazon's position are legion.  *See Double D Trade Co., LLC v. Lamex*

22 *Foods, Inc*., No. C09-0919RSL, 2009 WL 4927899, at *6 (W.D. Wash. Dec. 14, 2009)
("Although a nonsignatory can enforce an arbitration agreement against a signatory because of

23 close relationships between the entities involved and between the alleged wrongs and the
contract containing the arbitration agreement, courts have not compelled nonsignatories to

24 arbitrate under this theory.") (citing *Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042, 1046 (9th
Cir. 2009)); *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. SACV111062JVSANX, 2012 WL

25 12960766, at *4 (C.D. Cal. Dec. 7, 2012) ("Because the Bank is invoking equitable estoppel
against a nonsignatory, only the first line of cases is relevant."); *Brown v. Comcast Corp.*, No.

26 EDCV1600264ABSPX, 2016 WL 9109112, at *6 (C.D. Cal. Aug. 12, 2016) ("Because this case

27 involves a signatory Defendant attempting to bind a nonsignatory Plaintiff, the Court focuses on
the first type."); *Janvey v. Alguire*, 847 F.3d 231, 242 (5th Cir. 2017) (holding that "intertwined

28 claims" theory "governs motions to compel arbitration when a signatory-plaintiff brings an

OPPOSITION TO MOTION TO COMPEL
CASE NO. 2:19-CV-910-RAJ-MLP

13

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1    In all events, even if the "intertwined / close relationship" test could be applied in this

2    case, Amazon could not satisfy it.  Plaintiffs' claims are not "intertwined" in any way with the

3    contract between Amazon and Plaintiffs' parents.  Amazon allowed Plaintiffs to use Alexa

4    devices without agreeing to any contract terms.  And Plaintiffs press statutory claims that do not

5    rely on any contractual rights.  If Plaintiffs' neighbors used the same Alexa devices that

6    Plaintiffs used and later brought statutory claims for being secretly recorded, such claims would

7    plainly not be "intertwined" with the contracts between Amazon and Plaintiffs' parents.  The

8    same is true of Plaintiffs' claims.  Thus, Amazon's position ultimately reduces to the argument

9    that non-signatories to an agreement should be bound to the agreement if they have a "close

10   relationship" with someone who has agreed to arbitrate.  That position has no basis in "ordinary

11   contract and agency principles." *Comer*, 436 F.3d at 1101.

12        **D.     There is Nothing Unfair About Holding Amazon to the Consequences of Its**

13             **Contractual Choices.**

14        There is no free-floating right to require arbitration where the Defendant argues that it

15   would be unfair to have to litigate claims. Because Amazon cannot fit this case within any of the

16   narrow exceptions that allow non-parties to be bound to an arbitration agreement, Amazon's

17   motion must be denied.  *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir.

18   2009) ("[I]n light of the general principle that only those who have agreed to arbitrate are

19   obliged to do so, we see no basis for extending the concept of equitable estoppel of third parties

20   in an arbitration context beyond the very narrow confines delineated in these two lines of

21   cases."); *Comer,* 436 F.3d at 1103 (rejecting third-party beneficiary theory for compelling

22   arbitration because the test "is not grounded in any principle of contract or agency law of which

23   we are aware"); *Powell*, 97 Wash. App. at 892 ("A person who is not a party to an agreement to

24   arbitrate may be bound to such an agreement only by ordinary principles of contract and

25   agency"); *see also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 780 (2d Cir. 1995)

26

27   action against a nonsignatory-defendant asserting claims dependent on a contract that includes
     an arbitration agreement" and does not apply "where a signatory-defendant seeks to

28   compel arbitration with a nonsignatory-plaintiff").

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

14

1  ("[T]he district court improperly extended the law of this Circuit and diluted the protections

2  afforded nonsignatories by the ordinary principles of contract and agency. A nonsignatory may

3  not be bound to arbitrate except as dictated by some accepted theory under agency or contract

4  law.") (internal quotation marks and citation omitted).

5      In all events, there is nothing unfair about denying Amazon's motion to compel.

6  Amazon is one of the most technologically and legally sophisticated companies in the world.  As

7  Amazon's own submissions in support of its motion confirm, Amazon could easily ensure that

8  any user of an Alexa device is bound by an arbitration agreement.  Amazon could do what other

9  makers of voice-recognition technology do and require unregistered users to agree to terms

10  before using their service.  And Amazon could have required Plaintiffs' parents to bind Plaintiffs

11  to arbitrate their claims as a condition of setting up the Alexa device.  But Amazon did not do

12  any of this.  Instead, Amazon made a calculated business judgment to allow unregistered users to

13  interact with Alexa without ever binding them to an arbitration agreement.  Plaintiffs then used

14  Alexa devices without having been given any reason to believe that, by talking to a speaker, they

15  were entering into a contract with Amazon.  There is nothing inequitable about holding Amazon

16  to the litigation consequences of its fully informed business choices.

17  ## CONCLUSION

18      For the foregoing reasons, Amazon's Motion to Compel should be denied.

19

20  Dated:  September 30, 2019              By: ___*/s/ Lauren Hudson*_____

21                                          Lauren Hudson, WSBA #55124
                                            QUINN EMANUEL
22                                          URQUHART & SULLIVAN, LLP
                                            600 University St., Ste. 2800
23                                          Seattle, WA 98101
                                            Tel.: 206.905.7075
24                                          Fax: 206.905.7100
                                            laurenhudson@quinnemanuel.com
25

26                                          Andrew H. Schapiro (*pro hac vice*)
                                            Stephen Swedlow (*pro hac vice*)
27                                          QUINN EMANUEL
                                            URQUHART & SULLIVAN, LLP
28

OPPOSITION TO MOTION TO COMPEL
CASE NO. 2:19-CV-910-RAJ-MLP                    15

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: 312.705.7400
Fax: 312.705.7401
andrewschapiro@quinnemanuel.com
stephenswedlow@quinnemanuel.com

Ashley C. Keller (*pro hac vice*)
Travis D. Lenkner (*pro hac vice*)
J. Dominick Larry (*pro hac vice*)
KELLER LENKNER LLC
150 N. Riverside Plaza, Ste. 4270
Chicago, IL 60606
Tel.: 312.741.5220
Fax: 312.971.3502
ack@kellerlenkner.com
tdl@kellerlenkner.com
nl@kellerlenkner.com

Warren D. Postman (*pro hac vice*)
KELLER LENKNER LLC
1300 I Street N.W., Suite 400E
Washington, D.C.
Tel.: 202.749.8334
Fax: 312.971.3502
wdp@kellerlenkner.com

*Attorneys for Plaintiffs and the Putative Classes*

Opposition to Motion to Compel
Case No. 2:19-cv-910-RAJ-MLP

16

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

### **CERTIFICATE OF SERVICE**

I hereby certify that, on September 30, 2019, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which sent notification of such filing to counsel of record.


*/s/ Lauren Hudson*
Lauren Hudson, WSBA #55124

OPPOSITION TO MOTION TO COMPEL
CASE NO. 2:19-CV-910-RAJ-MLP

17

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000