THE HONORABLE RICHARD A. JONES
THE HONORABLE MICHELLE L. PETERSON

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| B.F. and A.A., minors, by and through their guardian Joey Fields, et al.<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware corporation, and A2Z DEVELOPMENT CENTER, INC., a Delaware corporation,<br><br>Defendants. | Case No.: 2:19-cv-910-RAJ-MLP<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS PLAINTIFFS' CLAIMS**<br><br>**NOTED ON MOTION CALENDAR:**<br>Friday, October 4, 2019<br><br>**HEARING DATE:**<br>Thursday, October 17, 2019 |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

I. PLAINTIFFS DO NOT DISPUTE THAT THEIR PARENTS AGREED TO ARBITRATE THE CLAIMS IN THIS LAWSUIT. ...............................................2

II. PLAINTIFFS "KNOWINGLY EXPLOITED" THE BENEFIT OF THE ALEXA AND AMAZON SERVICES. ..................................................................3

III. "ACCOUNT SHARING" CONSTITUTES A VALID BASIS FOR COMPELLING ARBITRATION UNDER *NICOSIA*, WHICH ALSO SUPPORTS ESTOPPEL. ..........................................................................................8

IV. PLAINTIFFS' CLAIMS ARE INTERTWINED WITH THEIR PARENTS' AGREEMENTS TO ARBITRATE. ......................................................10

CONCLUSION ...................................................................................................................11

**TABLE OF AUTHORITIES**
**Page(s)**

**CASES**

*American Bureau Shipping v. Tencera Shipyard SPA*,
  170 F.3d 349 (2d Cir. 1999) ........................................................................................................5, 6

*Birch v. Abercrombie*,
  74 Wash. 486, *as modified*, 135 P. 821 (Wash. 1913) ...................................................................9

*Bridge v. Credit One Financial*,
  14-CV 1512 (LDG (NJK), 2016 WL 1298712 (D. Nev. Mar. 31, 2016) .......................................6

*Brown v. Comcast Corp.*,
  No. 16-cv-00264ABSPX, 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016) ......................................7

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,
  709 F.2d 190 (3rd Cir. 1983) ........................................................................................................11

*Comer v. Micor, Inc.*,
  436 F.3d 1098, 1101 (9th Cir. 2006) ...................................................................................4, 5, 10

*Davis v. Browne*,
  20 Wash. 2d 219 (1944) .................................................................................................................9

*Double D Trade Co., LLC v. Lamex Foods, Inc.*,
  No. C09-0919RSL, 2009 WL 4927899 (W.D. Wash. Dec. 14, 2009) ......................................7, 10

*E.I. Dupont de Nemours and Co. v. Rhone Poulenc Fiber and Resin
  Intermediates, S.A.S.*,
  269 F.3d 187 (3d Cir. 2001) ................................................................................................4, 5, 10

*Franklin Templeton Bank & Tr. v. Butler*,
  No. 2:15-CV-435-JNP-EJF, 2016 WL 3129141 (D. Utah June 2, 2016) .......................................7

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
  No. SACV111062JVSANX, 2012 WL 12960766 (C.D. Cal. Dec. 7, 2012) ................................10

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
  863 F.2d 315 (4th Cir. 1988) ........................................................................................................10

*Janvey v. Alguire*,
  847 F.3d 231 (5th Cir. 2017) ........................................................................................................10

*Joseph v. TrueBlue, Inc.*,
  No. C14-5963 BHS, 2015 WL 575289 (W.D. Wash. Feb. 11, 2015) ............................................7

*Loyola v. American Credit Acceptance LLC*,
  No. 2:19-cv-0002-SMJ, 2019 WL 1601362 (E.D. Wash. Apr. 15, 2019) ...................................5, 7

*Madera West Condominium Association v. Marx/Okubo*,
  175 Wash. App. 1032 (2013) .........................................................................................................5

AMAZON'S REPLY ISO MOT. TO
COMPEL ARB.
CASE NO.: 2:19-CV-910-RAJ-MLP

- ii -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**CASES**

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*,
   268 F.3d 58 (2d Cir. 2001)..................................................................................................10

*McKee v. Audible, Inc.*,
   No. CV 17-1941-GW(EX), 2017 WL 4685039 (C.D. Cal. July 17, 2017) .............................7

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
   337 F.3d 125 (2d Cir. 2003)..................................................................................................10

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009) ................................................................................................4

*Nicosia v. Amazon.com, Inc.*,
   384 F. Supp. 3d 254 (E.D.N.Y. 2019) ............................................................................6, 8, 9

*Payne v. Amazon.com, Inc.*,
   No. 2:17-CV-2313-PMD, 2018 WL 4489275 (D.S.C. July 25, 2018)................................5, 6

*Rajagopalan v. NoteWorld, LLC*,
   718 F.3d 844 (9th Cir. 2013) ..................................................................................................7

*Stuart v. Korey*,
   No. C16-1815 RSM, 2017 WL 1496360 (W.D. Wash. Apr. 26, 2017) .................................7

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
   64 F.3d 773 (2d Cir. 1995)....................................................................................................10

*Townsend v. Quadrant Corp.*,
   153 Wash. App. 870 (2009)....................................................................................................4

*Townsend v. Quadrant Corp.*,
   173 Wash. 2d 451 (2012)...............................................................................................1, 4, 6

*Univera, Inc. v. Terhune*,
   No. C09-5227 RBL, 2009 WL 3877558 (W.D. Wash. Nov. 18, 2009) .................................7

**RULES**

Washington Rules of Court GR 14.1(a).........................................................................................5

AMAZON'S REPLY ISO MOT. TO
COMPEL ARB.
CASE NO.: 2:19-CV-910-RAJ-MLP

- iii -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

# INTRODUCTION

Plaintiffs' Parents do not deny that they entered binding arbitration agreements with Amazon. They do not deny that the agreements were a precondition to their setting up the Alexa-enabled Echo devices that they bought, installed in their homes—in some cases in their children's rooms—and let their children use to access the Alexa service through their Amazon accounts. Nor do the Parents deny that those agreements would be enforceable against them had they brought this case solely on behalf of themselves, rather than nominally on behalf of their children. Instead, the Parents argue that they and their children can avoid arbitration because the children did not enter separate agreements to arbitrate disputes regarding the use of their parents' Amazon Alexa accounts. Well-established principles of equity prevent this effort to avoid arbitration.

Plaintiffs' position rests on three fallacies. First, Plaintiffs argue that the Amazon agreements could have, but did not, provide that Amazon account holders enter the Amazon Conditions of Use (the "COUs") and Alexa Terms of Use on behalf of their children. Plaintiffs are wrong. The Amazon COUs state that the Amazon account holder is responsible for "restricting access to your account," and they require the holder to "agree to accept responsibility for all activities that occur under your account or password." Buckley Decl. (Dkt. No. 56) at ¶ 5, Ex. 1 at 2-3; *see also id.*, Exs. 2-6. Although this issue was discussed in Amazon's motion, the Opposition conspicuously ignores this provision. This provision expressly sets forth what is otherwise self-evident: that Amazon account holders bear responsibility for how they let their minor children use their accounts.

Second, Plaintiffs incorrectly contend that principles of equitable estoppel prevent a non-signatory from avoiding arbitration only when the non-signatory sues to enforce the contract containing the arbitration agreement. Again, Plaintiffs are wrong. This was exactly the position advocated by the *dissent* in the Washington Supreme Court's ruling in *Townsend v. Quadrant Corp.*, 173 Wash.2d 451, 464-65 (2012) ("*Townsend II*"). Several courts, including the majority in *Townsend II*, have required a non-signatory to arbitrate non-contract claims where the plaintiff exploited the benefits of the contract in manners *other* than suing on the contract. Plaintiffs do not contest that their children affirmatively and frequently acted to exploit the benefits of their parents'

contractual relationship with Amazon concerning Alexa by using the "Alexa" wake word to engage the service.

Finally, the Parents contend that their children's claims are not "inextricably intertwined" with the arbitration agreements because this theory of estoppel applies only when a non-signatory attempts to enforce an arbitration agreement with a signatory. But Plaintiffs ignore that the equitable principles behind this doctrine apply equally here, where the minor Plaintiffs' claims are directly intertwined with the consent agreements entered by their Parents. And there could be no closer relationship than that between a parent and child.

This is the type of case for which equitable estoppel is designed, *i.e.,* signatories attempting to use a non-signatory proxy inequitably to dodge their agreements to arbitrate. In this case, Plaintiffs, their Parents, and their lawyers seek a windfall of thousands of dollars in damages per recording, on behalf of a proposed class numbering in the millions. *See* Am. Compl. at ¶¶ 37-41, 141, 154, 167, 180, 193, 206, 219, 232. The gambit fails, and the Court should order arbitration.

## I. PLAINTIFFS DO NOT DISPUTE THAT THEIR PARENTS AGREED TO ARBITRATE THE CLAIMS IN THIS LAWSUIT.

The Opposition disputes only one issue in Amazon's Motion (Dkt. No. 55): whether equity supports application of the Parents' agreements to arbitrate to bar them from litigating the same claims on behalf of their children. Contrary to their positions before the Motion, Plaintiffs now do not dispute that the Parents validly assented to the COUs and Alexa Terms. Nor do they dispute that those agreements prohibit the Parents from bringing claims on their own behalf here.

Plaintiffs try to gin up some hypothetical doubt over whether the "parents agreed that children would be bound by Amazon's arbitration agreement." Opp. (Dkt. No. 68) at 1. But the Opposition ignores the actual language of the agreement the Parents made with Amazon:

> **You are responsible for** maintaining the confidentiality of your account and password and **for restricting access to your account, and you agree to accept responsibility for all activities that occur under your account or password. Amazon does sell products for children, but it sells them to adults,** who can purchase with a credit card or other permitted payment method. **If you are under 18, you may use the Amazon Services only with involvement of a parent or guardian.** Parents and guardians may create profiles for teenagers in their Amazon Household.

Buckley Decl. at ¶ 5, Ex. 1 at 2-3 (emphases added); *see also id.* at Exs. 2-6. By this provision,

which Plaintiffs do not dispute is binding and enforceable, the Parents assumed responsibility for any use of their respective Amazon accounts, including through Alexa, as well as for oversight of minors using the accounts. Plaintiffs fail to address this provision entirely.

## II. PLAINTIFFS "KNOWINGLY EXPLOITED" THE BENEFIT OF THE ALEXA AND AMAZON SERVICES.

Plaintiffs acknowledge, as a legal matter, that if they "knowingly exploit[ed]" the benefit of the Amazon COUs and Alexa Terms, they are bound to the arbitration provision in those agreements under the principles of equitable estoppel. Opp. at 9. But they ignore the undisputed facts of that exploitation and misconstrue the law about it. *See id.* at 9-14.

The facts are now undisputed that the Plaintiffs knowingly received the benefits of the contracts. Plaintiffs concede they each used the Alexa devices "regularly" or at least on "several occasions" for a wide array of applications, including playing music, telling stories and jokes, playing games, finding information, answering trivia questions, checking the weather, helping with homework, etc. *See, e.g.*, Motion at 11-14, 22. Ms. Burris, as one example, set up Alexa on seven Android devices and four Echo Dots for her household, several of which have names reflecting that they are in her children's rooms. *Id.* at 12 (citing Gillespie Decl. (Dkt. Nos. 59, 66-1) at ¶¶ 19-29, Ex. A). Plaintiffs cannot dispute that they knew they were using the Alexa service—indeed, they had to invoke the "wake word," "Alexa," to do so. Nor do Plaintiffs dispute that they set up a variety of Kid Skills designed for children, for which the Parents expressly authorized Amazon to collect Plaintiffs' voices. *Id.*[1] In sum, Amazon established, without objection, that Plaintiffs actively exploited the Alexa service which their parents deliberately made available to them.

Unable to deny that they knowingly exploited those benefits, Plaintiffs instead argue that equitable estoppel applies only if their legal claims sounded in contract. *See* Opp. at 9. But the legal standard provides that either suing on a contract *or* otherwise exploiting that contract is sufficient to invoke equitable estoppel. Plaintiffs' insistence that tort or statutory claims are not

---

[1] Plaintiffs contend that Amazon's Parental Consent disclosure states "(falsely) that it will only collect the child's voice in connection with that skill." Opp. at 3. The disclosure contains no such limitation; rather Amazon requires this additional parental consent when a user enables a child-directed Kid Skill or where a parent creates a child member on its account. *See* Young Decl. (Dkt. No. 57) at ¶¶ 3, 14, Exh. C (Dkt. No. 57-3).

subject to estoppel raises precisely the same arguments that the Washington Supreme Court rejected in *Townsend II*. *Townsend II* applied estoppel to the children's tort and personal injury claims, expressly rejecting the dissent's insistence that equitable estoppel could not apply in tort.[2] 173 Wash. 2d at 461, 462-65 & n.3. The court there held that equitable estoppel barred the children from avoiding arbitration because "they *received* the benefit of the bargain in the transaction with [the builder] to the same extent as their parents" and "can be said to be knowingly exploiting the terms of the contract." *Id.* at 460-62 (emphasis added) (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009), and quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)). Indeed, the knowing exploitation is much clearer here where, unlike in *Townsend II*, Plaintiffs must affirmatively say "Alexa" each time they want to use its features.

Plaintiffs cite to *Comer* (Opp. at 11), which did not apply Washington law, but which also in no way undermines application of equitable estoppel here. *Comer* recognized that equitable estoppel applies where the non-signatory "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." 436 F.3d at 1101 (quoting *E.I. Dupont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187 (3d Cir. 2001)). *Comer* declined to apply equitable estoppel where a plaintiff participant in an ERISA plan had neither sued on "nor otherwise to take advantage of" the plan trustee's agreement with an investment advisor that required the trustee to arbitrate. *Comer*, 436 F.3d at 1102. Unlike Plaintiffs here—who affirmatively asked Alexa to help with their homework, or to find music they liked—the passive plan participant in *Comer* never asked the investment manager to do anything. *Comer* thus supports Amazon's legal theory and is distinguishable on its facts.

In *Dupont,* non-signatory Dupont brought claims for fraud and breach of an oral agreement that related to, but "occurred much later in time" than, the written contract with the arbitration clause. 269 F.3d at 191. The court declined to apply equitable estoppel because it found "no evidence" that the non-signatory embraced that written contract during its term or that it "received

---

[2] Despite Plaintiffs' assertion to the contrary (Opp. at 9 n.1), *Townsend v. Quadrant Corp.* ("*Townsend I*"), 153 Wash. App. 870, 889 (2009), *aff'd on other grounds*, 173 Wash. 2d 451 (2012), is relevant for its application of law on issues not addressed by *Townsend II*. Further, Defendants' references to the *Townsend* cases are neither misleading nor confusing as Plaintiffs suggest but are based logically on the chronological order of the decisions. *Cf.* Opp. at 9 n.1.

any *direct* benefit under" the contract. *Id.* at 200 (emphasis in original).[3]

By contrast, *Dupont* distinguished *American Bureau Shipping v. Tencera Shipyard SPA*, 170 F.3d 349 (2d Cir. 1999), on the basis that the non-signatory in that case, the owners of a racing yacht, *had* directly benefited from the agreement that contained the arbitration clause between the shipbuilder and a ship classification service. Specifically, because the shipbuilder's classification certificate agreement permitted the non-signatory owners to obtain insurance and register the vessel under the French flag, the owners who exploited those benefits could not disavow the certificate's arbitration clause. *Id.* at 353 (non-signatory received direct benefit because "without the [certificate], registration [under the French flag] would have been practically impossible"). The direct benefit principle demonstrated by *Tencera,* and recognized by *Dupont* and *Comer*, likewise require equitable estoppel here. Absent the Parents' agreement to the COUs and Alexa Terms, it would have been impossible for the Plaintiffs to use the Alexa service. It is undisputed that Amazon will not provide the service that Plaintiffs exploited without that agreement. Accordingly, the Plaintiffs, as in *Tencera*, cannot disavow the arbitration clause after accepting the benefits of the agreement that contained it.[4]

Plaintiffs are wrong in asserting that "every case" applying *Townsend II* requires that the plaintiffs bring claims only under the contract containing the arbitration agreement of equitable estoppel to apply. Opp. at 10. While a claim sounding in contract may be sufficient to impose estoppel, it is not essential. Both *Payne v. Amazon.com, Inc.*, No. 2:17-CV-2313-PMD, 2018 WL

---

[3] *Dupont* nonetheless found the case to be "a close call," though it concluded that the claims there were "far enough removed" from the contract that their invocation—in the absence of Dupont's prior receipt of benefits under the contract—would not warrant estoppel. 269 F.3d at 202.

[4] The other cases Plaintiffs rely on as defeating the "exploitation" theory of equitable estoppel are inapposite. *Mundi*, 555 F.3d at 1046, did not involve a non-signatory plaintiff nor the issue of knowing receipt of benefits of a contract—although it recognized that estoppel would apply in such a situation. That case involved a non-signatory credit insurer defendant who sought the benefit of plaintiff's arbitration agreement with her lender, which by its terms did not even reach the subject matter of plaintiff's claims. Plaintiffs fail to disclose that *Madera West Condominium Association v. Marx/Okubo*, 175 Wash. App. 1032 (2013) is unpublished and therefor "has no precedential value and [is] not binding on any court." Washington Rules of Court GR 14.1(a). The case also did not involve arbitration. It held that a condominium association was not equitably estopped to deny an attorneys' fee provision in an architectural contract to which it was not a party when it also had not sued on that contract—a far cry from this case, which seeks to prevent parents from escaping an arbitration clause by suing in the name of their children. And in *Loyola v. American Credit Acceptance LLC*, No. 2:19-cv-0002-SMJ, 2019 WL 1601362 (E.D. Wash. Apr. 15, 2019), the court actually ordered the case to arbitration.

4489275 (D.S.C. July 25, 2018) and *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 258 (E.D.N.Y. 2019) support the common sense holding of *Townsend II* and *Tencera*, that the plaintiff may "knowingly exploit" a contract for equitable estoppel purposes by receiving the benefits of the contract, not just by suing on it. *See* Motion at 21-23 *cf. Bridge v. Credit One Financial,* 14-CV 1512 (LDG (NJK), 2016 WL 1298712 at *2 (D. Nev. Mar. 31, 2016) (applying estoppel to compel arbitration provision in a Telephone Consumer Protection Act claim where plaintiff had "benefitted from [his mother's] agreement" by accessing the mother's account).

The court in *Payne*, 2018 WL 4489275, granted a motion to compel arbitration as to a non-signatory plaintiff who received as a gift a pair of glasses that her fiancé purchased through Amazon.[5] *Id.* at *7. The *Payne* court saw "no meaningful difference" between *Townsend II* and the facts there, or between "the receipt of an injurious house and the receipt of an injurious pair of glasses." *Id.* While the plaintiff asserted a breach of warranty claim in addition to tort and statutory claims, the Court's decision did not turn on or require the presence of a claim under the contract, but rather on the knowing receipt of the benefit of the contract relationship. *Id.* Similarly, the *Nicosia* court granted a motion to compel arbitration against a non-signatory plaintiff who "knowingly accepted the benefit of [his wife's] contractual relationship with Amazon," and as a result, could not avoid the Amazon arbitration agreement. *Nicosia*, 384 F. Supp. 3d at 274-75 (citing *Townsend II*, 173 Wash.2d at 461, among other cases).

The holding in *Townsend II* is not only the law in Washington; it is the equitable result here. There is no reason why the Parents—having procured the Alexa service by agreement to the COUs and Alexa Terms, agreed to take responsibility for the use of that service in their household, and then turned their children loose to use the service—should evade their agreement by bringing tort or statutory claims, rather than strictly contractual ones. Plaintiffs' claims stem from the use of the Alexa devices obtained by virtue of their Parents' contractual relationship. *Townsend II*

---

[5] Plaintiffs misconstrue Amazon's briefing in *Payne*. Opp at 13 n.3. In response to plaintiffs' argument that that the non-signatory's claims do not derive from purported contractual warranties, Amazon responded that, "even under the law that Plaintiffs say applies, Plaintiffs' breach of implied warranty claims are contractual in nature." *Payne*, 2018 WL 1858763. Amazon goes on that: "More fundamentally, this argument is a distraction. All of [the non-signatory wife]'s claims stem from the purchase of the glasses by Mr. Payne through Amazon's website—which resulted in a contractual relationship. Absent that relationship, she would have no claims." *Id.*

expressly forecloses that loophole. There is nothing "absurd" (Opp. at 13-14) about that result in this familial relationship; the only absurdity would be if the parents could, in their pursuit of a windfall, circumvent their agreements by disassociating the conduct they empowered their children to take from the agreements governing it.[6] Unlike *Brown v. Comcast Corp.*, No. 16-cv-00264ABSPX, 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016), where the court held the knowingly exploited doctrine inapplicable in the context of a one-time visitor to a household, the Plaintiffs here live in the Parent account holders' homes, where Alexa was set up for their own regular use.

In any case, the crux of Plaintiffs' claims—*i.e.*, their voices were recorded allegedly without consent—directly arise out of and are inseparable from the contract. The Alexa Terms provide that Alexa users' voices are recorded and retained by Amazon. *See, e.g.*, Buckley Decl., Exs. 7-19 at § 1.3; Exs. 10-16 at "Alexa Calling and Messaging Schedule"; Exs. 17-19 at "Alexa Communication Schedule." The Parents agreed that they are responsible for access to their accounts and oversight of minors' use. Given these undisputed contractual provisions, Plaintiffs claims cannot disclaim the contract indispensable to their access to Alexa in the first place. Equity does not allow Plaintiffs to ignore the Alexa agreements after knowingly enjoying the benefits of the Alexa service. They are equitably estopped from denying arbitration.

---

[6] Plaintiffs' string of cases does not support their strained interpretation of the standard. *See* Opp. at 11-12. *Loyola*, 2019 WL 1601362 at *7 is inapposite as it involved a non-signatory defendant seeking to invoke estoppel against a signatory plaintiff. It therefore relied on the standard outlined in *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013), which provided that, where "other circuits have granted motions to compel arbitration on behalf of non-signatory defendants against signatory plaintiffs, it was 'essential in all of these cases that the subject matter of the dispute was intertwined with the contract providing for arbitration.'" Similarly, *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2017 WL 4685039, at *14 (C.D. Cal. July 17, 2017) and *Joseph v. TrueBlue, Inc.*, No. C14-5963 BHS, 2015 WL 575289, at *3 (W.D. Wash. Feb. 11, 2015) involved non-signatory defendants seeking to invoke estoppel against signatory plaintiffs and relied on *Rajagopalan*, 718 F.3d at 847. *Franklin Templeton Bank & Tr. v. Butler*, No. 2:15-CV-435-JNP-EJF, 2016 WL 3129141, at *5 (D. Utah June 2, 2016) did not involve facts showing that the plaintiff had exploited the contract independent of the lawsuit. Plaintiffs' citation to *Stuart v. Korey*, No. C16-1815 RSM, 2017 WL 1496360, at *4 (W.D. Wash. Apr. 26, 2017) is puzzling as the court analyzed whether the record supported a finding that the plaintiff "personally received a benefit from the agreement." Likewise, *Double D Trade Co., LLC v. Lamex Foods, Inc.*, No. C09-0919RSL, 2009 WL 4927899, at *6 (W.D. Wash. Dec. 14, 2009) does not support Plaintiffs' argument as the court examined whether plaintiff had "sought to take advantage of [the agreements]." Finally, *Univera, Inc. v. Terhune*, No. C09-5227 RBL, 2009 WL 3877558, at *2 (W.D. Wash. Nov. 18, 2009) is unavailing as the court stated that, "a non-signatory must have either received a direct benefit or must have relied on the contract containing the arbitration clause" and held that non-signatory defendants were "indirect beneficiaries who did not knowingly exploit" the contract.

## III. "ACCOUNT SHARING" CONSTITUTES A VALID BASIS FOR COMPELLING ARBITRATION UNDER *NICOSIA,* WHICH ALSO SUPPORTS ESTOPPEL.

In an effort to distinguish *Nicosia*, 384 F. Supp. 3d 254, Plaintiffs argue that Amazon cannot compel arbitration based on an "account sharing" theory of estoppel. *See* Opp. at 10-12. But *Nicosia* addressed the very same question at the heart of this motion—namely, whether an account holder's arbitration agreement "can be circumvented when it is a third party (i.e., the Plaintiff)," as opposed to the account holder, who uses the account. *See id.* at 271. Consistent with the decisions of many other courts that "have held that a third-party user of an account is bound by the terms governing the account," *Nicosia* ruled that the account holder's arbitration agreement with Amazon bound a household member (there, her spouse) that used her account. *See id.* at 272 (collecting cases).

Plaintiffs fail to offer any legal support for why *Nicosia* should not govern here. Instead, they seize on the *Nicosia* court's discussion of "traditional equitable estoppel" to suggest that its holding turned entirely on Amazon's reliance on a misrepresentation about the identity of the plaintiff in that case. But *Nicosia* did not impose any such limitation, instead holding that the plaintiff was bound by the account holder's agreement "under *either* a traditional theory of equitable estoppel *or* direct benefits estoppel." 384 F. Supp. at 275 (emphases added). It also noted that, while the "direct benefits test closely approaches the paradigm for traditional equitable estoppel," it "is not a perfect overlap." *Id.* at 274 (internal citations, quotations, and alterations omitted). Plaintiffs apparently seek to obfuscate this distinction by eliminating key language from the quotes they use from *Nicosia*. *Compare* Opp. at 10 ("[t]he indelible feature of estoppel . . . is that one party has made a representation") (alterations in Opp.), *with* 384 F. Supp. 3d at 273 ("The indelible feature of estoppel, *as it has been traditionally defined*, is that one party has made a representation") (emphasis added).

*Nicosia* recognized that "the entire purpose of an 'account' on a platform like Amazon is to assume virtual personhood—to enter into contracts and, crucially, to *remain bound* by the contracts to which it has previously, and with due authority, agreed." 384 F. Supp. 3d at 272 (emphasis in original). For that reason, the Amazon COUs inform account holders that they

control, and accept responsibility for, all access to and activities under their account. Buckley Decl. at ¶ 5, Ex. 1 at 2-3, Exs. 2-6. If the validity of an account holder's agreements with Amazon "waxed and waned depending on the identity of the human user behind the screen" or using an Alexa-enabled device connected to the account, "it would impose a cloud of uncertainty over any contract formed over the internet." *See Nicosia*, 384 F. Supp. 3d at 272.

Plaintiffs fail to offer *any* rebuttal to Amazon's factual showing that Plaintiffs, with the permission and design of their Parents, knowingly exploited the benefits of their Parents' Alexa accounts. The Opposition instead seeks what will amount to a categorical rule that a parent's agreement to arbitrate disputes can never bind minors within the household—no matter how extensive an individual plaintiff's use, or how pervasive and intentional the "account sharing." "Common sense dictates that this could not possibly be the rule," and such a result would allow any individual to avoid the terms of a website simply by using someone else's account instead of their own. *See Nicosia*, 384 F. Supp. 3d at 272.

Unable to find any actual support in case law, Plaintiffs resort to inapt hypotheticals. Plaintiffs analogize their claims to a houseguest's potential claims from the use of a defective grill. But Plaintiffs' analogy illustrates the fundamental flaws in their logic.[7] For one, there is no allegation in this case that the Echo devices were defective; they functioned exactly as intended—and exactly as the Parents understood and agreed that they would before letting Plaintiffs use them. Plaintiffs' analogy also ignores the vital role that the Parents play in the facts giving rise to this case. The Echo devices at issue did not materialize from the ether into Plaintiffs' homes and bedrooms. The Parents placed them there; they linked those devices to their Amazon accounts

---

[7] This analogy—and its discussion of potential liabilities arising from use of a household grill—evokes Washington case law under the "family car" doctrine. Applying agency principles, the "family car" doctrine is a long-standing rule that imputes liability arising from ordinary household uses of a vehicle on the "one who furnishes [the] vehicle for the customary conveyance of the members of his family" or household. *Davis v. Browne*, 20 Wash. 2d 219, 229 (1944) (owner of family car was liable for damages inflicted by son, who was driving) (citing seminal case *Birch v. Abercrombie*, 74 Wash. 486, *modified*, 135 P. 821 (Wash. 1913), and collecting other cases) (*en banc*). Just as the Parents would not be able to shirk the liabilities that may arise from ordinary uses of the "family car" by "anyone driving the vehicle for that purpose with [their] consent, express or implied, whether a member of his family or another," *Davis,* 20 Wash. 2d at 229, they should not be able to escape the agreements for the household Echo devices (and connected Amazon accounts) through which the Parents allow their children to access the Alexa service.

with full knowledge that terms would apply; and there is no dispute that they are bound by the Amazon arbitration agreement. Equity requires that the same agreements to arbitrate that prohibit the Parents from bringing claims on their own behalf bar them from bringing the same claims on behalf of the children with whom they knowingly and intentionally shared their accounts.

## IV. PLAINTIFFS' CLAIMS ARE INTERTWINED WITH THEIR PARENTS' AGREEMENTS TO ARBITRATE.

In response to Amazon's assertion that equitable estoppel also applies because Plaintiffs' claims are closely intertwined with their Parents agreements to arbitrate Plaintiffs cite a handful of distinguishable cases, none of which hold the intertwined theory of equitable estoppel inapplicable in the guardian-child context. The cases, which are all factually dissimilar, discuss the general principle of estoppel in varying contexts. *See Comer*, 436 F.3d 1098 (discussing pension plan participant and investment manager); *DuPont*, 269 F.3d 187 (discussing parent company-subsidiary corporate context); *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (discussing relationships among corporate entities); *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58 (2d Cir. 2001) (same); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003) (discussing agency theory of binding a non-signatory); *Double D Trade Co., LLC*, 2009 WL 4927899 (discussing equitable estoppel in the business context); *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. SACV111062JVSANX, 2012 WL 12960766 (C.D. Cal. Dec. 7, 2012) (same); *Janvey v. Alguire*, 847 F.3d 231 (5th Cir. 2017) (discussing equitable estoppel in the context of former employees).

Though the intertwined theory most frequently is applied where a non-signatory attempts to enforce an arbitration provision against a signatory, it should also apply here. The Fourth Circuit has applied the intertwined theory to enforce an arbitration provision against a non-signatory where the parties shared a close relationship and their disputes arise from similar facts. *See J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988) (compelling arbitration against non-signatory and explaining that "a court may refer claims against the parent [corporation] to arbitration even though the parent is not formally a party to the arbitration agreement.") Similarly, the Third Circuit enforced an arbitration agreement against a non-signatory to a contract

to which the non-signatory was a third-party beneficiary. *See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202-04 (3rd Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989).

Plaintiffs' claims are directly intertwined with their Parents' assent to the COUs and the Alexa Terms. Plaintiffs do not dispute that it is impossible to set up an Alexa device without such assent, that these agreements authorize voice recording, and that they assign responsibility for minors' use of the devices to the Parents who activate them. Thus, the only real question left on the intertwined theory is whether Plaintiffs share a close relationship with their parents. That question answers itself. That those very Parents set the devices up in their homes for their children to use, and then bring this suit as guardians on their children's behalf, further underscores their close relationship and requires arbitration.[8]

## CONCLUSION

For these reasons and those outlined in the Motion, Amazon respectfully requests that the Court grant its Motion to Compel Arbitration, order all claims in this action to individualized arbitration, and dismiss this action or stay all proceedings pending completion of arbitration.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

---

[8] Amazon's moving papers established that the Amazon COUs, by incorporating the AAA rules, delegate all questions concerning arbitrability to the arbitrator, and not the Court. Motion at 25-26. Plaintiffs do not dispute, and therefore concede this point. Accordingly, once this Court finds that equitable estoppel applies, all other issues should be left to the arbitrator.

| | | |
|---|---|---|
| Dated: October 4, 2019 | | Respectfully submitted, |
| | | FENWICK & WEST LLP |
| | | By: *s/Jeffrey A. Ware* |
| | | Jeffrey A. Ware, WSBA No. 43779 |
| | | 1191 Second Avenue, 10th Floor<br>Seattle, WA 98101<br>Telephone: 206.389.4510<br>Facsimile: 206.389.4511<br>Email: jware@fenwick.com |
| | | Laurence F. Pulgram (admitted *pro hac vice*)<br>Tyler G. Newby (admitted *pro hac vice*)<br>Molly R. Melcher (admitted *pro hac vice*)<br>Armen N. Nercessian (admitted *pro hac vice*)<br>Avery L. Brown (admitted *pro hac vice*)<br>Mary M. Griffin (admitted *pro hac vice*)<br>FENWICK & WEST LLP<br>555 California Street, 12th Floor<br>San Francisco, CA 94104<br>Telephone: 415.875.2300<br>Facsimile: 415. 281.1350<br>Email: lpulgram@fenwick.com<br>tnewby@fenwick.com<br>mmelcher@fenwick.com<br>anercessian@fenwick.com<br>avery.brown@fenwick.com<br>mgriffin@fenwick.com |
| | | *Attorneys for Defendants*<br>AMAZON.COM, INC. and<br>A2Z DEVELOPMENT CENTER, INC. |

# CERTIFICATE OF SERVICE

I, Jeffrey Ware, hereby certify that on October 4, 2019, I caused the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS PLAINTIFFS' CLAIMS** to be served on the following parties as indicated below:

| | |
|---|---|
| Lauren Hudson, WSBA No. 55124<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>600 University St., Ste. 2800<br>Seattle, WA 98101<br>laurenhudson@quinnemanuel.com<br><br>Andrew H. Schapiro (*pro hac vice*)<br>Stephen Swedlow (*pro hac vice*)<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>191 N. Wacker Drive, Suite 2700 Chicago, IL 60606 Tel: 312.705.7400 Fax: 312.705.7401<br>andrewschapiro@quinnemanuel.com<br>stephenswedlow@quinnemanuel.com<br><br>Ashley C. Keller (*pro hac vice*)<br>Travis D. Lenkner (*pro hac vice*)<br>J. Dominick Larry (*pro hac vice*)<br>KELLER LENKNER LLC<br>150 N. Riverside Plaza, Ste. 4270<br>Chicago, IL 60606<br>Tel.: 312.741.5220<br>Fax: 312.971.3502<br>ack@kellerlenkner.com<br>tdl@kellerlenkner.com<br>nl@kellerlenkner.com<br><br>Warren D. Postman (*pro hac vice*)<br>KELLER LENKNER LLC<br>1300 Street N.W., Suite 400E<br>Washington, D.C.<br>Tel.: 202.749.8334<br>Fax: 312.971.3502<br>wdp@kellerlenkner.com<br><br>*Attorneys for Plaintiff and the Putative Class* | [ ] By United States Mail<br>[ ] By Legal Messenger<br>[X] By Electronic CM/ECF<br>[ ] By Overnight Express Mail<br>[ ] By Facsimile<br>[ ] By Email [by agreement of counsel] |

Dated: October 4, 2019

By: *s/ Jeffrey A. Ware*
For Jeffrey A. Ware, WSBA No. 43779
FENWICK & WEST LLP