1

2

THE HONORABLE RICHARD A. JONES
THE HONORABLE MICHELLE L. PETERSON

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

12

C.O., a minor, by and through her guardian
Alison O'Neil, individually and on behalf of all
others similarly situated,

Case No.: 2:19-cv-910

13

14

Plaintiffs,

vs.

**SECOND AMENDED CLASS
ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL**

15

16

AMAZON.COM, INC., a Delaware corporation,
and A2Z DEVELOPMENT CENTER, INC., a
Delaware corporation,

17

Defendants.

18

19     Millions of Americans use Amazon's smart-speaker technology ("Alexa") in their homes.

20   People speak to Alexa-enabled devices such as the Echo or Echo Dot about everything from the

21   mundane ("Alexa, what's the weather?") to the deeply personal ("Alexa, what are the symptoms

22   of depression?").

23     Most people believe that when they speak to an Alexa-enabled device, it converts their

24   voice into a set of digital computer instructions.  They expect that this digital query is sent over the

25   internet for processing, that a digital response is returned, and that the device then converts the

26   response into Alexa's voice.  They do not expect that Alexa is creating and storing a permanent

27   recording of their voice.  This expectation is reasonable; it would be easy for Alexa to work this

28   way, as numerous other voice-recognition technologies do.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1    But Alexa does something else.  After Alexa processes a user's commands, Amazon saves

2  a permanent recording of the user's voice to its own servers.  It then analyzes and uses these voice

3  recordings for its own commercial benefit.  These uses include allowing workers around the world

4  to listen to the voice recordings and creating voiceprints of users, which can be used to identify

5  them when they speak to other devices in other locations.  Amazon has thus built a massive

6  database of billions of voice recordings containing the private details of millions of Americans.

7    Amazon purports to obtain consent to record individuals who set up an Alexa-enabled

8  device.  But there is a large group of individuals who do not consent to be recorded when using an

9  Alexa-enabled device and who use Alexa without any understanding or warning that Amazon is

10  recording and voiceprinting them: children.

11    Alexa routinely records and voiceprints millions of children without their consent or the

12  consent of their parents.  This practice violates the laws of California, Florida, Illinois, Maryland,

13  Massachusetts, Michigan, New Hampshire, Pennsylvania, and Washington, which prohibit the

14  recording of oral communications without the consent of all parties to the communication.  These

15  laws recognize the unique privacy interest implicated by the recording of someone's voice.  That

16  privacy interest is all the more powerful in light of modern voiceprinting technology and the

17  potentially invasive uses of big data by a company the size of Amazon.  It takes no great leap of

18  imagination to be concerned that Amazon is developing voiceprints for millions of children that

19  could allow the company (and potentially governments) to track a child's use of Alexa-enabled

20  devices in multiple locations and match those uses with a vast level of detail about the child's life,

21  ranging from private questions they have asked Alexa to the products they have used in their

22  home.

23    Plaintiffs, minors when they were recorded by Alexa Devices, bring this Class Action

24  Complaint against Defendants Amazon.com, Inc., and a2z Development Center, Inc. d/b/a

25  Amazon Lab126 (collectively "Amazon" or "Defendants") to obtain redress for all California,

26  Florida, Illinois, Massachusetts, Maryland, Michigan, New Hampshire, Pennsylvania, and

27  Washington citizens who have used Alexa in their homes as minors and have therefore been

28  recorded by Amazon, without consent.  Plaintiffs allege as follows as to themselves, upon personal

SECOND AM. CLASS ACTION COMPL.
CASE No. 2:19-CV-910                                    -2-
QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

knowledge of their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys:

**PARTIES**

1.     Plaintiff R.A., and his parent and guardian Steve Altes, are natural persons and citizens of the State of California.

2.     Plaintiffs W.B., A.L., and K.S., and their parent and guardian Mistie Burris, are natural persons and citizens of the State of Florida.

3.     Plaintiff Amberlyn Satterlee is a natural person and citizen of the State of Florida.

4.     Plaintiffs Wy.R. and K.R., and their parent and guardian Joseph Riley, are natural persons and citizens of the State of Florida.

5.     Plaintiff C.L., and her parent and guardian Melissa Lock, are natural persons and citizens of the State of Illinois.

6.     Plaintiff C.O., and her parent and guardian Alison O'Neil, are natural persons and citizens of the Commonwealth of Massachusetts.

7.     Plaintiffs W.R. and L.R., and their parent and guardian William Rowe, are natural persons and citizens of the Commonwealth of Massachusetts.

8.     Plaintiffs J.B. and L.B., and their parent and guardian Doug Boswell, are natural persons and citizens of the State of Maryland.

9.     Plaintiff E.J., and her parent and guardian Corey Woodhouse, are natural persons and citizens of the State of Michigan.

10.     Plaintiff Z.S., and his parent and guardian Stephanie Starling, are natural persons and citizens of the State of Michigan.

11.     Plaintiffs E.B., S.B., and O.B, and their parent and guardian Maria Prunier-Brown, are natural persons and citizens of the State of New Hampshire.

12.     Plaintiff R.B., and her parent and guardian Angela Brine, are natural persons and citizens of the Commonwealth of Pennsylvania.

13.     Plaintiff N.S., and his parent and guardian Erin Shunn, are natural person and citizens of the State of Washington.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

14.     Defendant Amazon.com, Inc. is a Delaware corporation with its headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington.

15.     Defendant a2z Development Center, Inc., d/b/a Amazon Lab126, is a Delaware corporation with its headquarters and principal place of business located at 1120 Enterprise Way, Sunnyvale, California.  Amazon Lab126 employs thousands of individuals, many of whom work on Alexa-enabled devices and software at its Sunnyvale headquarters, and is a subsidiary of Amazon.com, Inc.

## JURISDICTION AND VENUE

16.     This Court has subject-matter jurisdiction over this dispute under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and because at least one member of each class is a citizen of a different state than at least one Defendant.

17.     This Court has personal jurisdiction over Defendants because a substantial part of the, harm, events, and conduct giving rise to Plaintiffs' claims occurred in Washington, and Defendant Amazon.com, Inc. is headquartered in Washington.

18.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant Amazon.com, Inc. is headquartered in this District, and because a substantial part of the events and conduct giving rise to Plaintiffs' claims took place in this District.

## FACTUAL BACKGROUND

### *Amazon and the Alexa Device*

19.     After starting as an online book retailer, Amazon has grown into a dominant force in the retail, internet, and technology sectors.  Amazon operates the world's leading e-commerce platform, with net sales of $232 billion in 2018.[1]  Amazon is the world's largest provider of cloud-computing services.  According to some reports, 42% of the internet is powered by Amazon Web

---

[1] Form 10-K, Amazon.com, Inc.,
https://www.sec.gov/Archives/edgar/data/1018724/000101872419000004/amzn-20181231x10k.htm.

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                        -4-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

Services, which is more than double Microsoft, Google, and IBM combined.[2]  And Amazon also develops technology products including Alexa, the world's leading voice-responsive personal-assistant technology.

20.     Amazon Lab126, headquartered in Sunnyvale, California, began engineering the Echo "smart speaker" in 2010, eventually leading to Amazon.com, Inc. launching the product and the Alexa voice assistant (also developed by Amazon Lab126) on November 6, 2014, with sales commencing shortly thereafter.  Since then, Amazon has launched various additional Echo products, including the Echo Dot, Echo Plus, Echo Sub, Echo Show, and Echo Input.  Each Echo device contains a speaker, microphones, a small computer, internet connectivity, and the Alexa program.

21.     Amazon subsequently added the Alexa program to other Amazon products such as the Amazon Fire TV digital media player.  Amazon also allows manufacturers of devices as varied as electrical outlets, lightbulbs, thermostats, and security cameras to offer Alexa integration, allowing users to control those third-party devices through Alexa.  And Amazon also now allows manufacturers to offer devices with Alexa "built-in," essentially allowing other speakers and devices to offer much of the functionality of an Echo or Echo Dot[3] (collectively, all devices featuring Alexa integration or functionality are referred to herein as "Alexa Devices").[4]

---

[2] Matt Ward, *Amazon: The Company Consuming Consumers*, thinkgrowth.org (Jan. 29, 2018), https://thinkgrowth.org/the-big-4-part-one-amazon-the-company-that-consumes-the-world-fb4679f10708 (last visited Dec. 6, 2019).

[3] Alistair Charleton, *Which Cars Have Amazon Alexa Integration?*, Gearbrain (April 29, 2019), https://www.gearbrain.com/which-cars-have-amazon-alexa-2525958778.html (last visited Dec. 6, 2019); James Stables, *The Best Amazon Alexa Built-In Speakers*, The Ambient (Apr. 8, 2019), https://www.the-ambient.com/guides/best-alexa-built-in-speakers-1196 (last visited Dec. 6, 2019); Dana Kerr and Ben Rubin, *Alexa is Coming to Sony Smart TVs*, CNET (Sept. 20, 2018, 11:27 a.m. EST), https://www.cnet.com/news/alexa-is-coming-to-tvs-well-at-least-sony-smart-tvs/ (last visited Dec. 6, 2019); Jonathan Vanian, *Amazon Alexa is Now Available on HP, Acer, and Asus Computers*, Fortune (Jan. 8, 2018), http://fortune.com/2018/01/08/amazon-alexa-hp-acer-asus/ (last visited Dec. 6, 2019).

[4] For purposes of this Second Amended Complaint, the term "Alexa Devices" specifically excludes the Amazon Echo Dot Kids Edition.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

22.     As of October 2018, Amazon had sold approximately 47 million Echo devices.[5] In January 2019, Amazon reported that over 100 million total devices had been sold with Alexa pre-installed.[6]

23.     In the years since the Echo launched, Amazon Lab126 has continued to develop Alexa software updates, and has played an integral role in the development of new Alexa Devices.[7]

24.     Alexa is a natural-language processing system. Alexa "listens" to people's verbal communications and responds to those communications in a simulated human voice. People most frequently interact with Alexa in their homes.

25.     Using Alexa on an Alexa Device, whether an Amazon device such as an Echo, or a third-party device like a Sonos One speaker, is relatively simple. Once an individual has an Alexa Device, the person needs two more things to activate it: a WiFi Internet connection, and the Alexa mobile application (the "Alexa App") installed on his or her smartphone or tablet.

26.     To use the Alexa App, the individual must have an account with Amazon. The individual must then follow the set-up process on the Alexa Device, which eventually includes pairing the Alexa Device with the Alexa App. For third-party Alexa Devices, the device itself will function even without being paired to the Alexa App, but the Alexa functionality will be disabled.

27.     Once the individual has paired the Alexa Device to the Alexa App, the Alexa Device is ready for use by anyone, including people who have not set up the Alexa App or consented to being recorded.

---

[5] Brian Dumaine, *It Might Get Loud: Inside Silicon Valley's Battle to Own Voice Tech*, Fortune (Oct. 24, 2018), http://fortune.com/longform/amazon-google-apple-voice-recognition/ (last visited Dec. 6, 2019).

[6] Lucase Matney, *More Than 100 Million Alexa Devices Have Been Sold,* Tech Crunch (Jan. 4, 2019) https://techcrunch.com/2019/01/04/more-than-100-million-alexa-devices-have-been-sold/ (last visited Dec. 6, 2019).

[7] Ry Crist, *Behind the scenes at Alexa's laboratory*, CNet (Apr. 23, 2018), https://www.cnet.com/news/behind-the-scenes-at-amazon-alexa-laboratory-lab126/ (last visited Dec. 6, 2019).

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                    -6-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

28.     Alexa Devices are designed to record and respond to communications immediately after an individual says a wake word (typically "Alexa" or "Echo").[8]  Alexa Devices accomplish this by storing a second or two of audio in short-term, random-access memory (RAM), analyzing that temporary audio recording for the presence of a wake word, and then overwriting it if the wake word is not recognized.[9]

29.     If the wake word is recognized, the Alexa Device records the ensuing communication and—unlike some other smart devices—transmits the recording to Amazon's servers for interpretation and processing before receiving the relevant data back in response.

30.     Once Alexa has responded to a recording sent by an Alexa Device, Amazon indefinitely stores a copy of that recording on its own servers for later analysis and commercial use, including refinement of the Alexa system, development of new technologies and services, and targeted advertising and recommendations.

31.     Amazon uses machine learning to leverage the massive amount of data collected by Alexa Devices—including these permanent voice recordings—to constantly refine the natural language understanding underlying Alexa's functionality.  Recordings are also individually reviewed by Amazon employees and part-time contractors in locations as far flung as Costa Rica, India, and Romania.[10]

32.     However, Amazon need not permanently store the audio recordings in order for Alexa Devices to function.  Although it would not be as cost-effective or commercially advantageous to Amazon, Alexa Devices could process audio interactions locally on the device and send only a digital query, rather than a voice recording, to Amazon's servers.  Indeed, Amazon developed a "Local Voice Control" feature for Alexa Devices that allows individuals "to

---

[8] Matt Day, Giles Turner, and Natalia Drozdiak, *Amazon Workers Are Listening to What You Tell Alexa*, Bloomberg (Apr. 10, 2019, 5:34 p.m. CDT), https://www.bloomberg.com/news/articles/2019-04-10/is-anyone-listening-to-you-on-alexa-a-global-team-reviews-audio (last visited Dec. 6, 2019).

[9] Recent news reports, however, have revealed that Alexa devices regularly "inadvertently" record conversations without prompting by a wake word.  *See id.*

[10] *Id.*

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1  fulfill a limited set of requests on select [Alexa] devices when the device is not connected to the

2  internet, such as requests to control supported lights, plugs, and switches."[11]

3      33.    Amazon could also upload audio recordings to short-term memory in the cloud and

4  immediately overwrite those recordings after processing, much like Alexa constantly overwrites

5  the audio it captures prior to a user saying a wake word.  If Amazon did that, it would never

6  possess a permanent recording of any user's communications.

7      34.    Many similar "smart speaker" devices are less intrusive than Amazon's Alexa

8  Devices.  Apple's natural-language processing system, "Siri," records communications in a similar

9  manner to Alexa, and sends those recordings to Apple's servers.[12]  However, Apple stores those

10  recordings in an identifiable form for only a short period of time, and then deletes the recordings

11  entirely.[13]  Likewise, Mercedes has developed voice recognition technology that allows drivers to

12  ask their car for directions, and that offers substantial functionality even when the vehicle lacks an

13  Internet connection (and, therefore, the vehicle cannot transmit a recording).[14]

14      35.    Amazon has strong commercial incentives to collect as many Alexa recordings as

15  possible.  From the outset, Amazon has been a company built on the relentless acquisition of

16  consumer behavioral data, whether through its ubiquitous AWS offerings, its ever-expanding

17  online storefront, its entertainment platforms, and now the Alexa Devices it uses as its ears in

18  every home.

19      36.    The collection of Alexa Device recordings is a natural extension of Amazon's

20  *modus operandi*: collect as much consumer data as possible through any means possible,

---

21  [11] *Alexa and Alexa Device FAQs*, Amazon,

22  https://www.amazon.com/gp/help/customer/display.html?nodeId=201602230 (last visited Dec. 6,

23  2019).

24  [12] Lisa Eadicicco, *Amazon Workers Reportedly Listen to What You Tell Alexa – Here's How Apple and Google Handle What You Say to Their Voice Assistants*, Business Insider (Apr. 15, 2019, 10:39 a.m. EST), https://www.businessinsider.com/how-amazon-apple-google-handle-alexa-siri-

25  voice-data-2019-4 (last visited Dec. 6, 2019).

26  [13] *Id.*

27  [14] Matt Robinson, *In-Car Voice Control Still Isn't Perfect, But I'm Warming To It*, Car Throttle (March 2019), https://www.carthrottle.com/post/in-car-voice-control-still-isnt-perfect-but-im-

28  warming-to-it/ (last visited Dec. 6, 2019).

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910    -8-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

streamline the process so that consumers cannot or will not stop the collection, and use Amazon's massive size to leverage that data more effectively than any of its competitors.

37.  Simply put, the more data Amazon collects, the more use it has for each incremental data point in its possession.

38.  Amazon's decision to make Alexa integration available to third-party product manufacturers at no cost is entirely consistent with this scheme.  While Amazon might have charged some companies a licensing fee for Alexa integration (which its partners would then be able to pass on to consumers who value the extra functionality), it offers that integration free of charge in order to facilitate the rapid adoption of Alexa Devices, the ubiquitous use of Alexa, and the resulting widespread collection of voice-recordings of millions of people.

***Amazon Records Children's Private Communications Without Their Consent, Discloses the Recordings, and Uses Those Recordings for Commercial Ends***

39.  Alexa Devices respond to any individual who says the wake word.  Alexa Devices thus record communications involving individuals who did not purchase the device or install the Alexa App.

40.  But Alexa has the ability to identify different users based on their voiceprint. Through this functionality, Alexa could determine whether or not the person speaking to it has previously registered as a user and agreed to be recorded.  When Alexa detects that a user has not agreed to be recorded, it could inform the user that Amazon will make and keep persistent recordings of the user's voice as a condition of use.  Alexa could ask the new user to agree to that recording.  Or it could deactivate Amazon's permanent recording functionality for such users.  But Alexa does not do this.

41.  At no point does Amazon warn unregistered users that it is creating persistent voice recordings of their Alexa interactions, let alone obtain their consent to do so.

42.  When children say a wake word to an Alexa Device, the device records and transmits the children's communications in the same manner that it handles adults' communications.  Neither the children nor their parents have consented to the children's interactions being permanently recorded.

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                          -9-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

43.     Worse, those recordings are then stored persistently, which enables Amazon to disclose the recordings to thousands of contractors worldwide.

44.     Having recorded millions of children and stored those recordings in persistent databases, Amazon also does what it always does: monetizes that data. That is, Amazon analyzes those recordings so that it can improve Alexa's performance and introduce new features. Those improvements in turn offer Amazon new revenue streams and increased profit.

### Facts Specific to Plaintiff R.A. (California)

45.     Plaintiff R.A. and his guardian Steve Altes are citizens of the State of California. Plaintiff R.A. is nine years old.

46.     Plaintiff R.A. has used Alexa on two Amazon Echo Dots in his home since November 2018.

47.     R.A. did not purchase or set up the Alexa Devices, nor did he download the Alexa App.

48.     Although R.A. was not a registered Alexa user, he directly interacted with the Alexa Devices on various occasions.  For instance, R.A. uses the Alexa Devices to play music, tell jokes, and help with math questions.  On those occasions, Amazon recorded R.A.'s communications and stored those recordings on its servers.

49.     R.A. was unaware that when he spoke a wake word, an Alexa Device would record and store the ensuing private communications.

50.     R.A. never agreed to allow his communications to be recorded.  R.A.'s guardian likewise never agreed to allow Amazon to record R.A.'s communications.  Amazon recorded R.A.'s private communications without his consent, and without the consent of his guardian.

### Facts Specific to Plaintiffs W.B., A.L., K.S., and Amberlyn Satterlee (Florida)

51.     Plaintiffs W.B., A.L., K.S., their guardian Mistie Burris, and their sister Amberlyn Satterlee, are citizens of the State of Florida.  Plaintiffs W.B., A.L., K.S., and Amberlyn Satterlee are three, ten, fifteen, and eighteen years old, respectively.

52.     W.B., A.L., K.S., and Amberlyn Satterlee have used Alexa on devices that have been in their home since November 2015.

SECOND AM. CLASS ACTION COMPL.
CASE No. 2:19-cv-910
-10-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

53.     W.B., A.L., K.S., and Amberlyn Satterlee's home contains two Amazon Fire Sticks, which were purchased in June 2017 and May 2018; four Amazon Fire Tablets, two of which were purchased in November 2015 and two of which were purchased in July 2016; and four Amazon Echo Dots, one purchased in November 2017, two purchased in July 2018, and one purchased in November 2018.

54.     W.B., A.L., K.S., and Amberlyn Satterlee did not purchase or set up the Alexa Devices, nor did they download the Alexa App.

55.     Although W.B., A.L., K.S., and Amberlyn Satterlee were not registered Alexa users, they directly interacted with the Alexa Devices on various occasions.  For instance, W.B., A.L., K.S., Amberlyn Satterlee use the Alexa Devices to control their TV, play music, answer questions and trivia, and play games.  On those occasions, Amazon recorded W.B., A.L., K.S., and Amberlyn Satterlee's communications and stored those recordings on its servers.

56.     W.B., A.L., K.S., and Amberlyn Satterlee were minors at the time of the recordings and were unaware that when they spoke a wake word, an Alexa Device would record and store the ensuing private communications.

57.     W.B., A.L., K.S., and Amberlyn Satterlee, never agreed to allow their communications to be recorded.  W.B., A.L., K.S., and Amberlyn Satterlee's guardian likewise never agreed to allow Amazon to record W.B., A.L., K.S., and Amberlyn Satterlee's communications.  Amazon recorded W.B., A.L., K.S., and Amberlyn Satterlee's private communications without their or their guardian's consent.

### Facts Specific to Plaintiffs Wy.R. and K.R. (Florida)

58.     Wy.R. and K.R., and their guardian Joseph Riley, are citizens of the State of Florida.  Plaintiffs Wy.R. and K.R. are three and six years old, respectively.

59.     Wy.R. and K.R. have used Alexa in their home since June 2019.

60.     Wy.R. and K.R.'s home contains two Amazon Echo Shows and an Amazon Echo Dot, which were purchased in June 2019.

61.     Wy.R. and K.R. did not purchase or set up the Alexa Devices, nor did they download the Alexa App.

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                                                      -11-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

62.     Although Wy.R. and K.R. were not registered Alexa users, they directly interacted with the Alexa Devices on various occasions.  For instance, Wy.R. and K.R. use the Alexa Devices to control their TV, play music, answer questions and trivia, and play games.  On those occasions, Amazon recorded Wy.R. and K.R.'s communications and stored those recordings on its servers.

63.     Wy.R. and K.R. were unaware that when they spoke a wake word, an Alexa Device would record and store the ensuing private communications.

64.     Wy.R. and K.R. never agreed to allow their communications to be recorded. Wy.R. and K.R.'s guardian likewise never agreed to allow Amazon to record Wy.R. and K.R.'s communications.  Amazon recorded Wy.R. and K.R.'s private communications without their consent, and without the consent of their guardian.

### *Facts Specific to Plaintiff C.L. (Illinois)*

65.     Plaintiff C.L. and her parent Melissa Lock are citizens of the State of Illinois. Plaintiff C.L. is ten years old.

66.     C.L. has used Alexa on the Amazon Echo Dot in her home since December 2017.

67.     C.L. did not purchase or set up the Alexa Device, nor did she download the Alexa App.

68.     Although C.L. was not a registered Alexa user, she directly interacted with an Alexa Device on several occasions.  For instance, she regularly used it to find information, play music, and tell jokes.  On those occasions, Amazon recorded C.L.'s communications and stored those recordings on its servers.

69.     C.L. was unaware that when she spoke a wake word, an Alexa Device would record and store the ensuing private communications.

70.     C.L. never agreed to allow her communications to be recorded.  C.L.'s guardian likewise never agreed to allow Amazon to record C.L.'s communications.  Amazon recorded C.L.'s private communications without her consent, and without the consent of her guardian.

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                                -12-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

*Facts Specific to Plaintiffs J.B. and L.B. (Maryland)*

71.     Plaintiffs J.B. and L.B., and their parent Doug Boswell, are citizens of the State of Maryland.  Plaintiff J.B. and L.B. are six and eight years old, respectively.

72.     J.B. and L.B. have used Alexa in their home since November 2016.

73.     J.B. and L.B.'s home contained an Amazon Echo since November 2016, an Amazon Echo Dot since November 2017, and two Amazon Fire TV sticks, which were purchased in January and February 2018.

74.     J.B. and L.B. did not purchase or set up the Alexa Devices, nor did they download the Alexa App.

75.     Although J.B. and L.B. were not registered Alexa users, they directly interacted with an Alexa Device on several occasions.  For instance, they have regularly used the Amazon Echo and Amazon Echo Dot to play music, tell jokes, and answer trivia questions, and they have, on occasion, used the Alexa Fire Sticks to control the television.  On those occasions, Amazon recorded J.B.'s and L.B.'s communications and stored those recordings on its servers.

76.     J.B. and L.B. were unaware that when they spoke a wake word, an Alexa Device would record and store the ensuing private communications.

77.     J.B. and L.B. never agreed to allow their communications to be recorded.  J.B. and L.B.'s guardian likewise never agreed to allow Amazon to record J.B.'s and L.B.'s communications.  Amazon recorded J.B.'s and L.B.'s private communications without their consent, and without the consent of their guardian.

*Facts Specific to Plaintiff C.O. (Massachusetts)*

78.     Plaintiff C.O. and her parent Alison O'Neil are citizens of the Commonwealth of Massachusetts.  Plaintiff C.O. is eleven years old.

79.     C.O. has used Alexa on the Amazon Echo Dot in her home since July 2018.

80.     C.O. did not purchase or set up the Echo Dot, nor did she download the Alexa App.

81.     Although C.O. was not a registered Alexa user, she directly interacted with an Alexa Device on several occasions.  For instance, she regularly used it to play music, tell jokes,

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-cv-910                                              -13-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

and answer questions.  On those occasions, Amazon recorded C.O.'s communications and stored those recordings on its servers.

82.    C.O. was unaware that when she spoke a wake word, an Alexa Device would record and store the ensuing private communications.

83.    C.O. never agreed to allow her communications to be recorded.  C.O's guardian likewise never agreed to allow Amazon to record C.O.'s communications.  Amazon recorded C.O.'s private communications without her consent, and without the consent of her guardian.

### Facts Specific to Plaintiffs W.R. and L.R. (Massachusetts)

84.    Plaintiffs W.R. and L.R., and their parent William Rowe, are citizens of the Commonwealth of Massachusetts.  Plaintiff W.R. and L.R. are ten and twelve years old, respectively.

85.    W.R. and L.R. have used Alexa in their home since December 2016.

86.    W.R. and L.R.'s home contains an Amazon Echo, which was purchased in December 2016; two Amazon Echo Dots, which were purchased in November 2017; three Amazon Kindle Fires, which were purchased in December 2017 and December 2018; and an Amazon Fire Stick, which was purchased in October 2018.

87.    W.R. and L.R. did not purchase or set up the Alexa Devices, nor did they download the Alexa App.

88.    Although W.R. and L.R. were not registered Alexa users, they directly interacted with the Alexa Devices on several occasions. For instance, they use Alexa to play music, answer questions, and set timers. On those occasions, Amazon recorded W.R. and L.R.'s communications and stored those recordings on its servers.

89.    W.R. and L.R. were unaware that when they spoke a wake word, an Alexa Device would record and store the ensuing private communications.

90.    W.R. and L.R. never agreed to allow their communications to be recorded.  W.R. and L.R.'s guardian likewise never agreed to allow Amazon to record W.R. and L.R.'s communications.  Amazon recorded W.R. and L.R.'s private communications without their consent, and without the consent of their guardian.

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                                                      -14-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

***Facts Specific to Plaintiff E.J. (Michigan)***

91.     Plaintiff E.J. and her parent Corey Woodhouse are citizens of the State of Michigan.  Plaintiff E.J. is seven years old.

92.     E.J. used Alexa on an Amazon Echo Dot in her home beginning in June 2019.

93.     E.J. did not purchase or set up the Alexa Device, nor did she download the Alexa App.

94.     Although E.J. was not a registered Alexa user, she directly interacted with an Alexa Device on several occasions.  For instance, she used it primarily to play music and check the weather.  On those occasions, Amazon recorded E.J.'s communications and stored those recordings on its servers.

95.     E.J. was unaware that when she spoke a wake word, an Alexa Device would record and store the ensuing private communications.

96.     E.J. never agreed to allow her communications to be recorded.  E.J.'s guardian likewise never agreed to allow Amazon to record E.J.'s communications.  Amazon recorded E.J.'s private communications without her consent, and without the consent of her guardian.

***Facts Specific to Plaintiff Z.S. (Michigan)***

97.     Plaintiff Z.S., and his parent Stephanie Starling are citizens of the State of Michigan.  Plaintiff Z.S. is ten years old.

98.     Z.S. used Alexa on Amazon Echo Dots in his home which were purchased in Spring 2018 and February 2019.

99.     Z.S. did not purchase or set up the Echo Dots, nor did he download the Alexa App.

100.    Although Z.S. was not a registered Alexa user, he directly interacted with an Alexa Device on several occasions.  For instance, Z.S. used the Echo Dots to check the weather, tell jokes, and play games. On those occasions, Amazon recorded Z.S.'s communications and stored those recordings on its servers.

101.    Z.S. was unaware that when he spoke a wake word, an Alexa Device would record and store the ensuing private communications.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

102.    Z.S. never agreed to allow his communications to be recorded.  Z.S.'s guardian likewise never agreed to allow Amazon to record Z.S.'s communications.  Amazon recorded Z.S.'s private communications without his consent, and without the consent of his guardian.

### Facts Specific to Plaintiffs O.B., S.B., and E.B. (New Hampshire)

103.    Plaintiffs O.B., S.B., and E.B., and their parent Maria Prunier-Brown, are citizens of the State of New Hampshire.  Plaintiffs are eleven, fourteen, and sixteen years old, respectively.

104.    O.B., S.B., and E.B. began using Alexa on the Amazon Echo Dot in their home beginning in December 2018.

105.    O.B., S.B., and E.B. did not purchase or set up the Alexa Device, nor did they download the Alexa App.

106.    Although O.B., S.B., and E.B. were not registered Alexa users, they directly interacted with an Alexa Device on several occasions.  For instance, they regularly used it to play music, check the weather, and help with homework.  On those occasions, Amazon recorded E.B.'s, S.B.'s, and O.B.'s communications and stored those recordings on its servers.

107.    O.B., S.B., and E.B. were unaware that when they spoke a wake word, an Alexa Device would record and store the ensuing private communications.

108.    O.B., S.B., and E.B. never agreed to allow their communications to be recorded.  O.B., S.B., and E.B.'s guardian likewise never agreed to allow Amazon to record O.B.'s, S.B.'s, and E.B.'s communications.  Amazon recorded O.B.'s, S.B.'s, and E.B.'s private communications without their consent, and without the consent of their guardian.

### Facts Specific to Plaintiff R.B. (Pennsylvania)

109.    Plaintiff R.B. and her parent Angela Brine are citizens of the Commonwealth of Pennsylvania.  Plaintiff R.B. is four years old.

110.    R.B. began using Alexa on an Amazon Echo Dot in her home in August 2018.

111.    R.B. did not purchase or set up the Amazon Echo Dot, nor did she download the Alexa App.

112.    Although R.B. was not a registered Alexa user, she directly interacted with an Alexa Device on several occasions.  For instance, she regularly used the Echo Dot to play music

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                                    -16-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

and answer questions.  On those occasions, Amazon recorded R.B.'s communications and stored those recordings on its servers.

113.    R.B. was unaware that when she spoke a wake word, an Alexa Device would record and store the ensuing private communications.

114.    R.B. never agreed to allow her communications to be recorded.  R.B.'s guardian likewise never agreed to allow Amazon to record R.B.'s communications.  Amazon recorded R.B.'s private communications without her consent, and without the consent of her guardian.

### *Facts Specific to Plaintiff N.S. (Washington)*

115.    Plaintiff N.S. and his parent Erin Shunn are citizens of the State of Washington. Plaintiff N.S. is fifteen years old.

116.    Plaintiff N.S. used Alexa in his home beginning in June 2017.

117.    Plaintiff N.S.'s home contains an Amazon Echo Dot and an Amazon Fire TV Stick.

118.    N.S. did not purchase or set up the Amazon Echo Dot, nor did he download the Alexa App.

119.    Although N.S. was not a registered Alexa user, he directly interacted with an Alexa Device on several occasions.  For instance, he regularly used it to ask it the weather and for help with math questions.  On those occasions, Amazon recorded N.S.'s communications and stored those recordings on its servers.

120.    N.S. was unaware that when he spoke a wake word, an Alexa Device would record and store the ensuing private communications.

121.    N.S. never agreed to allow his communications to be recorded.  N.S.'s guardian likewise never agreed to allow Amazon to record N.S.'s communications.  Amazon recorded N.S.'s private communications without his consent, and without the consent of his guardian.

### CLASS ACTION ALLEGATIONS

122.    Plaintiff R.A., by and through his guardian Steve Altes, brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

**California Class:** All individuals who used Alexa on a household Alexa Device in the State of California while they were minors, but who have not downloaded and installed the Alexa App.

123.    Plaintiffs W.B., A.L., and K.S., by and through their guardian Mistie Burris, Amberlyn Satterlee, and Plaintiffs Wy.R and K.R., by and through their guardian Joseph Riley, bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

**Florida Class:** All individuals who used Alexa on a household Alexa Device in the State of Florida while they were minors, but who have not downloaded and installed the Alexa App.

124.    Plaintiff C.L., by and through her guardian Melissa Lock, brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

**Illinois Class:** All individuals who used Alexa on a household Alexa Device in the State of Illinois while they were minors, but who have not downloaded and installed the Alexa App.

125.    Plaintiffs J.B. and L.B., by and through their guardian Doug Boswell, bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of a Class of the following class of similarly situated individuals:

**Maryland Class:** All individuals who used Alexa on a household Alexa Device in the State of Maryland while they were minors, but who have not downloaded and installed the Alexa App.

126.    Plaintiff C.O., by and through her guardian Alison O'Neil, and Plaintiffs W.R. and L.R., by and through their guardian William Rowe, bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following Class of similarly situated individuals:

**Massachusetts Class:** All individuals who used Alexa on a household Alexa Device in the Commonwealth of Massachusetts while they were minors, but who have not downloaded and installed the Alexa App.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

127.     Plaintiff E.J., by and through her guardian Corey Woodhouse, and Plaintiff Z.S., by and through his guardian Stephanie Starling, bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **Michigan Class:** All individuals who used Alexa on a household Alexa Device in the State of Michigan while they were minors, but who have not downloaded and installed the Alexa App.

128.     Plaintiffs E.B., S.B., and O.B, by and through their guardian Maria Prunier-Brown, bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **New Hampshire Class:** All individuals who used Alexa on a household Alexa Device in the State of New Hampshire while they were minors, but who have not downloaded and installed the Alexa App.

129.     Plaintiff R.B., by and through her guardian Angela Brine, brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **Pennsylvania Class:** All individuals who used Alexa in the Commonwealth of Pennsylvania on a household Alexa Device while they were minors, but who have not downloaded and installed the Alexa App.

130.     Plaintiff N.S., by and through his guardian Erin Shunn, brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **Washington Class:** All individuals who used Alexa on a household Alexa Device in the State of Washington while they were minors, but who have not downloaded and installed the Alexa App.

131.     Excluded from each Class are: (1) any Judge or Magistrate presiding over this action and any members of their household; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-cv-910                                                     -19-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

132.    **Numerosity:** The exact number of members of the Classes is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable.  The Classes likely consist of thousands of individuals, and their members can be identified through Defendants' records.

133.    **Predominant Common Questions:** The Classes' claims present common questions of law and fact, and those questions predominate over any questions that may affect individual members of the Classes.  Common questions for the Classes include, but are not limited to, the following:

      a.  Whether Alexa Devices make permanent voice recordings of children who interact with them;

      b.  Whether children who use Alexa Devices in their home have an objectively reasonable expectation of confidentiality; and

      c.  Whether Amazon fails to obtain consent to record children who are not registered users of Alexa Devices.

134.    **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the proposed Classes.  Plaintiffs and members of the Classes suffered invasions of privacy as a result of Defendants' uniform wrongful conduct.

135.    **Adequate Representation:** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Classes, and they have retained counsel competent and experienced in complex litigation and class actions.  Plaintiffs have no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1    members of the Classes, and they have the resources to do so.  Neither Plaintiffs nor their counsel

2    have any interest adverse to those of the other members of the Classes.

3         136.    **Superiority:** This class action is appropriate for certification because class

4    proceedings are superior to other available methods for the fair and efficient adjudication of this

5    controversy, and individual joinder of all members of the Classes is impracticable.  This proposed

6    class action presents fewer management difficulties than individual litigation, and provides the

7    benefits of single adjudication, economies of scale, and comprehensive supervision by a single

8    court. Class treatment will create economies of time, effort, and expense and promote uniform of

9    decision-making.

10        137.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions

11   based on facts learned and legal developments following additional investigation, discovery, or

12   otherwise.

13                              **FIRST CAUSE OF ACTION**
                **Violation of the California Invasion of Privacy Act, Cal. Penal Code § 632**
14                     **(On Behalf of Plaintiff R.A. and the California Class)**

15        138.    Plaintiff R.A., and the California Class members (collectively, the "California

16   Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

17        139.    The California Plaintiffs used Alexa Devices within their families' homes where

18   they had a reasonable expectation of privacy from unknown intrusions.

19        140.    When the California Plaintiffs used the Alexa Devices, Amazon intentionally

20   created recordings of their device interactions, transmitted those recordings to Amazon's cloud

21   servers, and retained copies of those recordings indefinitely at substantial cost.

22        141.    Amazon programmed Alexa to intercept communications in the California

23   Plaintiffs' homes, and intentionally used and endeavored to use the recordings of those

24   communications for its own commercial benefit.

25        142.    On information and belief, Amazon used and endeavored to use the recordings and

26   the data derived from them to refine the functionality of its Alexa voice-assistant software, to

27   develop new products and services, and to serve product and service recommendations to

28   customers, among other uses.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

143. On information and belief, Amazon intentionally disclosed recordings and data captured from Alexa Devices in the California Plaintiffs' homes with third-party contractors. When Amazon disclosed those recordings, it knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

144. Amazon did not inform the California Plaintiffs that it would record their private wire, electronic, or oral Alexa communications, that it would retain those recordings permanently, that it would use and endeavor to use those recordings for its commercial benefit, or that it would share those recordings with contractors at locations around the world.

145. The California Plaintiffs did not expect, and had no reason to expect, that Amazon would record their private wire, electronic, or oral Alexa communications; retain those recordings permanently; use and endeavor to use those recordings for Amazon's commercial benefit; or share those recordings with contractors at locations around the world.

146. Rather, the California Plaintiffs reasonably expected that their Alexa interactions would remain private.

147. The California Plaintiffs never consented to Amazon recording their private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

148. The California Plaintiffs' guardians likewise never consented to Amazon recording their children's private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

149. Amazon created the recordings of the California Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

150. As set forth above, Amazon intentionally recorded, used, endeavored to use, and disclosed oral communications without the consent of all parties to those communications, in violation of Cal. Penal Code § 632.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

151.     Amazon's intentional and unlawful recording, use, attempted use, and disclosure violated the California Plaintiffs' right to privacy in their confidential communications, as protected by Cal. Penal Code § 632.

152.     Amazon is able, and the Court should require it, to destroy the recordings of the California Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

153.     Amazon's intentional and unlawful recording caused the California Plaintiffs injury to their dignity, well-being, and security.

154.     Plaintiff R.A., individually and on behalf of the California Class members, seeks: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $5,000 per violation under Cal. Penal Code § 637.2; and (3) costs and reasonable attorneys' fees under Cal. Penal Code § 637.2.

## SECOND CAUSE OF ACTION
### Violation of the Florida Wiretap Statute, Fla. Stat. § 934.03
### (On Behalf of Plaintiffs W.B., A.L., K.S., Amberlyn Satterlee, Wy.R., K.R., and the Florida Class)

155.     Plaintiffs W.B., A.L., K.S., Amberlyn Satterlee, Wy.R., K.R., and the Florida Class members (collectively, the "Florida Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

156.     The Florida Plaintiffs used Alexa Devices within their families' homes where they had a reasonable expectation of privacy from unknown intrusions.

157.     When the Florida Plaintiffs used the Alexa Devices, Amazon intentionally created a recording of their device interactions, transmitted those recordings to Amazon's cloud servers, and retained copies of those recordings indefinitely at substantial cost.

158.     Amazon programmed Alexa to intercept communications in the Florida Plaintiffs' homes, and intentionally used and endeavored to use the recordings of those communications for its own commercial benefit.

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-cv-910                          -23-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

159.     On information and belief, Amazon used and endeavored to use the recordings and the data derived from them to refine the functionality of its Alexa voice-assistant software, to develop new products and services, and to serve product and service recommendations to customers, among other uses. When Amazon used and endeavored to use those confidential recordings and derivative data, Amazon knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

160.     On information and belief, Amazon intentionally disclosed recordings and data captured from Alexa Devices in the Florida Plaintiffs' homes with third-party contractors. When Amazon disclosed those recordings, it knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

161.     Amazon did not inform the Florida Plaintiffs that it would intercept their private wire, electronic, or oral Alexa communications, that it would retain those recordings permanently, that it would use and endeavor to use those recordings for its commercial benefit, or that it would share those recordings with contractors at locations around the world.

162.     The Florida Plaintiffs did not expect, and had no reason to expect, that Amazon would intercept their private wire, electronic, or oral Alexa communications; retain those recordings permanently; use and endeavor to use those recordings for Amazon's commercial benefit; or share those recordings with contractors at locations around the world.

163.     Rather, the Florida Plaintiffs reasonably expected that their Alexa interactions would remain private.

164.     The Florida Plaintiffs never consented to Amazon intercepting their private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

165.     The Florida Plaintiffs' guardians likewise never consented to Amazon intercepting their children's private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                                                    -24-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

166.    Amazon created the recordings of the Florida Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

167.    As set forth above, Amazon intentionally intercepted, used, endeavored to use, and disclosed oral communications without the consent of all parties to those communications, in violation of Fla. Stat. § 934.03.

168.    Amazon's intentional and unlawful interception, use, attempted use, and disclosure violated the Florida Plaintiffs' right to privacy in their confidential communications, as protected by Fla. Stat. § 934.03.

169.    Amazon is able, and the Court should require it, to destroy the recordings of the Florida Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

170.    Amazon's intentional and unlawful recording caused the Florida Plaintiffs injury to their dignity, well-being, and security.

171.    Plaintiffs W.B., A.L., K.S., Amberlyn Satterlee, Wy.R., and K.R., individually and on behalf of the Florida Class members, seek: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day or $1,000, whichever is greater, under Fla. Stat. § 934.10; (3) punitive damages; and (4) costs and reasonable attorneys' fees under Fla. Stat. § 934.10.

**THIRD CAUSE OF ACTION**
**Violation of the Illinois Wiretap Statute, 720 ILCS 5/14-2**
**(On Behalf of Plaintiffs C.L. and the Illinois Class)**

172.    Plaintiffs C.L. and the Illinois Class members (collectively, "the Illinois Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

173.    The Illinois Plaintiffs used Alexa Devices within their families' homes where they had a reasonable expectation of privacy from unknown intrusions.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

174.     When the Illinois Plaintiffs used the Alexa Devices, Amazon intentionally created a recording of their device interactions, transmitted those recordings to Amazon's cloud servers, and retained copies of those recordings indefinitely at substantial cost.

175.     Amazon programmed Alexa to intercept communications in the Illinois Plaintiffs' homes, and intentionally used and endeavored to use the recordings of those communications for its own commercial benefit.

176.     On information and belief, Amazon used and endeavored to use the recordings and the data derived from them to refine the functionality of its Alexa voice-assistant software, to develop new products and services, and to serve product and service recommendations to customers, among other uses. When Amazon used and endeavored to use those confidential recordings and derivative data, Amazon knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

177.     On information and belief, Amazon intentionally disclosed recordings and data captured from Alexa Devices in the Illinois Plaintiffs' homes with third-party contractors. When Amazon disclosed those recordings, it knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

178.     Amazon did not inform the Illinois Plaintiffs that it would intercept their private wire, electronic, or oral Alexa communications, that it would retain those recordings permanently, that it would use and endeavor to use those recordings for its commercial benefit, or that it would share those recordings with contractors at locations around the world.

179.     The Illinois Plaintiffs did not expect, and had no reason to expect, that Amazon would intercept their private wire, electronic, or oral Alexa communications; retain those recordings permanently; use and endeavor to use those recordings for Amazon's commercial benefit; or share those recordings with contractors at locations around the world.

180.     Rather, the Illinois Plaintiffs reasonably expected that their Alexa interactions would remain private.

181.     The Illinois Plaintiffs never consented to Amazon intercepting their private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

182.    Amazon created the recordings of the Illinois Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

183.    As set forth above, Amazon intentionally intercepted, used, endeavored to use, and disclosed oral communications without the consent of all parties to those communications, in violation of 720 ILCS 5/14-2.

184.    Amazon's intentional and unlawful recording violated the Illinois Plaintiffs' right to privacy in their confidential communications, as protected by 720 ILCS 5/14-2.

185.    Amazon is able, and the Court should require it, to destroy the recordings of the Illinois Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

186.    Amazon's intentional and unlawful recording caused the Illinois Plaintiffs injury to their dignity, well-being, and security.

187.    Plaintiff C.L., individually and on behalf of the Illinois Class members, seeks: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) nominal damages under 720 ILCS 5/14-2; (3) punitive damages; and (4) costs and reasonable attorneys' fees under 720 ILCS 5/14-6.

## FOURTH CAUSE OF ACTION
### Violation of the Maryland Wiretap Statute, Md. Cts. & Jud. Pro. § 10-402
### (On Behalf of Plaintiffs J.B. and L.B. and the Maryland Class)

188.    Plaintiffs J.B., L.B., and the Maryland Class members (collectively, "the Maryland Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

189.    The Maryland Plaintiffs used Alexa Devices within their families' homes where they had a reasonable expectation of privacy from unknown intrusions.

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street Suite 2800
Seattle, Washington 98101
Tel: (206) 905-7000

190.     When the Maryland Plaintiffs used the Alexa Devices, Amazon intentionally created a recording of their device interactions, transmitted those recordings to Amazon's cloud servers, and retained copies of those recordings indefinitely at substantial cost.

191.     Amazon programmed Alexa to intercept communications in the Maryland Plaintiffs' homes, and intentionally used and endeavored to use the recordings of those communications for its own commercial benefit.

192.     On information and belief, Amazon used and endeavored to use the recordings and the data derived from them to refine the functionality of its Alexa voice-assistant software, to develop new products and services, and to serve product and service recommendations to customers, among other uses. When Amazon used and endeavored to use those confidential recordings and derivative data, Amazon knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

193.     On information and belief, Amazon intentionally disclosed recordings and data captured from Alexa Devices in the Maryland Plaintiffs' homes with third-party contractors. When Amazon disclosed those recordings, it knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

194.     Amazon did not inform the Maryland Plaintiffs that it would intercept their private wire, electronic, or oral Alexa communications, that it would retain those recordings permanently, that it would use and endeavor to use those recordings for its commercial benefit, or that it would share those recordings with contractors at locations around the world.

195.     The Maryland Plaintiffs did not expect, and had no reason to expect, that Amazon would intercept their private wire, electronic, or oral Alexa communications; retain those recordings permanently; use and endeavor to use those recordings for Amazon's commercial benefit; or share those recordings with contractors at locations around the world.

196.     Rather, the Maryland Plaintiffs reasonably expected that their Alexa interactions would remain private.

197.     The Maryland Plaintiffs never consented to Amazon intercepting their private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                                                              -28-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1  endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings

2  with contractors at locations around the world.

3          198.    The Maryland Plaintiffs' guardians likewise never consented to Amazon

4  intercepting their children's private wire, electronic, or oral Alexa communications; retaining

5  those recordings permanently; using and endeavoring to use those recordings for Amazon's

6  commercial benefit; or sharing those recordings with contractors at locations around the world

7          199.    Amazon created the recordings of the Maryland Plaintiffs intentionally, as Amazon

8  has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

9          200.    As set forth above, Amazon intentionally intercepted, used, endeavored to use, and

10  disclosed oral communications without the consent of all parties to those communications, in

11  violation of Md. Cts. & Jud. Pro. § 10-402.

12          201.    Amazon's intentional and unlawful interception, use, attempted use, and disclosure

13  violated the Maryland Plaintiffs' right to privacy in their confidential communications, as

14  protected by Md. Cts. & Jud. Pro. § 10-402.

15          202.    Amazon is able, and the Court should require it, to destroy the recordings of the

16  Maryland Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to

17  prevent unauthorized recordings in the future.

18          203.    Amazon's intentional and unlawful recording caused the Maryland Plaintiffs injury

19  to their dignity, well-being, and security.

20          204.    Plaintiffs J.B. and L.B., individually and on behalf of the Maryland Class members,

21  seek: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa

22  interactions and to delete those recordings already made, and to implement functionality sufficient

23  to prevent unauthorized recordings in the future; (2) damages equal to $100 per day or $1,000,

24  whichever is greater, under Md. Cts. & Jud. Pro. § 10-410; (3) punitive damages; and (4) costs and

25  reasonable attorneys' fees under Md. Cts. & Jud. Pro. § 10-410.

26

27

28

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

### FIFTH CAUSE OF ACTION
**Violation of the Massachusetts Wiretap Statute, Mass. Gen. Laws ch. 272, § 99**
**(On Behalf of Plaintiffs C.O., L.R., W.R. and the Massachusetts Class)**

205.     Plaintiffs C.O., L.R., W.R., and the Massachusetts Class members (collectively "the Massachusetts Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

206.     The Massachusetts Plaintiffs used Alexa Devices within their families' homes where they had a reasonable expectation of privacy from unknown intrusions.

207.     When the Massachusetts Plaintiffs used the Alexa Devices, Amazon intentionally created a recording of their device interactions, transmitted those recordings to Amazon's cloud servers, and retained copies of those recordings indefinitely at substantial cost.

208.     Amazon programmed Alexa to intercept communications in the Massachusetts Plaintiffs' homes, and intentionally used and endeavored to use the recordings of those communications for its own commercial benefit.

209.     On information and belief, Amazon used and endeavored to use the recordings and the data derived from them to refine the functionality of its Alexa voice-assistant software, to develop new products and services, and to serve product and service recommendations to customers, among other uses. When Amazon used and endeavored to use those confidential recordings and derivative data, Amazon knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

210.     On information and belief, Amazon intentionally disclosed recordings and data captured from Alexa Devices in the Massachusetts Plaintiffs' homes with third-party contractors. When Amazon disclosed those recordings, it knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

211.     Amazon did not inform the Massachusetts Plaintiffs that it would intercept their private wire, electronic, or oral Alexa communications, that it would retain those recordings permanently, that it would use and endeavor to use those recordings for its commercial benefit, or that it would share those recordings with contractors at locations around the world.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

212.    The Massachusetts Plaintiffs did not expect, and had no reason to expect, that Amazon would intercept their private wire, electronic, or oral Alexa communications; retain those recordings permanently; use and endeavor to use those recordings for Amazon's commercial benefit; or share those recordings with contractors at locations around the world.

213.    Rather, the Massachusetts Plaintiffs reasonably expected that their Alexa interactions would remain private.

214.    The Massachusetts Plaintiffs never consented to Amazon intercepting their private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

215.    The Massachusetts Plaintiffs' guardians likewise never consented to Amazon intercepting their children's private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

216.    Amazon created the recordings of the Massachusetts Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

217.    As set forth above, Amazon intentionally intercepted, used, endeavored to use, and disclosed oral communications without the consent of all parties to those communications, in violation of Mass. Gen. Laws ch. 272, § 99.

218.    Amazon's intentional and unlawful interception, use, attempted use, and disclosure violated the Massachusetts Plaintiffs' right to privacy in their confidential communications, as protected by Mass. Gen. Laws ch. 272, § 99.

219.    Amazon is able, and the Court should require it, to destroy the recordings of violated the Massachusetts Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

220.    Amazon's intentional and unlawful recording caused the Massachusetts Plaintiffs injury to their dignity, well-being, and security.

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                                          -31-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

221.    Plaintiffs C.O., L.R., and W.R., individually and on behalf of the Massachusetts Class members, seek: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day or $1,000, whichever is greater, under Mass. Gen. Laws ch. 272, § 99(Q), (3) punitive damages; and (4) costs and reasonable attorneys' fees under Mass. Gen. Laws ch. 272, § 99(Q)

### SIXTH CAUSE OF ACTION
**Violation of the Michigan Wiretap Statute, MCL 750.539c**
**(On Behalf of Plaintiffs E.J., Z.S., and the Michigan Class)**

222.    Plaintiffs E.J., Z.S., and the Michigan Class members (collectively, "the Michigan Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

223.    The Michigan Plaintiffs used Alexa Devices within their families' homes, where they had a reasonable expectation of privacy from unknown intrusions.

224.    When the Michigan Plaintiffs used the Alexa Devices, Amazon intentionally created a recording of their device interactions, transmitted those recordings to Amazon's cloud servers, and retained copies of those recordings indefinitely at substantial cost.

225.    Amazon programmed Alexa to intercept communications in the Michigan Plaintiffs' homes, and intentionally used and endeavored to use the recordings of those communications for its own commercial benefit.

226.    On information and belief, Amazon used and endeavored to use the recordings and the data derived from them to refine the functionality of its Alexa voice-assistant software, to develop new products and services, and to serve product and service recommendations to customers, among other uses. When Amazon used and endeavored to use those confidential recordings and derivative data, Amazon knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

227.    On information and belief, Amazon intentionally disclosed recordings and data captured from Alexa Devices in the Michigan Plaintiffs' homes with third-party contractors. When

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910
-32-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

Amazon disclosed those recordings, it knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

228.    Amazon did not inform the Michigan Plaintiffs that it would intercept their private wire, electronic, or oral Alexa communications, that it would retain those recordings permanently, that it would use and endeavor to use those recordings for its commercial benefit, or that it would share those recordings with contractors at locations around the world.

229.    The Michigan Plaintiffs did not expect, and had no reason to expect, that Amazon would intercept their private wire, electronic, or oral Alexa communications; retain those recordings permanently; use and endeavor to use those recordings for Amazon's commercial benefit; or share those recordings with contractors at locations around the world.

230.    Rather, the Michigan Plaintiffs reasonably expected that their Alexa interactions would remain private.

231.    The Michigan Plaintiffs never consented to Amazon intercepting their private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

232.    The Michigan Plaintiffs' guardians likewise never consented to Amazon intercepting their children's private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

233.    Amazon created the recordings of the Michigan Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

234.    As set forth above, Amazon intentionally intercepted, used, endeavored to use, and disclosed oral communications without the consent of all parties to those communications, in violation of MCL 750.539c.

235.    Amazon's intentional and unlawful interception, use, attempted use, and disclosure violated the Michigan Plaintiffs' right to privacy in their confidential communications, as protected by MCL 750.539c.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

236.     Amazon is able, and the Court should require it, to destroy the recordings of the Michigan Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

237.     Amazon's intentional and unlawful recording caused the Michigan Plaintiffs injury to their dignity, well-being, and security.

238.     Plaintiffs E.J. and Z.S., individually and on behalf of the Michigan Class members, seek: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) nominal damages under MCL 750.539c; (3) punitive damages; and (4) costs and reasonable attorneys' fees under MCL 750.539c.

## SEVENTH CAUSE OF ACTION
### Violation of the New Hampshire Wiretap Statute, N.H. Rev. Stat. § 570-A:2
### (On Behalf of Plaintiffs E.B., S.B., O.B. and the New Hampshire Class)

239.     Plaintiffs E.B., S.B., O.B., and the New Hampshire Class members (collectively, "the New Hampshire Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

240.     The New Hampshire Plaintiffs used Alexa Devices within their families' homes where they had a reasonable expectation of privacy from unknown intrusions.

241.     When the New Hampshire Plaintiffs used the Alexa Devices, Amazon intentionally created a recording of their device interactions, transmitted those recordings to Amazon's cloud servers, and retained copies of those recordings indefinitely at substantial cost.

242.     Amazon programmed Alexa to intercept communications in the New Hampshire Plaintiffs' homes, and intentionally used and endeavored to use the recordings of those communications for its own commercial benefit.

243.     On information and belief, Amazon used and endeavored to use the recordings and the data derived from them to refine the functionality of its Alexa voice-assistant software, to develop new products and services, and to serve product and service recommendations to customers, among other uses. When Amazon used and endeavored to use those confidential

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                                                    -34-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

recordings and derivative data, Amazon knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

244.     On information and belief, Amazon intentionally disclosed recordings and data captured from Alexa Devices in the New Hampshire Plaintiffs' homes with third-party contractors. When Amazon disclosed those recordings, it knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

245.     Amazon did not inform the New Hampshire Plaintiffs that it would intercept their private wire, electronic, or oral Alexa communications, that it would retain those recordings permanently, that it would use and endeavor to use those recordings for its commercial benefit, or that it would share those recordings with contractors at locations around the world.

246.     The New Hampshire Plaintiffs did not expect, and had no reason to expect, that Amazon would intercept their private wire, electronic, or oral Alexa communications; retain those recordings permanently; use and endeavor to use those recordings for Amazon's commercial benefit; or share those recordings with contractors at locations around the world.

247.     Rather, the New Hampshire Plaintiffs reasonably expected that their Alexa interactions would remain private.

248.     The New Hampshire Plaintiffs never consented to Amazon intercepting their private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

249.     The New Hampshire Plaintiffs' guardians likewise never consented to Amazon intercepting their children's private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

250.     Amazon created the recordings of the New Hampshire Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                                                -35-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

251.    As set forth above, Amazon intentionally intercepted, used, endeavored to use, and disclosed oral communications without the consent of all parties to those communications, in violation of N.H. Rev. Stat. § 570-A:2.

252.    Amazon's intentional and unlawful interception, use, attempted use, and disclosure violated the New Hampshire Plaintiffs' right to privacy in their confidential communications, as protected by N.H. Rev. Stat. § 570-A:2.

253.    Amazon is able, and the Court should require it, to destroy the recordings of the New Hampshire Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

254.    Amazon's intentional and unlawful recording caused the New Hampshire Plaintiffs injury to their dignity, well-being, and security.

255.    Plaintiffs E.B., S.B. and O.B., individually and on behalf of the New Hampshire Class members, seek: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day or $1,000, whichever is greater, under N.H. Rev. Stat. § 570-A:11; and (4) costs and reasonable attorneys' fees under N.H. Rev. Stat. § 570-A:11.

## EIGHTH CAUSE OF ACTION
### Violation of the Pennsylvania Wiretap Statute, 18 Pa. Cons. Stat. § 5703
### (On Behalf of Plaintiff R.B. and the Pennsylvania Class)

256.    Plaintiff R.B. and the Pennsylvania Class members (collectively, "the Pennsylvania Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

257.    The Pennsylvania Plaintiffs used Alexa Devices within their families' homes where they had a reasonable expectation of privacy from unknown intrusions.

258.    When the Pennsylvania Plaintiffs used the Alexa Devices, Amazon intentionally created a recording of their device interactions, transmitted those recordings to Amazon's cloud servers, and retained copies of those recordings indefinitely at substantial cost.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

259.     Amazon programmed Alexa to intercept communications in the Pennsylvania Plaintiffs' homes, and intentionally used and endeavored to use the recordings of those communications for its own commercial benefit.

260.     On information and belief, Amazon used and endeavored to use the recordings and the data derived from them to refine the functionality of its Alexa voice-assistant software, to develop new products and services, and to serve product and service recommendations to customers, among other uses. When Amazon used and endeavored to use those confidential recordings and derivative data, Amazon knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

261.     On information and belief, Amazon intentionally disclosed recordings and data captured from Alexa Devices in the Pennsylvania Plaintiffs' homes with third-party contractors. When Amazon disclosed those recordings, it knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

262.     Amazon did not inform the Pennsylvania Plaintiffs that it would intercept their private wire, electronic, or oral Alexa communications, that it would retain those recordings permanently, that it would use and endeavor to use those recordings for its commercial benefit, or that it would share those recordings with contractors at locations around the world.

263.     The Pennsylvania Plaintiffs did not expect, and had no reason to expect, that Amazon would intercept their private wire, electronic, or oral Alexa communications; retain those recordings permanently; use and endeavor to use those recordings for Amazon's commercial benefit; or share those recordings with contractors at locations around the world.

264.     Rather, the Pennsylvania Plaintiffs reasonably expected that their Alexa interactions would remain private.

265.     The Pennsylvania Plaintiffs never consented to Amazon intercepting their private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910
-37-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

266.    The Pennsylvania Plaintiffs' guardians likewise never consented to Amazon intercepting their children's private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

267.    Amazon created the recordings of the Pennsylvania Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

268.    As set forth above, Amazon intentionally intercepted, used, endeavored to use, and disclosed oral communications without the consent of all parties to those communications, in violation of 18 Pa. Cons. Stat. § 5703.

269.    Amazon's intentional and unlawful interception, use, attempted use, and disclosure violated the Pennsylvania Plaintiffs' right to privacy in their confidential communications, as protected by 18 Pa. Cons. Stat. § 5703.

270.    Amazon is able, and the Court should require it, to destroy the recordings of the Pennsylvania Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

271.    Amazon's intentional and unlawful recording, use, attempted use, and disclosure caused the Pennsylvania Plaintiffs injury to their dignity, well-being, and security.

272.    Plaintiff R.B., individually and on behalf of the Pennsylvania Class members, seeks: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions, to stop using or sharing data derived from those recordings and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day or $1,000, whichever is greater, under 18 Pa. Cons. Stat. § 5725; (3) punitive damages; and (4) costs and reasonable attorneys' fees under 18 Pa. Cons. Stat. § 5725.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

# NINTH CAUSE OF ACTION
### Violation of the Washington Wiretap Statute, WA Rev. Code § 9.73.030
### (On Behalf of Plaintiff N.S. and the Washington Class)

273.   Plaintiff N.S. and the Washington Class members (collectively, "the Washington Plaintiffs") incorporate by reference the foregoing allegations as if fully set forth herein.

274.   The Washington Plaintiffs used Alexa Devices within their families' homes where they had a reasonable expectation of privacy from unknown intrusions.

275.   When the Washington Plaintiffs used the Alexa Devices, Amazon intentionally created a recording of their device interactions, transmitted those recordings to Amazon's cloud servers, and retained copies of those recordings indefinitely at substantial cost.

276.   Amazon programmed Alexa to intercept communications in the Washington Plaintiffs' homes, and intentionally used and endeavored to use the recordings of those communications for its own commercial benefit.

277.   On information and belief, Amazon used and endeavored to use the recordings and the data derived from them to refine the functionality of its Alexa voice-assistant software, to develop new products and services, and to serve product and service recommendations to customers, among other uses. When Amazon used and endeavored to use those confidential recordings and derivative data, Amazon knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

278.   On information and belief, Amazon intentionally disclosed recordings and data captured from Alexa Devices in the Washington Plaintiffs' homes with third-party contractors. When Amazon disclosed those recordings, it knew — as the developer of Alexa — that the recordings were collected from the interception of wire, electronic, or oral communications.

279.   Amazon did not inform the Washington Plaintiffs that it would intercept their private wire, electronic, or oral Alexa communications, that it would retain those recordings permanently, that it would use and endeavor to use those recordings for its commercial benefit, or that it would share those recordings with contractors at locations around the world.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

280.   The Washington Plaintiffs did not expect, and had no reason to expect, that Amazon would intercept their private wire, electronic, or oral Alexa communications; retain those recordings permanently; use and endeavor to use those recordings for Amazon's commercial benefit; or share those recordings with contractors at locations around the world.

281.   Rather, the Washington Plaintiffs reasonably expected that their Alexa interactions would remain private.

282.   The Washington Plaintiffs never consented to Amazon intercepting their private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

283.   The Washington Plaintiffs' guardians likewise never consented to Amazon intercepting their children's private wire, electronic, or oral Alexa communications; retaining those recordings permanently; using and endeavoring to use those recordings for Amazon's commercial benefit; or sharing those recordings with contractors at locations around the world.

284.   Amazon created the recordings of the Washington Plaintiffs intentionally, as Amazon has publicly admitted that Alexa Devices are programmed to record every Alexa interaction.

285.   As set forth above, Amazon intentionally intercepted, used, endeavored to use, and disclosed oral communications without the consent of all parties to those communications, in violation of WA Rev. Code § 9.73.030.

286.   Amazon's intentional and unlawful interception, use, attempted use, and disclosure violated the Washington Plaintiffs' right to privacy in their confidential communications, as protected by WA Rev. Code § 9.73.030.

287.   Amazon is able, and the Court should require it, to destroy the recordings of the Washington Plaintiffs' interactions with Alexa Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

288.   Amazon's intentional and unlawful recording caused the Washington Plaintiffs injury to their dignity, well-being, and security.

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                                          -40-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

289.    Plaintiff N.S., individually and on behalf of the Washington Class members, seeks: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day up to $1,000 under WA Rev. Code § 9.73.060; (3) punitive damages; and (4) costs and reasonable attorneys' fees under WA Rev. Code § 9.73.060.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, respectfully request that the Court enter an order:

A.    Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiffs as representatives of the Classes, and appointing their counsel as class counsel;

B.    Declaring that Amazon's actions, as set out above, violate the state privacy laws cited herein;

C.    Requiring Amazon to delete all recordings of the Class members, stop using data derived from those recordings, and to implement functionality to prevent further recording of the Class members without prior consent;

D.    Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiffs and the Classes in an amount to be determined at trial;

E.    Awarding Plaintiffs and the Classes their reasonable litigation expenses and attorneys' fees;

F.    Awarding Plaintiffs and the Classes pre- and post-judgment interest, to the extent allowable;

G.    Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Classes; and

H.    Awarding such other and further relief as the Court deems reasonable and just.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1                                Respectfully submitted,

2 Dated: December 17, 2019

3                                By:   */s/ Lauren Hudson*

4                                Lauren Hudson, WSBA #55124

    QUINN EMANUEL

5     URQUHART & SULLIVAN, LLP

    600 University St., Ste. 2800

6     Seattle, WA 98101

    Tel.: 206.905.7075

7     Fax: 206.905.7100

    laurenhudson@quinnemanuel.com

8

9     Andrew H. Schapiro (*pro hac vice*)

    Stephen Swedlow (*pro hac vice*)

10     QUINN EMANUEL

    URQUHART & SULLIVAN, LLP

11     191 N. Wacker Drive, Suite 2700

    Chicago, IL 60606

12     Tel: 312.705.7400

    Fax: 312.705.7401

13     andrewschapiro@quinnemanuel.com

    stephenswedlow@quinnemanuel.com

14

15     Ashley C. Keller (*pro hac vice*)

    Travis D. Lenkner (*pro hac vice*)

16     Aaron M. Zigler (*pro hac vice*)

    J. Dominick Larry (*pro hac vice*)

17     KELLER LENKNER LLC

    150 N. Riverside Plaza, Ste. 4270

18     Chicago, IL 60606

    Tel.: 312.741.5220

19     Fax: 312.971.3502

    ack@kellerlenkner.com

20     tdl@kellerlenkner.com

    nl@kellerlenkner.com

21

22     Warren D. Postman (*pro hac vice*)

23     KELLER LENKNER LLC

    1300 Street N.W., Suite 400E

24     Washington, D.C.

    Tel.: 202.749.8334

25     Fax: 312.971.3502

    wdp@kellerlenkner.com

26

27     *Attorneys for Plaintiffs and the Putative Classes*

28

Second Am. Class Action Compl.
Case No. 2:19-cv-910

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

-42-

1

## **CERTIFICATE OF SERVICE**

2

   I hereby certify that, on December 17, 2019, I caused a true and correct copy of the

3

foregoing to be filed in this Court's CM/ECF system, which sent notification of such filing to

4

counsel of record.

5

6

7
                                            */s/ Lauren Hudson*
                                            Lauren Hudson, WSBA #55124

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AM. CLASS ACTION COMPL.
CASE NO. 2:19-CV-910                         -43-

QUINN EMANUEL URQUHART & SULLIVAN LLP
600 UNIVERSITY STREET SUITE 2800
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000