THE HONORABLE RICHARD A. JONES
THE HONORABLE MICHELLE L. PETERSON

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

B.F. and A.A., minors, by and through their
guardian Joey Fields, et al.

                    Plaintiffs,

        v.

AMAZON.COM, INC., a Delaware
corporation, and A2Z DEVELOPMENT
CENTER, INC., a Delaware corporation,

                    Defendants

Case No. 2:19-cv-910-RAJ-MLP

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT**

**NOTED ON MOTION CALENDAR:**
**January 31, 2020**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND & ALLEGATIONS OF THE SECOND AMENDED COMPLAINT ...............2

LEGAL STANDARD...............................................................................................5

ARGUMENT .........................................................................................................5

I.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER CALIFORNIA'S INVASION OF PRIVACY ACT.................................5

    A.    The SAC Fails To Allege That Any Plaintiff Had A Reasonable Expectation That The Interactions Would Be "Confidential" And Not Recorded. .....................................6

    B.    Because Amazon Lacks The Requisite Culpable Intent, Plaintiffs Independently Fail To State A Claim For Unlawful Recording. .....................................7

    C.    Plaintiffs Fail To State A Plausible Claim For Eavesdropping. ..................8

    D.    Post-Recording Use Or Disclosure Of Information Does Not Violate CIPA.........................9

II.    THE SAC FAILS TO STATE A CLAIM UNDER FLORIDA'S WIRETAP ACT.......................10

    A.    Reception Of Electronic Communications Like Alexa Interactions Is Not Actionable "Interception." ..........................10

    B.    Even If Plaintiffs Had Adequately Alleged "Interception," Florida Law Exempts Amazon From Liability As The Provider Of The Alexa Electronic Communication Service. ...................12

    C.    Florida Law Provides No Claim Based On Use Or Disclosure Absent An Actionable Interception. ..........................13

III.    THE SAC FAILS TO STATE A CLAIM UNDER THE ILLINOIS EAVESDROPPING STATUTE. ..................13

    A.    The SAC Does Not Allege That Any "Private Conversation" Was Recorded. .....................13

    B.    The SAC Does Not That Allege Amazon Acted "Surreptitiously." .....................15

    C.    There Is No Plausible Claim Based On Post-Recording Use Or Disclosure Of Alexa Interactions.....................15

IV.    THE SAC FAILS TO STATE A CLAIM UNDER MARYLAND'S WIRETAP ACT.........................16

DEFENDANTS' MOTION TO DISMISS    - i -    FENWICK & WEST LLP
SECOND AMENDED COMPLAINT    1191 SECOND AVENUE, 10TH FLOOR
CASE NO.: 2:19-CV-910-RAJ-MLP    SEATTLE, WASHINGTON 98101

## <u>TABLE OF CONTENTS</u>
### (Continued)

Page

A.   Alexa Interactions Are "Electronic Communications" That Are Not "Intercepted" When Stored And Later Accessed By The Intended Recipient. ...................................................................16

B.   Alexa-Enabled Devices Are Specifically Excluded From The Definition Of "Electronic, Mechanical, Or Other Device[s]" Under Maryland Law. ............................................................17

C.   Plaintiffs Do Not Allege Wrongful Use Or Disclosure Of Alexa Interactions...............................................................................17

V.   THE SAC FAILS TO STATE A CLAIM UNDER MASSACHUSETTS LAW. ...................................................................................................18

A.   The Massachusetts Wiretap Statute Does Not Apply To Extraterritorial Recordings.........................................................18

B.   The SAC Fails To Allege Amazon Secretly Intercepted Alexa Interactions..........................................................................18

C.   The SAC Fails To Allege Disclosure Or Use In Violation Of Massachusetts Law. ...............................................................19

VI.   THE SAC FAILS TO STATE A CLAIM UNDER MICHIGAN'S WIRETAP ACT.......................................................................................19

A.   The SAC Makes No Plausible Allegation Of "Eavesdropping" By Amazon. ....................................................................................20

B.   Plaintiffs Fail To Allege Recording Of A "Private Conversation." .................................................................................21

C.   Amazon Did Not "Willfully" Use A "Device" To Eavesdrop. .................22

D.   Post-Recording Use Or Disclosure Does Not Violate Section 750.539c............................................................................22

VII.   THE SAC FAILS TO STATE A CLAIM UNDER NEW HAMPSHIRE'S WIRETAP ACT.......................................................................................23

A.   Amazon Cannot Be Liable Because It Is An Intended Recipient Of The New Hampshire Plaintiffs' Alexa Interactions...............................23

B.   The SAC Does Not Allege That Amazon Willfully Intercepted Plaintiff's Interactions..........................................................23

C.   The SAC Fails To Allege Disclosure Or Use In Violation Of New Hampshire Law. ...............................................................24

VIII.   THE SAC FAILS TO STATE A CLAIM UNDER PENNSYLVANIA'S WIRETAP ACT.......................................................................................24

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- ii -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

## <u>TABLE OF CONTENTS</u>
### (Continued)

Page

A.   Pennsylvania's   Wiretap   Statute   Does   Not   Apply   To
Extraterritorial Recordings.............................................................................25

B.   Amazon Was The Intended Recipient Of Plaintiff R.B.'S Alexa
Interactions....................................................................................................25

C.   Pennsylvania Provides No Claim For Use Or Disclosure Absent
An Actionable Interception.............................................................................25

IX.   THE SAC FAILS TO STATE A CLAIM UNDER WASHINGTON'S
WIRETAP ACT......................................................................................................26

A.   As An Intended Recipient Of Alexa Interactions, Amazon Did
Not "Intercept" Them. ...................................................................................26

B.   The SAC Does Not Allege A "Conversation" Or Actionable
"Communication Between Two Or More Individuals" Subject
To The Washington Act...................................................................................27

C.   The   SAC   Does   Not   Allege   Interception   Of   "Private"
Communications Or Conversations. ...............................................................27

D.   Washington's Statute Does Not Create A Cause of Action For
Disclosure Or Use Of Intercepted Communications. .................................28

CONCLUSION..............................................................................................................................28

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- iii -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AFT Michigan v. Project Veritas,*
  397 F. Supp. 3d 981 (E.D. Mich. 2019).................................................................20

*Am. Civil Liberties Union of Illinois v. Alvarez,*
  679 F.3d 583 (7th Cir. 2012) ...............................................................................15

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...............................................................................................5

*Bailey v. Bailey,*
  No. 07-11672, 2008 WL 324156 (E.D. Mich. Feb. 6, 2008)...........................21, 23

*Ball v. Ehlig,*
  70 Pa. D. & C. 4th 160 (Ct. Common Pls. Montgomery Cty., Pa. 2005)...............25

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...............................................................................................5

*Bloom v. Pegasus Investigations, Inc.,*
  No. 227731, 2002 WL 1375726 (Mich. Ct. App. June 25, 2002) ..........................20

*Broughal v. First Wachovia Corp.,*
  14 Pa. D. & C. 4th 525 (Ct. Common Pls. Northampton Cty., Pa. 1992) ...............25

*Campbell v. Facebook Inc.,*
  77 F. Supp. 3d 836 (N.D. Cal. 2014) .......................................................................6

*Christensen v. Cox,*
  34 Mass. L. Rptr. 561 (Mass. Super. Nov. 21, 2017) ............................................18

*City of Grand Rapids v. Grand Rapids Police Command Officers Ass'n,*
  346 F. Supp. 3d 1061 (W.D. Mich. 2018) ..............................................................22

*Cline v. Reetz-Laiolo,*
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) ...................................................................6

*Com. v. Diego,*
  119 A.3d 370 (Pa. Super. Ct. 2015) .......................................................................25

*Com. v. DiSilvio,*
  335 A.2d 785 (Pa. Super. Ct. 1975) .......................................................................25

*Com. v. Jackson,*
  370 Mass. 502 (1976) .......................................................................................18, 19

*Com. v. Proetto,*
  771 A.2d 823 (Pa. Super. Ct. 2001) .......................................................................25

*Cousineau v. Microsoft Corp.,*
  992 F. Supp. 2d 1116 (W.D. Wash. 2012).............................................................27

AMAZON'S OBJECTIONS TO R&R RE
MOTION TO COMPEL ARBITRATION
CASE NO.: 2:19-CV-910-RAJ-MLP
- iv -
FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

CASES

*Davis v. State*,
426 Md. 211 (2012) ............................................................................................17

*Dearborn Tree Serv., Inc. v. Gray's Outdoorservices, LLC*,
No. 13-CV-12584, 2014 WL 6886330 (E.D. Mich. Dec. 4, 2014) ...................21, 22

*Dickerson v. Raphael*,
461 Mich. 851 (1999) .........................................................................................21

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013) ...........................................................................6, 7

*Ferrara v. Detroit Free Press, Inc.*,
52 F. App'x 229 (6th Cir. 2002) ........................................................................20

*Fischer v. Hooper*,
732 A.2d 396 (N.H. 1999) ..................................................................................23

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........................................................................................9

*Garrity v. John Hancock Mut. Life Ins. Co.*,
CIV.A. 00-12143-RZW, 2002 WL 974676 (D. Mass. May 7, 2002)......................18

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078, 1088 (N.D. Cal. 2018) ..................................................8, 9

*Guilder v. State*,
899 So. 2d 412 (DCA 2005) ...............................................................................11

*Handley v. Wilson*,
No. 08-14444-CIV-MARTINEZ-LYNCH, 2010 WL 11607357
(S.D. Fla. Feb. 10, 2010)....................................................................................11

*Hoang v. Amazon.com, Inc.*,
No. C11–1709MJP, 2012 WL 1088165 (W.D. Wash. Mar. 30, 2012) .....................26, 27, 28

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
No. CIV.A. 07-1029, 2007 WL 4394447 (E.D. Pa. Dec. 13, 2007)....................25, 26

*In re Google Inc.*,
No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)...............6

*Kearney v. Kearney*,
974 P.2d 872 (Wash. Ct. App. 1999)....................................................................28

*Kight v. CashCall, Inc.*,
200 Cal. App. 4th 1377 (2011) .........................................................................9, 10

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- v -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

CASES

*Kwan v. SanMedica Int'l,*
   854 F.3d 1088 (9th Cir. 2017) ............................................................5

*Larrison v. Larrison,*
   750 A.2d 895 (Pa. Super. 2000).........................................................25

*Lewis v. LeGrow,*
   258 Mich. App. 175 (2003) ...............................................................20

*MacNeill Engineering Co., Inc. v. Trisport, Ltd.,*
   59 F. Supp. 2d 199 (D. Mass. 1999) .................................................18

*Marich v. MGM/UA Telecomms., Inc.,*
   113 Cal. App. 4th 415 (2003) ..................................................7, 8, 9, 10

*Marquis v. Google, Inc.,*
   No. 11-2808, 2015 WL 13037257 (Mass. Super. Feb. 13, 2005).....................18, 19

*Martin v. State,*
   218 Md. App. 1 (2014) ...............................................................16, 17

*McCabe v. Six Continents Hotels, Inc.,*
   No. 12-CV-04818 NC, 2014 WL 465750 (N.D. Cal. Feb. 3, 2014).........................7

*O'Brien v. O'Brien,*
   899 So. 2d 1133 (Fla. 5th DCA 2005)...............................................10, 11

*People v. Clark,*
   6 N.E.3d 154 (Ill. 2014)...............................................................14

*People v. Drennan,*
   84 Cal. App. 4th 1349 (2000) ..........................................................9

*People v. Melongo,*
   6 N.E.3d 120 (Ill. 2014)...............................................................13

*People v. Nakai,*
   183 Cal. App. 4th 499 (2010) .......................................................6, 7

*People v. Stone,*
   463 Mich. 558 (2001) .................................................................21

*People v. Superior Court of Los Angeles Cty.,*
   70 Cal. 2d 123 (1969) ...............................................................7, 8

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.,*
   907 F. Supp. 1361 (N.D. Cal. 1995) ...................................................8

DEFENDANTS' MOTION TO DISMISS     - vi -     FENWICK & WEST LLP
SECOND AMENDED COMPLAINT     1191 SECOND AVENUE, 10TH FLOOR
CASE NO. 2:19-CV-00910-RAJ-MLP     SEATTLE, WASHINGTON 98101

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

CASES

*Revitch v. New Moosejaw, LLC*,
  No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)......................................7

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985) ...............................................................................................................9

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .....................................................................................................5

*State v. Christensen*,
  102 P.3d 789 (Wash. 2004)......................................................................................................26

*State v. Flora*,
  845 P.2d 1355 (Wash. Ct. App. 1992).....................................................................................27

*State v. Lamontagne*,
  618 A.2d 849 (N.H. 1992) .......................................................................................................23

*State v. Lott*,
  879 A.2d 1167 (N.H. 2005) .....................................................................................................23

*State v. Mueller*,
  88 A.3d 924 (N.H. 2014) .........................................................................................................24

*State v. Roden*,
  321 P.3d 1183 (Wash. 2014)...............................................................................................26, 27

*State v. Smith*,
  405 P.3d 997 (Wash. 2017)..................................................................................................26, 27

*Sullivan v. Gray*,
  117 Mich. App. 476 (1982) .....................................................................................................20

*Swan v. Bob Maxey Lincoln Mercury*,
  No. 216564, 2001 WL 682371 (Mich. Ct. App. Apr. 24, 2001) ..............................................20

*Thomasson v. GC Servs. Ltd. P'ship*,
  321 F. App'x 557 (9th Cir. 2008) ..............................................................................................9

*Zak v. Bose Corp.*,
  No. 17-CV-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019)............................................14

*Vartanian v. VW Credit, Inc.*,
  No. 2:11-CV-10776-SVW-RZ, 2012 WL 12326334 (C.D. Cal. Feb. 22, 2012)........................8

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- vii -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

STATUTES

18 Pa. Cons. Stat. § 5703 .................................................................................24, 25

18 Pa. Cons. Stat. § 5704 .......................................................................................24

18 U.S.C. § 2510 .....................................................................................................16

18 Pa. Cons. Sat. § 5703 ...................................................................................25, 26

720 Ill. Comp. Stat. 5/14-1 ..........................................................................13, 14, 15

720 Ill. Comp. Stat. 5/14-2 .....................................................................13, 14, 15, 16

Cal. Penal Code § 632 ..................................................................................... *passim*

Fla. Stat. § 934.02 .........................................................................................10, 11, 12

Fla. Stat. § 934.03 ............................................................................................10, 13

Fla. Stat. § 934.04(2)(a)(1) ....................................................................................12

H.R. 1439, 107th Cong., No. 2002-72, § 1 (Fl. 2002) .............................................11

2014 Ill. Legis. Serv. P.A. 98-1142 (S.B. 1342) .....................................................15

M.G.L. Ch. 272, § 99 ........................................................................................18, 19

Md. Code § 10–401...........................................................................................16, 17

Md. Code § 10-402(a) .......................................................................................16, 17

Mich. Comp. Laws § 750.539a(2) ...........................................................................20

Mich. Comp. Laws § 750.539b..................................................................................23

Mich. Comp. Laws § 750.539c .......................................................................... *passim*

Mich. Comp. Laws § 750.539d..................................................................................23

Mich. Comp. Laws § 750.539e............................................................................22, 23

New Hampshire Rev. Stat. § 570-A:2 ..................................................................23, 24

WA Rev. Code § 9.73.030................................................................................26, 27, 28

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- viii -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

**RULES**

Fed. R. Civ. P. 9 .................................................................................................................. 15

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 5

**OTHER AUTHORITIES**

WILLFUL, Black's Law Dictionary (11th ed. 2019) .......................................................... 22

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- ix -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

## INTRODUCTION

As the Second Amended Complaint ("SAC") makes more clear than ever, Plaintiffs' state-law wiretapping claims are square pegs pounded into round holes. The SAC does not allege facts supporting a conclusion that Alexa "intercepted" or "eavesdropped" on Plaintiffs' conversations with anyone. Amazon received voice instructions Plaintiffs intended for Alexa and streamed over the internet to the cloud, where Amazon used recordings as a fully anticipated and essential part of translating voices into digital computer instructions. The SAC admits the obvious, *i.e.*, that most Alexa users know that Alexa "converts their voice[s] into a set of digital computer instructions . . . sent over the internet for processing." And the SAC incorporates the Alexa FAQs, which notify anyone who is interested that—like any other voice-directed technology—voice recording occurs as an integral part of Alexa's function. Plaintiffs do not challenge the making of the recordings necessary to use a voice-activated internet service like Alexa. Rather, the SAC complains that Amazon allegedly retains, uses, and discloses to members of its workforce the recordings after they are created in order to improve the accuracy of Alexa's voice technology.

The fatal—and, indeed, glaring—defect in Plaintiffs' complaint is that their allegations do not support a claim under any wiretap law, state or federal. While the state statutes vary in their specifics and language, as described below, their consistent interpretation recognizes that mere creation of recordings within a communications service, as intended to provide instructions over the internet, cannot state a claim for illicit interception, eavesdropping, or recording. Were it otherwise, all voice-activated technology by definition would constitute wiretapping. Many states further include a specific requirement that a plaintiff must allege facts showing a communication to be "confidential" or "private" vis-à-vis the defendant, an impossibility where an internet digital assistant or search engine is being intentionally instructed in that very communication. Among other elements, most states also require "willful" or intentional misconduct or concealment by the defendant, which is impossible to show here given Amazon's extensive disclosure that voice recording is an inherent part of Alexa technology. Finally, none of the statutes allow claims based on alleged use or disclosure *after* lawful recording; all either premise liability for use or disclosure on proof of interception or eavesdropping (which is not present or alleged here) or, in California

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 1 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

1    and Washington, provide no claim for use or disclosure at all.

2        More fundamentally, the wiretap laws expose the irrationality of Plaintiffs' claims.

3    The Alexa service works—and performs the helpful, valuable, and entertaining functions that

4    Plaintiffs' access and enjoy every day—because a recording is created that converts voice into

5    digital instructions. Plaintiffs cannot be permitted to invite the creation of a recording by using a

6    wake word to invoke the Alexa service, and then sue when a recording is created.

7        The basic functional requirements of voice-directed digital services, the fundamental

8    attributes of the wiretap laws, and simple common sense all dictate that Plaintiffs' SAC should be

9    dismissed summarily for failure to state a claim.[1]

10   **BACKGROUND & ALLEGATIONS OF THE SECOND AMENDED COMPLAINT**

11       Amazon operates the Alexa Voice Service, which lets users access various Amazon and

12   third-party services by speaking instead of typing. When a person within range of an Alexa device

13   invokes a wake word (typically "Alexa"), the user can dictate commands to control functions

14   throughout their homes, listen to music, ask for jokes, control their TVs, learn the weather, play

15   games, set calendar reminders, and more. SAC ¶¶ 28, 48, 55, 62, 68, 75, 81, 88, 94, 100, 106, 112,

16   119. Plaintiffs allege that "[m]ost people believe that when they speak to an Alexa-enabled device,

17   it converts their voice into a set of digital computer instructions." *Id.* at 1:23–28. Plaintiffs also

18   acknowledge that Alexa users "expect that this digital query is sent over the internet for processing,

19   that a digital response is returned, and that the device then converts the response into Alexa's

20   voice." *Id.* Because Alexa is a digital assistant that allows users' voices as the input mechanism

21   rather than a keyboard, recording users' voices is essential to transcribing them into machine-

22   readable text. For this reason, Plaintiffs admit that "Alexa Devices are designed to record and

23

---

24   [1]   Amazon files this motion without waiver of its pending motion to compel arbitration.
     Dkt. No. 55. As of this filing, the Court has not ruled on that motion, which is subject to Amazon's
25   objection to the Magistrate's Report and Recommendation. Dkt. No. 86. Amazon submits this
     motion to dismiss without waiving its position that this entire action is subject to arbitration and
26   reserves the right to appeal any denial of its motion to compel arbitration, and to seek a stay
     pending that appeal. Amazon also reserves its right to bring a further motion to compel arbitration
27   as to any new plaintiffs identified in the SAC. *See* Dkt. No. 102. Plaintiffs' counsel has not
     provided any account-identifying information for these additional plaintiffs. Amazon submits this
28   motion to dismiss now to comply with the current case schedule, which requires determination of
     class certification within four months, but respectfully reserves all rights.

respond to communications immediately after an individual says the wake word (typically 'Alexa' or 'Echo')." *Id.* ¶ 27.

There is nothing secretive about the fact that Alexa interactions are recorded, or how. The "Alexa and Alexa Device FAQs," which the SAC expressly references and incorporates (*id.* ¶ 23, n.11), advises that "[w]hen you speak to Alexa, a recording of what you asked Alexa is sent to Amazon's cloud so we can process and respond to your request." *See* Request for Judicial Notice ("RJN") Ex. A, FAQ 1. A household's local Alexa Device "stores a second or two of audio in short-term, random-access memory (RAM), analyzing that temporary audio recording for the presence of a wake word, and then overwriting it if the wake word is not recognized." SAC ¶ 28. No recording of any duration (just the overwritten RAM) is alleged to be made locally. Nor does any data leave the household, or any recording reach Amazon, absent the speaker's direction by invoking a wake word. *Id.* ¶ 29. "Alexa-enabled devices only stream audio to the cloud if the wake word is detected." RJN Ex. A, FAQ 4. These digital audio streams are "transmit[ted] to Amazon's servers for interpretation and processing" and storage. SAC ¶¶ 29, 30; *see also* FAQ 3.

Amazon's FAQs also explain how users can access and delete their past recordings that are stored in the cloud:

> You can review voice recordings associated with your account and delete the voice recordings one by one, by date range, by Alexa-enabled device, or all at once by visiting **Settings > Alexa Privacy** in the Alexa app or https://www.amazon.com/alexaprivacysettings. From either page, you can also choose to have your voice recordings older than 3 or 18 months deleted automatically. And you can delete all those voice recordings associated with your account all at once for each of your Alexa-enabled devices and apps by visiting Manage Your Content and Devices.

RJN Ex. A, FAQ 6. Amazon further explains how it uses voice recordings to improve the Alexa service by using machine learning and human review:

> . . . we use your requests to train our speech recognition and natural language understanding systems using machine learning. Training Alexa with real world requests from a diverse range of customers is necessary for Alexa to respond properly to the variation in our customers' speech patterns, dialects, accents, and vocabulary and the acoustic environments where customers use Alexa. This training relies in part on supervised machine learning, an industry-standard practice where humans review an extremely small sample of requests to help Alexa understand the correct interpretation of a request and provide the appropriate response in the future.

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 3 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

RJN Ex. A, FAQ 10.

Amazon offers Alexa services through several means, including smart speakers such as the Amazon Echo and Amazon Echo Dot, mobile iOS and Android applications, and third-party services. SAC ¶¶ 20–21, 25. Alexa users can also use their devices to control third-party devices that are Alexa enabled. Plaintiffs acknowledge that Amazon allows third-party "manufacturers of devices as varied as electrical outlets, lightbulbs, thermostats, and security cameras to offer Alexa integration, allowing users to control those third-party devices through Alexa." *Id.* ¶ 21.

Plaintiffs are nineteen minors, suing through their twelve respective parents as legal guardians (the "Parents"), and one adult, Amberlyn Satterlee, suing on behalf of herself. All allege they "used" in their home, or that their home "contained," between one and a dozen Amazon Echos, Echo Dots, or other Alexa devices beginning at some time from 2015 to 2019. *Id.* ¶¶ 46, 52–53, 59–60, 66, 72–73, 79, 85-86, 92, 98, 104, 110, 116–17. Plaintiffs allege they used the Alexa devices for a variety of helpful purposes, including checking the weather, playing games, listening to jokes, listening to trivia, setting timers, playing music, and controlling their TVs. *Id.* ¶¶ 28, 48, 55, 62, 68, 75, 81, 88, 94, 100, 106, 112, 119.

Notwithstanding the Parents' agreement to Amazon's COUs and Alexa Terms authorizing recordings to be made as an element of the Alexa service, Plaintiffs now claim that they, themselves, did not agree to have their voices recorded when they used Alexa in their homes. Anomalously, Plaintiffs do not focus on the initial recording of their voices, which they acknowledge (as they must) is indispensable to convert the query into a digital response. Rather they complain that Amazon *retains* these recordings, "then analyzes and uses these voice recordings for its own commercial benefit" and discloses them to Amazon workers. *Id.* ¶¶ 30–31.

As discussed in the Argument section, Plaintiffs bring their claims under their respective states' wiretapping statutes, alleging unlawful recording, use, and disclosure of their Alexa interactions. Plaintiffs purport to bring their claims on behalf of classes of other individuals who reside in their states who used Alexa on a household device while they were minors, but who have not downloaded and installed the Alexa App. *Id.* ¶¶ 122–30. They seek statutory damages which the wiretap statutes provide up to $5,000 per recording.

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 4 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions must be supported by factual allegations, *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

A complaint is properly dismissed, where, under applicable law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Although the court must accept all a complaint's actual allegations of facts as true when considering a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* at 555. The court need not accept as true conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). Accordingly, "[c]onclusory allegations of law and unwarranted inferences . . . are insufficient to avoid dismissal." *Kwan*, 854 F.3d at 1096 (citation and internal quotation marks omitted).

**ARGUMENT**

**I.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER CALIFORNIA'S INVASION OF PRIVACY ACT.**

The SAC fails to state a claim that Plaintiff R.A.'s use of Alexa violates the California Invasion of Privacy Act (CIPA), Cal. Penal Code § 632. *See* SAC ¶¶ 138–54 (first cause of action). CIPA imposes penalties on any "person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication . . . ." Cal. Penal Code § 632(a). A "confidential communication" is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Cal. Penal

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 5 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

Code § 632(c).  This definition excludes communications in any "circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."  *Id.*  Similarly, any "individual known by all parties to a confidential communication to be overhearing or recording the communication" cannot be liable under CIPA.  Cal. Penal Code § 632(b).  R.A.'s CIPA claim fails for several reasons.

**A. The SAC Fails To Allege That Any Plaintiff Had A Reasonable Expectation That The Interactions Would Be "Confidential" And Not Recorded.**

The SAC does not allege that the Alexa service recorded confidential communications. The standard of confidentiality under CIPA is "an objective one defined in terms of reasonableness." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (quoting *Frio v. Superior Court*, 203 Cal. App. 3d 1480, 1488 (1988)).  It is well-established under CIPA that "individuals cannot have a reasonable expectation that their online communications will not be recorded" by the party to whom they are directed, given the inherent function of the internet and computers that use it.  *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013) (granting motion to dismiss; collecting cases); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (granting motion to dismiss; no reasonable expectation of privacy in emails sent to family member or other with whom person has trust relationship).   Internet communications are "by their very nature recorded on the computer of at least the recipient, who may then easily transmit the communication to anyone else who has access to the internet or print the communications." *In re Google*, 2013 WL 5423918, at *23 (emails are not "confidential"); *see also Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (granting motion to dismiss; same with "private messages" on Facebook); *People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (same with Yahoo chat messages).  Even if one wanted to keep their activity confidential, the nature of online communications is such that a person "could reasonably expect that the communication may be overheard or recorded."  *Id.*

A person's interactions with the online Alexa service are no different.  The SAC even acknowledges that "[m]ost people believe that when they speak to an Alexa-enabled device, it converts their voice into a set of digital computer instructions."  SAC at 1:23–28.  Plaintiffs also

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 6 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

acknowledge that Alexa users "expect that this digital query is sent over the internet for processing, that a digital response is returned, and that the device then converts the response into Alexa's voice." *Id.* There can be no reasonable expectation of privacy in interactions that Plaintiffs intend for Amazon to capture as a voice input and convert into digital computer instructions. *See id.* ¶ 27 ("Alexa Devices are designed to record and respond to communications immediately after an individual says a wake word . . . ."). R.A.'s instructions for Alexa "to play music, tell jokes, and help with math questions" (*id.* ¶ 48) are no different from other digital queries to websites and search engines that are not and cannot be "confidential" as CIPA uses that term. *See Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (user's "browsing activity and form field entries" on a clothing retail website not "confidential").

Plaintiffs fail to allege a single fact establishing that anyone had an objectively reasonable expectation that their voice commands and instructions directed to Alexa-enabled devices would not be recorded in the first instance. Indeed, under settled California law, such an expectation would be entirely unreasonable. Accordingly, the Court should dismiss Plaintiff's first cause of action under CIPA based on unauthorized recording. *See Faulkner*, 706 F.3d at 1019–20 (affirming motion to dismiss Section 632 claim, where complaint failed to allege circumstances supporting objectively reasonable expectation of privacy).

**B. Because Amazon Lacks The Requisite Culpable Intent, Plaintiffs Independently Fail To State A Claim For Unlawful Recording.**

Plaintiffs have not alleged that Amazon intended to record R.A.'s confidential communication, which is another necessary element of a CIPA claim. *People v. Superior Court of Los Angeles Cty.*, 70 Cal. 2d 123, 133 (1969) (discussing former Section 653j, now Section 632, of CIPA) (emphasis in original); *see also McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2014 WL 465750, at *4 (N.D. Cal. Feb. 3, 2014) (noting that Section 632 requires specific intent to record confidential communications). The "recording of a confidential conversation is intentional if the person using the recording equipment does so with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation." *Superior Court*, 70

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 7 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

Cal. 2d at 134; *accord Marich v. MGM/UA Telecomms., Inc.*, 113 Cal. App. 4th 415, 421 (2003). By contrast, the "mere intent to activate a tape recorder which subsequently 'by chance' records a confidential communication" is not enough. *Superior Court*, 70 Cal. 2d at 133. An allegation that a person has "a policy or practice of recording" communications is also insufficient. *See Vartanian v. VW Credit, Inc.*, No. 2:11-CV-10776-SVW-RZ, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (granting motion to dismiss).

The SAC does not allege that Amazon had any specific intent to record R.A.'s confidential communications, much less that Amazon knew that R.A. was not one who had set up an Alexa device. Instead, Plaintiffs' allegations uniformly relate to its general provision of the Alexa service. *See, e.g.*, SAC ¶¶ 18–41, 138–54. Plaintiffs acknowledge that Amazon has publicly disclosed that Alexa is configured to record user interactions, and its FAQs make this clear. *See id.* ¶¶ 32 n.11, 149; RJN Ex. A. A general "practice of recording" cannot establish culpable intent as a matter of law. *See Vartanian*, 2012 WL 12326334, at *2. Moreover, express disclosures, such as the FAQs, put users on notice that recordings of Alexa interactions are stored by Amazon.

Indeed, the only intentional conduct alleged in the SAC relating to the creation of recordings is that of the *speakers*: they trigger the Alexa service when they use the wake word, demonstrating an intent to stream instructions to Amazon to generate digital responses. *See* SAC ¶ 27; *cf. Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995) (in copyright case, holding that service provider did not cause the allegedly infringing copy to be made and thus was not liable for direct infringement) ("[T]here should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third-party."). Because the SAC does not allege that Amazon possessed the requisite culpable intent, the CIPA claim must be dismissed.

### C. Plaintiffs Fail To State A Plausible Claim For Eavesdropping.

While CIPA creates potential liability for "eavesdropping" as well as "recording," Cal. Penal Code § 632(c), the SAC does not make any eavesdropping allegations. "California courts interpret 'eavesdrop,' as used in Section 632, to refer to a third-party secretly listening to a conversation between two *other* parties." *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078,

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 8 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

1  1088 (N.D. Cal. 2018), *on reconsideration*, No. 17-CV-02264-JSC, 2018 WL 3068248 (N.D. Cal.

2  June 21, 2018) (Uber's collection of data from communications Lyft drivers sent directly to

3  accounts posing as Lyft customers was not eavesdropping) (emphasis added); *see also Thomasson*

4  *v. GC Servs. Ltd. P'ship*, 321 F. App'x 557, 559 (9th Cir. 2008) (monitoring by debt collection

5  company of customer call did not constitute unlawful eavesdropping because "[n]o third-party

6  listened in on the conversations" between debt collector and customer).  Plaintiffs do not allege

7  Amazon secretly recorded communications between R.A. and some third-party.  *See*, *e.g.*, SAC

8  ¶¶ 138–54.  Accordingly, the Court should dismiss any CIPA claim based on "eavesdropping."

9  **D. Post-Recording Use Or Disclosure Of Information Does Not Violate CIPA.**

10         Plaintiffs' SAC places a substantial focus on Amazon's alleged storage, use, and disclosure

11  of voice recordings after recording has already taken place.  *See*, *e.g.*, SAC ¶¶ 39–44.  These

12  additional allegations, however, do not provide any basis for potential liability under Section 632

13  of CIPA.  *See Marich*, 113 Cal. App. 4th at 431 (no separate intrusion for editing or enhancing

14  recordings).  Instead, the plain language of Section 632(a) demonstrates that the California

15  Legislature "intended to prohibit two kinds of intrusion upon a communication: (1) a 'real time'

16  interception of a communication, by which the perpetrator listens to the communication as it

17  occurs; and (2) a mechanical recording of a communication for later playback."  *People v.*

18  *Drennan*, 84 Cal. App. 4th 1349, 1356 (2000).  Accordingly, Plaintiff's allegations that Amazon

19  unlawfully used the recorded communications of R.A. and other Californians should be dismissed.

20         CIPA also creates no cause of action for distribution of recorded communications, and

21  instead makes "a critical distinction between eavesdropping upon or recording a conversation and

22  later disseminating its contents."  *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002).  "While one

23  who imparts private information risks the betrayal of his confidence by the other party, a

24  substantial distinction has been recognized between the *secondhand repetition* of the contents of a

25  conversation and its *simultaneous dissemination* to an unannounced second auditor, whether that

26  auditor be a person or mechanical device."  *Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985)

27  (construing Section 631 of CIPA) (emphases added).  "[S]ection 632 protects *only* the speaker's

28  right to know and control the *firsthand* dissemination of the conversation as it is occurring."  *Kight*

*v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1393 (2011) (emphases added).

Plaintiffs' contention that use and disclosure is a separate, actionable CIPA violation is "the equivalent of imposing punishment upon the original eavesdropper every time that original eavesdropper listens to the illegal recording." *Marich*, 113 Cal. App. 4th at 431. As CIPA provides no such cause of action, the Court should dismiss any CIPA claim based on post-recording use or disclosure of Alexa interactions.

## II.   THE SAC FAILS TO STATE A CLAIM UNDER FLORIDA'S WIRETAP ACT.

The SAC fails to state a claim for violation of Florida's wiretap act (second cause of action) for two reasons. First, Florida's statute requires "interception" of a communication, which Plaintiffs have not adequately alleged. Second, as the provider of a communications service that requires recording, Amazon is exempt from liability under the Florida wiretap statute.

### A.   Reception Of Electronic Communications Like Alexa Interactions Is Not Actionable "Interception."

To plead a violation of Florida's wiretap act, the plaintiff must allege the defendant "intercept[ed]" an oral, wire, or electronic communication, Fla. Stat. § 934.03(1)(a), used an intercepted communication, Fla. Stat. § 934.03(1)(b), or disclosed an intercepted communication, Fla. Stat. § 934.03(1)(c). "Intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Fla. Stat. § 934.02(3). Because there is no actionable "interception" here, Plaintiffs' Florida claim fails as a matter of law.

Courts applying Florida's wiretap act to electronic communications have followed the federal wiretap act's definition of "intercept," which requires contemporaneous acquisition of an electronic communication by a non-party. In *O'Brien v. O'Brien*, 899 So. 2d 1133, 1136 (Fla. 5th DCA 2005), a Florida appellate court adopted the federal definition of "interception" of "electronic communications" and held that only contemporaneous interception of live communications by an interloper could be actionable. There, the court found that spyware secretly installed by the plaintiff's wife on his computer that copied emails as they were being sent or received and forwarded them to her was an "interception" because the emails were copied by a non-party

contemporaneously with their sending.

Conversely, the mere access to received electronic communications is not an interception under Florida law. Relying on *O'Brien*, in *Handley v. Wilson*, No. 08-14444-CIV-MARTINEZ-LYNCH, 2010 WL 11607357, \*9 (S.D. Fla. Feb. 10, 2010), a federal district court found that an employer's review of recorded instant messages sent by employees using the company's instant messaging system was not an "interception" because the employer acquired those communications from storage, not contemporaneously. The court reasoned that the Florida wiretap statute never defined "electronic communications" to include storage (unlike the definition of "wire communications"), and that the legislature had eliminated "storage" altogether from the definition of "wire communication." *See id.*; *see also* H.R. 1439, 107th Cong., No. 2002-72, § 1 (Fl. 2002). That is a logical result: all electronic communications are stored at some point along their journey, and necessarily so when they reach the intended recipient. If a recipient's storing, accessing, or using a stored electronic communication were unlawful, the mere receipt of an email, internet search query, or e-commerce order would be a violation of the statute. The same reasoning applies to Amazon's mere storage of users' interactions directed to Alexa. Those interactions are, at most, communications directed to Amazon. Because Amazon is not secretly accessing communications that are intended for a third-party, it cannot be an "interception" under Florida law.

Plaintiffs previously relied on *Guilder v. State*, 899 So. 2d 412 (DCA 2005), to argue that any recording of an oral utterance is an interception. That case is inapposite to Alexa interactions. *Guilder* concerned recordings of face-to-face oral communications, which Florida's wiretap statute distinguishes from electronic communications like Alexa interactions. Florida's statute defines an "oral communication" to mean "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation and ***does not mean*** any public oral communication uttered at a public meeting or ***any electronic communication***." Fla. Stat. § 934.02(2) (emphasis added). An "electronic communication," on the other hand, is "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects intrastate, interstate, or foreign commerce, ***but***

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 11 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

*does not include: (a)   Any wire or oral communication*; . . ."  Fla. Stat. § 934.02(12) (emphasis added).  Thus, an oral communication cannot include electronic communications.  Interactions with an Alexa device, which are streamed over the internet to Amazon for processing and storage, unquestionably are electronic and not oral communications, and therefore require contemporaneous interception by a third-party in order to be "intercepted."

**B.**  **Even If Plaintiffs Had Adequately Alleged "Interception," Florida Law Exempts Amazon From Liability As The Provider Of The Alexa Electronic Communication Service.**

Even if the Florida plaintiffs had adequately alleged that Amazon's receipt and storage of their Alexa interactions is an "interception," as the provider of the Alexa communication service, Amazon is statutorily authorized to receive and access those communications.   Fla. Stat. § 934.04(2)(a)(1) provides:

> It is lawful under this section and ss. 934.04-934.09 for an operator of a switchboard, or an officer, employee, or agent of a ***provider of wire or electronic communication service whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his or her employment while engaged in any activity which is a necessary incident to the rendition of his or her service*** or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

*Id.* (emphasis added).  The Florida statute defines an "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  Fla. Stat. § 934.02(15).

Amazon is the provider of the Alexa electronic communication service.  The Florida Plaintiffs used that service to transmit instructions or queries to Amazon and to receive information in return, or to perform a function, such as "control their TV, play music, answer questions and trivia, and play games."  SAC ¶¶ 55, 62.  Plaintiffs also allege that Amazon's computer servers—its "facilities"—interpret and process those communications to provide the Alexa service.  *See, e.g.*, *id.* ¶ 29.  Accordingly, as the provider of the Alexa electronic communication service, by statute Amazon cannot be liable for receiving and recording Plaintiffs' interactions that are necessary to provide the service.  The Florida statute prevents the absurdity of Plaintiffs' claims.  A user cannot ask a service provider to convert her voice into instructions, and then sue for

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 12 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

wiretapping when it does.

## C. Florida Law Provides No Claim Based On Use Or Disclosure Absent An Actionable Interception.

Like most other state statues, Florida's wiretap act provides no claim for use or disclosure of a communication unless it was wrongfully intercepted. *See* Fla. Stat. § 934.03(1)(b), (c). Here, no "interception" is alleged (and Amazon is exempt as the communications service provider in any event). So any claim based on use or disclosure under Florida law must be dismissed.

## III. THE SAC FAILS TO STATE A CLAIM UNDER THE ILLINOIS EAVESDROPPING STATUTE.

The SAC fails to state a claim for violation of Section 14-2 of the Illinois Eavesdropping Statute, 720 Ill. Comp. Stat. 5/14-2. *See* SAC ¶¶ 172–87 (third cause of action). The Illinois law creates five separate "eavesdropping" offenses. Plaintiffs allege violation of only two: Subsections 14-2(a)(2) and 14-2(a)(5).[2] Subsection (a)(2) provides that a "person commits eavesdropping when he or she knowingly and intentionally" "[u]ses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party" without consent. 720 Ill. Comp. Stat. 5/14-2(a)(2). Subsection (a)(5) prohibits "knowingly and intentionally" using or disclosing "any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article" without consent. 720 Ill. Comp. Stat. 5/14-2(a)(5). The SAC fails to state a claim under either subsection.

## A. The SAC Does Not Allege That Any "Private Conversation" Was Recorded.

To plead a violation of Subsection (a)(2), a party must allege that a "private conversation" occurred and was recorded through surreptitious means.[3] 720 Ill. Comp. Stat. 5/14-2(a)(2). A

---

[2] Two of the offenses require eavesdropping on communications to which the perpetrator "is not a party," *see* 720 Ill. Comp. Stat. 5/14-2(a)(1), (3), and there is no plausible claim here that Amazon is not a party to "device interactions" upon which the Plaintiff C.L. bases her claim. *See* SAC ¶ 174. Another prohibits the manufacture or distribution of certain devices that are designed to be "primarily useful" for eavesdropping. 720 Ill. Comp. Stat. 5/14-2(a)(4). The SAC does not allege the manufacture or sale of eavesdropping devices. *See generally* SAC ¶¶ 172–87.

[3] The previous version of the statute was not limited to "private conversations" and was deemed unconstitutional in 2014 as a result. *People v. Melongo*, 6 N.E.3d 120, 127 (Ill. 2014) (holding that the recording provision of the previous wiretapping statute was "unconstitutional on its face

"private conversation" is "any oral communication between 2 or more persons . . . when one or more of the parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation." 720 Ill. Comp. Stat. 5/14-1(d). This definition includes both a subjective component ("intended the communication to be of a private nature") and an objective one ("under circumstances reasonably justifying that expectation"). *Id.*

As a threshold matter, Alexa interactions are not "conversations." They are instructions to an electronic system using the human voice, instead of keyboards or typing, as the input. As Amazon's FAQs make clear, the Alexa service converts those voice inputs into "a set of digital computer instructions" that are "sent over the internet for processing" by Amazon or third-party services. SAC at 1:23–28. As such, those interactions are not "oral communication[s] between 2 or more persons," which is what Subsection (a)(2) addresses.[4]

But even if Alexa interactions were plausibly "conversations," the SAC contains no allegation that identifies any Alexa use in which Illinois Plaintiff C.L., or anyone else for that matter, held any subjective or objective expectation of privacy. *See id.* ¶¶ 64–70, 172–87. C.L. bases her claim on the recording of ordinary "device interactions" with the Alexa service (*id.* ¶ 174), as opposed to any specific communications. She alleges only that she used Alexa "regularly" to "find information, play music, and tell jokes," but offers no facts from which a plausible inference can be drawn that she had any expectation of privacy in those requests. *Id.* ¶ 68. To the contrary, there can be no reasonable expectation of privacy in interactions intentionally sent to Amazon "over the internet for processing" and, in some cases, to be shared with third parties such as game providers that offer Alexa integration. *Id.* at 1:23–28, ¶ 21; *cf. Zak v. Bose Corp.*, No. 17-CV-02928, 2019 WL 1437909, at *5 (N.D. Ill. Mar. 31, 2019) (no violation

---

[4] because a substantial number of its applications violate the first amendment" given statute criminalize recording of both public and private conversations); *see also People v. Clark*, 6 N.E.3d 154, 161 (Ill. 2014) ("It criminalizes a whole range of conduct involving the audio recording of conversations that cannot be deemed in any way private.").

[4] Alexa interactions may be "private electronic communications," which the Illinois act separately defines as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a wire, radio, pager, computer … system, when the sending or receiving party intends the electronic communication to be private under circumstances reasonably justifying that expectation." 720 Ill. Comp. Stat. 5/14-1(e). Those communications can potentially implicate other parts of the statute, but *not* Subsection (a)(2).

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 14 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

based on sharing data between music services and Bose App because "the App is a fully-acknowledged and intended participant in the communication of the Media Information").

**B. The SAC Does Not That Allege Amazon Acted "Surreptitiously."**

The Illinois statute also requires that, to be actionable, the recording of a private conversation must be made "surreptitiously," which means "obtained or made by stealth or deception, or executed through secrecy or concealment."[5]  720 Ill. Comp. Stat. 5/14-1(g).  Given the necessary element of intentional deception, the heightened pleading standard under Rule 9 of the Federal Rules of Civil Procedure should apply to Plaintiffs' allegations.  *See* Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud or mistake.").

But there is *no* allegation of secrecy, deception, or fraud in the SAC, nor any mention of how Amazon acted "surreptitiously" in the making of recordings of C.L.'s intentional interactions with Alexa.  *See* SAC ¶¶ 172–87.  Nor could there be—the simple fact that users must utter a wake word to engage Alexa (*id.* ¶ 28) precludes any such claim.  Moreover, Amazon extensively and publicly discloses how Alexa functions, including the fact that Alexa interactions are recorded, on Amazon's website and during the activation process.  RJN Ex. A (Alexa and Alexa Device FAQs).  Given C.L.'s failure to allege "surreptitious" actions by Amazon, her Illinois eavesdropping claim under Subsection (a)(2) fails.

**C. There Is No Plausible Claim Based On Post-Recording Use Or Disclosure Of Alexa Interactions.**

Finally, the SAC fails to state a claim for post-recording use or disclosure under 720 Ill. Comp. Stat. 5/14-2(a)(5), because it does not allege a claim under Subsection (a)(1) through (a)(4).  A person can only violate subsection (a)(5) by using or disclosing "any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article" without consent.  720 Ill. Comp. Stat. 5/14-

---

[5]  As with the limitation for "private conversations," the prior version of the Illinois statute was not limited to "the secret interception or surreptitious recording of a private communication."  *See Am. Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) (finding prior statute burdened speech).  The addition of this language was made to address the potential unconstitutionality of the Illinois statute.  *See* 2014 Ill. Legis. Serv. P.A. 98-1142 (S.B. 1342) (showing redline markup of 2014 amendments).

1    2(a)(5).  As explained above, the SAC fails to allege any violation of the Illinois statute that could

2    serve as a predicate for a claim of unlawful use or disclosure under Subsection (a)(5).

3    **IV.    THE SAC FAILS TO STATE A CLAIM UNDER MARYLAND'S WIRETAP ACT.**

4              Maryland's statute makes it unlawful for any party to "willfully intercept" any wire, oral,

5    or electronic communication.  Md. Code § 10-402(a)(1) (fourth cause of action).  Maryland's

6    statute also makes it unlawful to "willfully disclose" or "willfully use" "the contents of any wire,

7    oral, or electronic communication, knowing or having reason to know that the information was

8    obtained through the interception of a wire, oral, or electronic communication."  Md. Code § 10-

9    402(a)(2) (disclosure) and Md. Code § 10-402(a)(3) (use).  Like Florida, Maryland distinguishes

10   oral communications from electronic communications.   An "oral communication" is "any

11   conversation or words spoken to or ***by any person in private conversation***" and "***does not include***

12   ***any electronic communication***."  Id. (emphases added).  An electronic communication, on the

13   other hand, is "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any

14   nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or

15   photooptical system."  Md. Code § 10-401(5)(i).  This "does not include" "[a]ny wire or oral

16   communication."  Md. Code § 10-401(5)(ii).  The SAC fails to state a claim under Maryland law

17   because it fails to allege interception of an electronic communication.

18   **A.  Alexa Interactions Are "Electronic Communications" That Are Not "Intercepted"**
     **When Stored And Later Accessed By The Intended Recipient.**
19

20            Like Florida's statute, courts applying Maryland's wiretap statute differentiate between

21   "oral" and "electronic communications" when determining whether an interception has occurred.

22   Also like Florida courts, Maryland courts have adopted the Federal Wiretap Act's definition of

23   "intercept" for electronic communications.  *See Martin v. State*, 218 Md. App. 1, 16–17 (2014).

24   In *Martin*, the court construed "intercept" in the context of an electronic communication to have

25   the same meaning as under federal law, *i.e.*, it must be acquired by a *non-party* contemporaneously

26   with its transmission.  *Id.*  The court reasoned that both the federal wiretap act and Maryland's

27   statute define "intercept" and "electronic communication" in nearly identical terms.  *Id.* at 16.

28   *Compare* 18 U.S.C. § 2510(4) *and* (12), *with* CJP § 10–401(3) *and* (11) (defining, respectively,

"intercept" and "electronic communication"). *See also Davis v. State*, 426 Md. 211, 220 & n.3 (2012) (observing that definitions of "intercept" in Maryland and Federal Wiretap Acts are "identical[ ]."). *Martin* further held that later accessing stored text messages that had been sent by the plaintiff to an intended recipient was not an "interception." 218 Md. App. at 17.

For the same reasons discussed above under Florida's statute, Amazon's storage and access of electronic communications directed to Alexa are not, as a matter of law, "interceptions" in violation of Maryland's statute.

### B. Alexa-Enabled Devices Are Specifically Excluded From The Definition Of "Electronic, Mechanical, Or Other Device[s]" Under Maryland Law.

An electronic communication can only be intercepted in violation of Maryland law if the interception is made "through the use of any electronic, mechanical, or other device." Md. Code § 10-401(10). Maryland excludes from the definition of "device":

> Any telephone or telegraph instrument, equipment or other facility for the transmission of electronic communications, or any component thereof, (a) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by the subscriber or user for connection to the facilities of the service and used in the ordinary course of its business . . . .

Md. Code. § 10-401(8) (emphasis added). Just as Amazon is exempt from Florida's wiretap statute as the provider of the Alexa electronic communications service, Alexa devices and the servers used to provide the Alexa service do not qualify as "devices" under Maryland's statute. Alexa constitutes a "facility for the transmission of electronic communications" being used by the Alexa user in the ordinary course of business. Such use to receive and store Alexa interactions therefore cannot constitute an "interception." *See Martin*, 218 Md. App. at 19 (acquiring text messages from cell phone not an interception because phones are excluded from definition of "device"). Again, this comports with common sense and fair play: a user cannot engage an electronic communication service and then sue when that service functions as intended and required.

### C. Plaintiffs Do Not Allege Wrongful Use Or Disclosure Of Alexa Interactions.

Maryland's statute makes willful disclosure or use actionable only if the information was obtained through interception. Md. Code § 10-402(a)(2) (disclosure) and Md. Code § 10-402(a)(3) (use). Because the SAC does not allege any wrongful interception under Maryland law,

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 17 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

1  Plaintiffs' claims for wrongful disclosure and use must fail as well.

2  **V.     THE SAC FAILS TO STATE A CLAIM UNDER MASSACHUSETTS LAW.**

3         The SAC fails to state a claim under the Massachusetts Wiretap Act, which prohibits the

4  interception of oral or wire communications within the Commonwealth.   M.G.L. Ch. 272,

5  § 99(B)(2) (fifth cause of action).  "The term 'interception' means to secretly hear, ***secretly record***,

6  or aid another to secretly hear or secretly record the contents of any wire or oral communication

7  through the use of any intercepting device by any person other than a person given prior authority

8  by all parties to such communication . . . ."   M.G.L. Ch. 272, § 99(B)(4) (emphasis added).

9  Interception must be contemporaneous with transmission; reviewing or storing recordings later is

10  not an interception.   *Garrity v. John Hancock Mut. Life Ins. Co.*, CIV.A. 00-12143-RZW, 2002

11  WL 974676, *2 (D. Mass. May 7, 2002).

12     **A.  The Massachusetts Wiretap Statute Does Not Apply To Extraterritorial Recordings.**

13         Massachusetts' wiretap statute does not apply to recordings made outside of

14  Massachusetts, even when one of the parties to a communication is in Massachusetts. *See, e.g.,*

15  *MacNeill Engineering Co., Inc. v. Trisport, Ltd.*, 59 F. Supp. 2d 199, 202 (D. Mass. 1999) (denying

16  leave to amend complaint to add Massachusetts' wiretapping claim on futility grounds where call

17  made by Massachusetts resident was recorded outside of Massachusetts); *Christensen v. Cox*, 34

18  Mass. L. Rptr. 561, at *7 (Mass. Super. Nov. 21, 2017) (Massachusetts' wiretap law does not apply

19  extraterritorially); *Marquis v. Google, Inc.*, No. 11-2808, 2015 WL 13037257, at *8–*9 (Mass.

20  Super. Feb. 13, 2005) (granting summary judgment for defendant for scanning emails sent from

21  Massachusetts on servers outside of Massachusetts).   Plaintiffs complain of Amazon's servers

22  "creating and storing a permanent recording of their voices" when they stream their voices over

23  the internet. They do not allege Amazon recorded their communications in Massachusetts. The

24  SAC's failure to allege that Amazon recorded the Massachusetts' Plaintiffs' Alexa interactions in

25  Massachusetts requires dismissal. *Christensen*, 34 Mass. L. Rptr. 561, at *7 (dismissing wiretap

26  claim where complaint failed to allege recording was made in Massachusetts).

27     **B.  The SAC Fails To Allege Amazon Secretly Intercepted Alexa Interactions.**

28         "Interception" requires secrecy.  In Massachusetts there is no violation where the recording

was not secret, *i.e.*, it must have been made without the parties' consent or actual knowledge. *Com. v. Jackson,* 370 Mass. 502, 505–06 (1976). The Massachusetts plaintiffs C.O., L.R., and W.R. have not alleged that Amazon acted in secret. The SAC does not allege that Plaintiffs were unaware that recording was essential to conversion of their voices into instructions over the internet, a fact which Amazon indisputably disclosed (RJN Ex. A). Moreover, the SAC certainly does not allege that Amazon *intentionally* recorded the Plaintiffs knowing they were (purportedly) unaware of this (well-known) fact. Without well-pled allegations of both Plaintiffs' own state of mind when interacting with Alexa,[6] *and* Amazon's knowledge and intentional exploitation of that state of mind, the SAC fails to plead facts plausibly proving intentional, secret recording.

**C. The SAC Fails To Allege Disclosure Or Use In Violation Of Massachusetts Law.**

The Massachusetts statute prohibits willfully disclosing or using the contents of any wire or oral communication, ***knowing that the information was obtained through interception***." M.G.L. Ch. 272, § 99(C)(3)(a) (disclosure) and (b) (use) (emphasis added). Because the SAC fails to plead that Amazon secretly "intercepted" information from the Massachusetts Plaintiffs without their knowledge, no claim can be stated for use or disclosure of that information.

**VI.   THE SAC FAILS TO STATE A CLAIM UNDER MICHIGAN'S WIRETAP ACT.**

Plaintiffs E.J. and Z.S. allege that the Alexa service violates Michigan's eavesdropping law, Mich. Comp. Laws § 750.539c. *See* SAC ¶¶ 222–38 (sixth cause of action). This provision imposes liability on "[a]ny person who is present or who is not present during a private conversation and who willfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto . . . ." Mich. Comp. Laws § 750.539c. The Michigan claims fail for several reasons.

---

[6] Plaintiffs all formulaically and conclusorily claim that they were "unaware that when [they] spoke a wake word, an Alexa Device would record ***and store***" their instructions. *E.g.* SAC ¶ 82, 89 (emphasis added). But this tactical use of the conjunctive—embedding the issue of storage, which is Plaintiffs' real complaint—means that the allegation does not sufficiently plead lack of knowledge of ***recording alone***, which is the relevant legal issue here. Plaintiffs studiously avoid, in the SAC or elsewhere, any claim of ignorance that instructions to Alexa are necessarily recorded for processing. Indeed, the SAC acknowledges that "most people" are aware of the necessity of converting their voice to digital instructions. *Id.* at 1:23–27.

**A.  The SAC Makes No Plausible Allegation Of "Eavesdropping" By Amazon.**

A plaintiff must allege facts showing "eavesdropping" to plead a violation of Section 750.539c.  The term "eavesdrop" means "to overhear, record, amplify or transmit any part of the private discourse *of others* without the permission of all persons engaged in the discourse." Mich. Comp. Laws § 750.539a(2) (emphasis added).  Michigan courts have interpreted this language to mean that a "participant in a private conversation may record it without 'eavesdropping' because the conversation is not the 'discourse of others.'"  *Lewis v. LeGrow*, 258 Mich. App. 175, 185 (2003) (citing *Sullivan v. Gray*, 117 Mich. App. 476, 481 (1982)).  The "statutory language, on its face, unambiguously excludes participant recording from the definition of eavesdropping by limiting the subject conversation to 'the private discourse *of others*.'"  *Sullivan*, 117 Mich. App. at 481 (emphasis added);[7] *see also Bloom v. Pegasus Investigations, Inc.*, No. 227731, 2002 WL 1375726, at *1 (Mich. Ct. App. June 25, 2002) ("an eavesdropper must be a third-party who is not otherwise involved in the conversation being eavesdropped on"); *Ferrara v. Detroit Free Press, Inc.*, 52 F. App'x 229, 233 (6th Cir. 2002) (affirming district court's grant of summary judgment to defendant and holding that court was "clearly correct" to find no violation); *Swan v. Bob Maxey Lincoln Mercury*, No. 216564, 2001 WL 682371, at *2 (Mich. Ct. App. Apr. 24, 2001) ("[T]he statute is not violated when a participant to the conversation records the conversation, even if the other participant to the conversation is unaware that it is being recorded.").

---

[7]  One federal district court decision disagrees with the holdings of *Sullivan* and *Lewis* and adopts the erroneous view of the dissent in *Sullivan*.  *See AFT Michigan v. Project Veritas*, 397 F. Supp. 3d 981, 988 (E.D. Mich. 2019), *leave to appeal denied sub nom. In re Project Veritas*, No. 19-0109, 2019 WL 4667711 (6th Cir. Aug. 16, 2019).  *Veritas* is poorly reasoned, and the court's decision does violence to the plain language of the Michigan statute.  Because Section 750.539c can create liability for "any person who is present or who is not present during a private conversation," the *Veritas* court concluded that recording by a participant could violate the statute.  397 F. Supp. 3d at 988.  This interpretation ignores the statutory definition of eavesdropping, which requires conduct with respect to the "private discourse *of others*."  Mich. Comp. Laws § 750.539a(2) (emphasis added).  The statutory language "any person who is present or who is not present" merely indicates that eavesdropping liability can attach whether a *third-party* eavesdropper is physically present (*e.g.*, hiding behind a curtain) or remote (*e.g.*, hiding behind a wire tap).  *Veritas* is plainly wrong and should be ignored.

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 20 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

Because Plaintiffs do not allege that Amazon eavesdropped on any conversation or communication they had with *third parties*, the Court should dismiss the Michigan claim.

**B. Plaintiffs Fail To Allege Recording Of A "Private Conversation."**

The Michigan statute also limits liability only to eavesdropping on "private conversations." MCL § 750.539c. Michigan's Supreme Court has held that a "private conversation" means "a conversation that a person reasonably expects to be free from casual or hostile intrusion or surveillance." *People v. Stone*, 463 Mich. 558, 563 (2001). "The proper question is whether plaintiff intended and reasonably expected that the *conversation* was private, not whether the subject matter was intended to be private." *Dickerson v. Raphael*, 461 Mich. 851 (1999) (emphasis in original). The SAC fails adequately to allege any "private conversation."

As explained in Section III.A. above, a user's voice commands to the Alexa service are not "conversations" at all; they are instructions to Amazon computers to perform discrete actions, such as "play music", "next joke" or "what's the weather?" *See* SAC at 1:23–26; ¶ 94. The Michigan statute in no way intended to protect this type of digital data; it "was meant to prohibit eavesdropping in the traditional sense of recording or secretly listening to audible conversation." *Bailey v. Bailey*, No. 07-11672, 2008 WL 324156, at *8 (E.D. Mich. Feb. 6, 2008) (recording key strokes on a keyboard using key logging software does not violate Michigan statute). "This is bolstered by the fact that the Michigan legislature felt the need to add a statute that deals specifically with the reading or copying of any message from a computer without authorization." *Id.* (citing Mich. Comp. Laws § 750.540, enacted 2006). The Michigan Plaintiffs do not raise claims under the computer messaging statute, yet they premise their entire claim on the "recording of their device interactions" with the Alexa service. SAC ¶ 224. There is thus no allegation that any recording of a "private conversation" occurred.

The Michigan plaintiffs also fail to identify any specific Alexa interactions that E.J. and Z.S. could reasonably have expected would not be recorded. *See Dearborn Tree Serv., Inc. v. Gray's Outdoorservices, LLC*, No. 13-CV-12584, 2014 WL 6886330, at *7 (E.D. Mich. Dec. 4, 2014) ("Defendants assert that the telephone representatives had an expectation that their conversations would be private, but fail to provide any facts, legal authority, or analysis to support

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 21 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

their conclusion.").  To the contrary, the SAC alleges that E.J. "used it primarily to play music and check the weather" (SAC ¶ 94), and that Plaintiff Z.S. "used the Echo Dots to check the weather, tell jokes, and play games." *Id.* ¶ 100.  Plaintiffs offer no explanation why they would have any expectation of privacy in such interactions, or how their instructions might be effectuated by Alexa without making a recording.  To the contrary, Plaintiffs acknowledge that Alexa devices must "convert their voice into a set of digital computer instructions" that are then "sent over the internet for processing" of the requests.  *Id.* at 1:23–26.  Plaintiffs fail to allege a single fact indicating that they had any objectively reasonable expectation that any instructions, much less a private conversation, was not being recorded.

## C. Amazon Did Not "Willfully" Use A "Device" To Eavesdrop.

The Michigan statute does not impose liability unless a person "willfully" uses a device to eavesdrop.  Mich. Comp. Laws § 750.539c.  "The United States Supreme Court has stated that the common usage of willful is synonymous with the word intentional."  *City of Grand Rapids v. Grand Rapids Police Command Officers Ass'n*, 346 F. Supp. 3d 1061, 1067 (W.D. Mich. 2018) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  Black's Law Dictionary provides that "[a] voluntary act becomes willful, in law, only when it involves conscious wrong or evil purpose on the part of the actor, or at least inexcusable carelessness, whether the act is right or wrong."  WILLFUL, Black's Law Dictionary (11th ed. 2019).  E.J. and Z.S. have not alleged that Amazon had culpable intent—*i.e.*, that it knew that any voice recordings in their household were made of persons who had not consented to the Alexa Terms of Use *and* who lacked actual or constructive knowledge that recordings must be made to process Alexa interactions.

## D. Post-Recording Use Or Disclosure Does Not Violate Section 750.539c.

The Michigan Plaintiffs allege violations only of Mich. Comp. Laws § 750.539c, which does not create liability based on post-recording use or disclosure.  *See* SAC ¶¶ 222–38.  Section 750.539c creates liability only for "eavesdropping" itself.  While Section 750.539*e* creates liability for "[a]ny person who uses or divulges any information which he knows or reasonably should know was obtained in violation of sections 539b, 539c or 539d . . . ," the SAC does not allege a violation of Section 539e.  SAC ¶¶ 222–38.  Moreover, as explained above, there is no adequately

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 22 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

pled violation of Section 539c.  And the SAC does not allege violations of Sections 539b or 539d. Accordingly, there could be no plausible basis to allege violation of Section 750.539e "because it is dependent on the use of information obtained in violation of the eavesdropping statutes," which Amazon has not violated.  *See Bailey*, 2008 WL 324156, at *8.

## VII.   THE SAC FAILS TO STATE A CLAIM UNDER NEW HAMPSHIRE'S WIRETAP ACT.

Plaintiffs O.B., S.B. and E.B. allege the Alexa service violates New Hampshire's Wiretap Act.  *See* SAC ¶¶ 239–55 (seventh cause of action).  New Hampshire Rev. Stat. § 570-A:2 creates liability when a person "willfully intercepts" a telecommunication or oral communication.  The SAC fails to allege an actionable interception and this claim must be dismissed.

### A.   Amazon Cannot Be Liable Because It Is An Intended Recipient Of The New Hampshire Plaintiffs' Alexa Interactions.

As the intended party to a communication, Amazon cannot be liable for interception.  *See State v. Lott*, 879 A.2d 1167, 1171 (N.H. 2005).  In *Lott*, a detective recorded a conversation with the defendant through an instant messaging application.  Even though the conversation was recorded allegedly without the defendant's knowledge, the state Supreme Court held that the recording did not violate the wiretap statute because both were parties to the communication and the defendant "chose to communicate." *Id.*; *see also State v. Lamontagne*, 618 A.2d 849, 850–51 (N.H. 1992) (finding no liability under statute because both parties were also parties to the conversation).  Here, the SAC affirmatively pleads (as, of course, it must) that Amazon is the intended recipient of Plaintiffs' Alexa interactions. *See, e.g.,* SAC ¶ 106 (alleging the New Hampshire Plaintiffs "directly interacted with an Alexa Device").  Accordingly, Amazon cannot have "intercepted" the interactions, and the New Hampshire Plaintiffs' claims should be dismissed.

### B.   The SAC Does Not Allege That Amazon Willfully Intercepted Plaintiff's Interactions.

The New Hampshire statute requires proof that a defendant "willfully" intercepted another party's communications, which means the intentional or reckless disregard for lawfulness of conduct.  *Fischer v. Hooper*, 732 A.2d 396, 400 (N.H. 1999).  There is no violation of the statute

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP
- 23 -
FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

if there is a good faith belief that the party's conduct was lawful.  *See State v. Mueller*, 88 A.3d 924, 928 (N.H. 2014) (finding plain error when trial court instructed the jury that "purposely" rather than "willfully" was the proper mental state to establish a violation of the statute, because "purposely" only required the State to show the defendant had the "conscious object" to record conversations without the consent of all parties).  Here, again, there was no interception at all because Amazon was the intended recipient of the communications, so Amazon certainly had a good-faith belief it was acting lawfully.  Even if that were not so, the SAC does not allege that Amazon lacked a good faith belief that Alexa users were on notice that recording was necessary for their instructions to Alexa to be processed.  To the contrary, the SAC admits that "most people believe" that Alexa "converts their voice into a set of digital instructions . . . sent over the internet for processing."  SAC at 1:23–26.  Because the SAC does not plead the necessary *mens rea*, the New Hampshire Plaintiffs' claims should be dismissed.

**C.  The SAC Fails To Allege Disclosure Or Use In Violation Of New Hampshire Law.**

New Hampshire's statute prohibits willfully disclosing or using the contents of any communication, "***knowing or having reason to know that the information was obtained through the interception of a telecommunication or oral communication in violation of***" the statute.  New Hampshire Rev. Stat. § 570-A:2 I.(b)(3)(c) (disclosure) and (d) (use) (emphasis added).  As discussed above, the SAC does not adequately allege that Amazon knew or had reason to know that recordings of the New Hampshire Plaintiffs had been made without their consent or that they had not intended their voice instructions to be directed to Amazon's Alexa service.  Accordingly, the New Hampshire Plaintiffs' disclosure and use claims should be dismissed.

**VIII.  THE SAC FAILS TO STATE A CLAIM UNDER PENNSYLVANIA'S WIRETAP ACT.**

Plaintiffs also allege that Amazon violated Pennsylvania's Wiretap Act.  *See* SAC ¶¶ 256–72 (eight cause of action).  A person is liable under Pennsylvania's statute if she intentionally intercepts communications.  18 Pa. Cons. Stat. § 5703.  Pennsylvania has many statutory exceptions to the prohibition of interception of communications.  *See* 18 Pa. Cons. Stat. § 5704.  For several reasons, Plaintiffs' cause of action fails as a matter of law.

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 24 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

**A.  Pennsylvania's Wiretap Statute Does Not Apply To Extraterritorial Recordings.**

Like Massachusetts, courts have held that Pennsylvania's wiretap statute does not apply to recordings made outside the state, even when the plaintiff was speaking from Pennsylvania.  *See, e.g., Larrison v. Larrison*, 750 A.2d 895, 898 (Pa. Super. 2000); *Ball v. Ehlig*, 70 Pa. D. & C.4th 160 (Ct. Common Pls. Montgomery Cty., Pa. 2005); *Broughal v. First Wachovia Corp.*, 14 Pa. D. & C. 4th 525 (Ct. Common Pls. Northampton Cty., Pa. 1992).  Accordingly, the Pennsylvania Plaintiff's claims should be dismissed for the same reasons discussed in section V.A., above.

**B.  Amazon Was The Intended Recipient Of Plaintiff R.B.'S Alexa Interactions.**

The SAC fails to state a claim under Pennsylvania's statute because intended recipients of communications cannot "intercept" them. Pennsylvania courts have repeatedly held that no "interception" takes place when the intended recipient —as Amazon is with Alexa interactions— receives the communication.  *Com. v. Diego*, 119 A.3d 370, 380–81 (Pa. Super. Ct. 2015) (recipient was a party to the conversation and therefore could not be said to have intercepted it simply because he received content, and subsequently relaying the content could not create an interception); *see also Com. v. DiSilvio*, 335 A.2d 785, 787 (Pa. Super. Ct. 1975) (finding there is no "interception" where a party receives the communication directly over the means of transmission employed); *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. CIV.A. 07-1029, 2007 WL 4394447, at *5 (E.D. Pa. Dec. 13, 2007) (emails sent directly to server owned by defendant constituted merely communications between parties).  Not only is a direct party to the communication incapable of "intercepting" it, but any person "savvy enough to be using the Internet . . . would be aware of the fact that messages are received in a recorded format." *Com. v. Proetto*, 771 A.2d 823, 829 (Pa. Super. Ct. 2001).  Here, the SAC alleges that R.B. "directly interacted with an Alexa Device" to give it instructions." SAC ¶ 112.  Accordingly, as the intended recipient of those interactions, Amazon cannot be liable under 18 Pa. Cons. Stat. § 5703.

**C.  Pennsylvania Provides No Claim For Use Or Disclosure Absent An Actionable Interception.**

Under Pennsylvania law, there is no liability for disclosure or use of a communication unless it is made "knowing or having reason to know that the information was obtained through

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP
- 25 -
FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

the interception of a wire, electronic or oral communication."  18 Pa. Cons. Sat. §§ 5703(2), (3).

Absent an actionable interception, neither the disclosure nor use of the contents of the

communication violates the Pennsylvania Wiretap Act. *Ideal Aerosmith*, 2007 WL 4394447, at

*4.  Accordingly, all such claims under Pennsylvania law must be dismissed.

## IX.  THE SAC FAILS TO STATE A CLAIM UNDER WASHINGTON'S WIRETAP ACT.

Plaintiff N.S. alleges violation of the Washington Wiretap Act. *See* SAC ¶¶ 273–89 (ninth

cause of action).  But to properly allege a violation of the Act, a plaintiff must show that the

defendant (1) intercepted or recorded (2) a private communication or conversation (3) between

two or more individuals, and (4) did so with a device designed to record and/or transmit (5) without

consent of the participants. *State v. Christensen,* 102 P.3d 789, 791 (Wash. 2004); WA Rev. Code

§ 9.73.030.  The statute includes no definitions, so courts give terms their plain meaning, and a

nontechnical statutory term may be given its dictionary meaning. *State v. Smith*, 405 P.3d 997,

1001 (Wash. 2017).  Washington courts have found "intercept" means to "stop . . . before arrival

. . . or interrupt the progress or course." *State v. Roden*, 321 P.3d 1183, 1188 (Wash. 2014).  The

SAC again fails to adequately plead a violation of this wiretapping statute.

### A.  As An Intended Recipient Of Alexa Interactions, Amazon Did Not "Intercept" Them.

As an intended recipient of N.S.'s Alexa interactions, Amazon did not wrongfully intercept

or record those interactions. *See Hoang v. Amazon.com, Inc.*, No. C11–1709MJP, 2012 WL

1088165, at *5 (W.D. Wash. Mar. 30, 2012) (dismissing claim with prejudice and holding that

Amazon did not "intercept or record" personal information under the Washington statute because

plaintiff sent that information directly to Amazon rather than to a third-party).  As in *Hoang*, where

plaintiff claimed information she supplied to Amazon was misused on its website, "regardless of

what they did with her information, Defendants were the intended recipients of the

communication." *Id.*  To impose liability would "misappl(y) a statute aimed at preventing

wiretapping to an unrelated situation." *Id.*  Like the other plaintiffs in the instant case, N.S. alleges

he "directly interacted with an Alexa Device" and intentionally sent Amazon queries and

commands.  SAC ¶ 119.  As *Hoang* makes clear, Amazon's storage of those commands upon

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 26 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

receipt are not "interception" or "recording" in violation of WA Rev. Code § 9.73.030.

**B.  The SAC Does Not Allege A "Conversation" Or Actionable "Communication Between Two Or More Individuals" Subject To The Washington Act.**

N.S.'s Alexa interactions are neither "conversations" nor actionable "communication[s] . . . between two or more individuals" subject to Washington's wiretap law.  Courts have strictly construed the definitions of those terms to exclude person-to-machine commands like Alexa interactions.  In *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116 (WD. Wash. 2012), this court refused to expand the definition of "communication" or "conversation" to include the plaintiff's delivery and Microsoft's recording of geolocation data, finding no claim under the Washington wiretapping statute.  *Id.* at 1129.  Unlike the federal Wiretap Act, the Washington statute requires a "communication" between at least two "*individuals*," which raises the question of with whom the plaintiff was communicating if Microsoft acted as an interceptor.  *Id.* (emphasis added).  Further, construing the word "conversation" to include the transmission of geolocation data would stray too far from the term's ordinary meaning.  *Id.*; *see also Smith*, 405 P.3d at 1002 (recording was not a "conversation" under the privacy act where it consisted of some brief oral exchanges and primarily contained just sounds).  Interactions with Alexa are not conversations.  Alexa simply processes and acts on user commands, which is not prohibited under the Washington statute.

**C.  The SAC Does Not Allege Interception Of "Private" Communications Or Conversations.**

The SAC fails to state a claim under Washington's statute for the additional reason that it does not allege interception of a "private" communication or conversation.  The term "private" has also been strictly construed under the Washington statute.  *See State v. Flora*, 845 P.2d 1355, 1358 (Wash. Ct. App. 1992) (holding trial court erred in denying motion to dismiss because the wiretapping act applies to "private" conversations only).  Washington courts use a dictionary definition of "private," meaning "secret ... intended only for the persons involved (a conversation) ... holding a confidential relationship to something ... a secret message: a private communication ... secretly; not open or in public."  *Roden*, 321 P.3d at 1186.

Communications or conversations are not considered "private" under the statute when they

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 27 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

1   are sent to the intended recipient to act upon.  *See Hoang*, 2012 WL 1088165, at *5 ("the

2   communication was not 'private,' because even though it contained personal information, the

3   information was intended for . . .  Amazon.com").  In the SAC, N.S. has not alleged any specific

4   Alexa interaction he contends is "private."   He merely alleges that he used the Alexa Device to

5   "ask it the weather and for help with math questions."  SAC ¶ 119.  These communications were

6   specifically intended for Amazon to act upon.  Plaintiff's conclusory allegation that he had a

7   "reasonable expectation of privacy" (*id.* ¶ 274) does not override the fact that the information he

8   sent to Amazon to perform a function he requested cannot conceivably be "secret."  The analysis

9   under each of these wiretapping statutes amplifies both the common-sense irrationality of

10  Plaintiffs' claims and the fundamental unfairness of Plaintiffs and their guardians intentionally

11  taking advantage of the Alexa service and all its benefits, and then suing Amazon for the essential

12  recording functionality required to provide it.

13      **D.  Washington's Statute Does Not Create A Cause of Action For Disclosure Or Use Of Intercepted Communications.**

14

15      On its face, the plain language of the Washington statute imposes no liability for the use or

16  disclosure of intercepted communications.  *See* WA Rev. Code § 9.73.030.  *See also Kearney v.*

17  *Kearney*, 974 P.2d 872, 876 (Wash. Ct. App. 1999) (holding the Washington statute "prohibits

18  only recording or intercepting private phone conversations without the consent of the other party;

19  it does not prohibit disseminating such conversations to others.").   Therefore, to the extent

20  Plaintiffs try to rely on the use or disclosure of data recorded through Alexa, SAC ¶ 277–78, such

21  allegations cannot support liability under the Washington statute.

22                                       **CONCLUSION**

23      For all these reasons, if the Court does not order this case to arbitration, the Court should

24  dismiss Plaintiffs' Second Amended Complaint and each cause of action.

25  Dated:  January 9, 2020                    Respectfully submitted,

26                                            FENWICK & WEST LLP

27                                            By:  *s/ Jeffrey A. Ware*
                                                 Jeffrey A. Ware, WSBA No. 43779
28

1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:     206.389.4510
Facsimile:      206.389.4511
Email:             jware@fenwick.com

Laurence F. Pulgram (admitted *pro hac vice*)
Tyler G. Newby (admitted *pro hac vice*)
Molly R. Melcher (admitted *pro hac vice*)
Armen N. Nercessian (admitted *pro hac vice*)
Avery L. Brown (admitted *pro hac vice*)
Mary M. Griffin (admitted *pro hac vice*)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:     415.875.2300
Facsimile:      415. 281.1350
Email:             lpulgram@fenwick.com
                       tnewby@fenwick.com
                       mmelcher@fenwick.com
                       anercessian@fenwick.com
                       avery.brown@fenwick.com
                       mgriffin@fenwick.com

*Attorneys for Defendants*
AMAZON.COM, INC. and
A2Z DEVELOPMENT CENTER, INC.

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 29 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101

1

**CERTIFICATE OF SERVICE**

2

I, Jeffrey Ware, hereby certify that on January 9, 2020, I caused the foregoing

3

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED**

4

**COMPLAINT** to be served on the following parties as indicated below:

| | |
|---|---|
| Lauren Hudson, WSBA No. 55124<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>600 University St., Ste. 2800<br>Seattle, WA 98101<br>laurenhudson@quinnemanuel.com<br><br>Andrew H. Schapiro (*pro hac vice*)<br>Stephen Swedlow (*pro hac vice*)<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>191 N. Wacker Drive, Suite 2700 Chicago, IL<br>60606 Tel: 312.705.7400 Fax: 312.705.7401<br>andrewschapiro@quinnemanuel.com<br>stephenswedlow@quinnemanuel.com<br><br>Ashley C. Keller (*pro hac vice*)<br>Travis D. Lenkner (*pro hac vice*)<br>J. Dominick Larry (*pro hac vice*)<br>Aaron Zigler (*pro hac vice*)<br>KELLER LENKNER LLC<br>150 N. Riverside Plaza, Ste. 4270<br>Chicago, IL 60606<br>Tel.: 312.741.5220<br>Fax: 312.971.3502<br>ack@kellerlenkner.com<br>tdl@kellerlenkner.com<br>nl@kellerlenkner.com<br>amz@kellerlenkner.com<br><br>Warren D. Postman (*pro hac vice*)<br>KELLER LENKNER LLC<br>1300 Street N.W., Suite 400E<br>Washington, D.C.<br>Tel.: 202.749.8334<br>Fax: 312.971.3502<br>wdp@kellerlenkner.com<br><br>*Attorneys for Plaintiff and the Putative Class* | [ ]  By United States Mail<br>[ ]  By Legal Messenger<br>[X] By Electronic CM/ECF<br>[ ]  By Overnight Express Mail<br>[ ]  By Facsimile<br>[ ]  By Email [by agreement of counsel] |

Dated: January 9, 2020

By: *s/ Jeffrey A. Ware*
For Jeffrey A. Ware, WSBA No. 43779
FENWICK & WEST LLP

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT
CASE NO. 2:19-CV-00910-RAJ-MLP

- 30 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101